UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

LESLIE DICK WORLDWIDE, LTD. and
LESLIE DICK,

        *Plaintiffs*,

    v.

GEORGE SOROS, SOROS FUND
MANAGEMENT, LLC, SFM
MANAGEMENT, LLC, CONSECO, INC.,
VORNADO REALTY TRUST, GERMAN
AMERICAN CAPITAL CORPORATION,
DEUTSCHE BANK AG, EASTDIL
SECURED, LLC, HARRY MACKLOWE,
FIG, LLC, CERBERUS CAPITAL
MANAGEMENT, LP, LAZARD FRERES &
CO. LLC, KIRKLAND & ELLIS, LLP, FRIED
FRANK HARRIS SHRIVER & JACOBSON
LLP, CARMEL FIFTH, LLC, 767 MANAGER
LLC, DONALD J. TRUMP and JOHN DOES
"1" THROUGH "10,"

        *Defendants*.

------------------------------------------------x

No. 08 Civ. 7900 (BSJ)

ECF Case

# MEMORANDUM OF LAW IN SUPPORT OF
# VORNADO REALTY TRUST'S MOTION TO DISMISS

Robert J. Giuffra, Jr. (RG-9969)
Charles R. Korsmo (CK-2761)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Counsel for Defendant Vornado Realty Trust*

December 22, 2008

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ..............................................................................................1

THE ALLEGATIONS OF THE COMPLAINT ......................................................................3

STANDARDS OF REVIEW ....................................................................................................5

ARGUMENT .............................................................................................................................6

I.   PLAINTIFFS' RICO CLAIMS AGAINST VORNADO SHOULD BE DISMISSED ......6

    A.   Plaintiffs' RICO Claims Against Vornado Are Barred by *Res Judicata* and Collateral Estoppel ..............................................................................................6

        1.   *Res Judicata* ............................................................................................6

        2.   Collateral Estoppel ..................................................................................8

    B.   Plaintiffs' RICO Claims Are Also Barred by the Statute of Limitations ................9

    C.   Plaintiffs Fail To Allege That Vornado Violated the RICO Statute .....................10

II.  PLAINTIFFS' SHERMAN ANTITRUST ACT CLAIM AGAINST VORNADO SHOULD BE DISMISSED ...................................................................................................13

III. PLAINTIFFS' CONCLUSORY CLAIMS AGAINST VORNADO SHOULD BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE ......................................................................................................................13

CONCLUSION ........................................................................................................................14

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Calka* v. *Kucker & Bruh, LLP*,
2000 WL 557266 (S.D.N.Y. 2000) ...........................................................................................8

*Cameron* v. *Church*,
253 F. Supp. 2d 611 (S.D.N.Y. 2003) .......................................................................................7

*Cofacredit, S.A.* v. *Windsor Plumbing Supply Co., Inc.*,
187 F.3d 229 (2d Cir. 1999) ...................................................................................................12

*Corto* v. *Lefrak*,
610 N.Y.S.2d 214 (1st Dep't 1994) ..........................................................................................8

*Davidson* v. *Capuano*,
792 F.2d 275 (2d Cir. 1986) .....................................................................................................8

*Evans* v. *Ottimo*,
469 F.3d 278 (2d Cir. 2006) .....................................................................................................8

*GICC Capital Corp.* v. *Technology Finance Group, Inc.*,
67 F.3d 463 (2d Cir. 1995) .....................................................................................................12

*Index Fund, Inc.* v. *Hagopian*,
677 F. Supp. 710 (S.D.N.Y. 1987) ...........................................................................................7

*In re Merrill Lynch Ltd. Partnerships Litig.*,
154 F.3d 56 (2d Cir. 1998) .......................................................................................................9

*Kaufman* v. *Eli Lilly & Co.*,
65 N.Y.2d 449 (NY 1985) ........................................................................................................8

*Leptha Enterprises, Inc.* v. *Longenback*,
1991 WL 183373 (S.D.N.Y. Sept. 9, 1991) .............................................................................7

*Leslie Dick Worldwide Ltd.* v. *Macklowe Props., Inc., et al.*,
Index No. 06/600222 (Moskowitz, J.) .....................................................................................3

*McKenzie* v. *Dow Jones & Co., Inc.*,
1008 WL 2856337 (S.D.N.Y. 2008) ......................................................................................13

*Migra* v. *Warren City Sch. Dist. Bd. Of Educ.*,
465 U.S. 75 (1984) ...................................................................................................................6

*Moore v. PaineWebber, Inc.*,
  189 F.3d 165 (2d Cir. 1999) ..........................................................................................11

*Moss v. Morgan Stanley Inc.*,
  719 F.2d 5 (2d Cir. 1983) ..............................................................................................11

*Qualis Care, L.P. v. Hall*,
  1999 WL 683564 (S.D.N.Y. Sept. 1, 1999) ..................................................................12

*Schwartzreich v. E.P.C. Carting Co., Inc.*,
  668 N.Y.S.2d 370 (1st Dep't 1998) .................................................................................6

*Singh v. Parnes*,
  199 F. Supp. 2d 152 (S.D.N.Y. 2002) .........................................................................6, 9

*Smith v. Russell Sage College*,
  54 N.Y.2d 185 (NY 1981) ...............................................................................................8

*Spitzer v. Applied Card Sys., Inc.*,
  863 N.Y.S.2d 615 (NY 2008) ..........................................................................................6

*Spool v. World Child Intern. Adoption Agency*,
  520 F.3d 178 (2d Cir. 2008) ..........................................................................................12

*Stubbs v. de Simone*,
  2005 WL 2429913 (S.D.N.Y. 2005) ..............................................................................13

*Tafflin v. Levitt*,
  493 U.S. 455 (1990) ........................................................................................................9

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
  2004 WL 2187069 (S.D.N.Y. Sep. 29, 2004) ...............................................................11

**Statutes**

15 U.S.C. § 1 ............................................................................................................................13

18 U.S.C. § 1962 ......................................................................................................................11

Defendant Vornado Realty Trust ("Vornado") respectfully submits this brief in support of its motion to dismiss the complaint ("Complaint") brought by Leslie Dick Worldwide Ltd. and Leslie Dick ("Plaintiffs") in the above-captioned action (the "Action"). To minimize duplication and burden on this Court, this brief addresses only those arguments that are particular to Vornado, while the Defendants George Soros and Soros Fund Management, LLC (together, the "Soros Defendants") are submitting a brief addressing common issues and arguments affecting all Defendants (the "Common Brief"). Vornado joins the Common Brief in full.

## PRELIMINARY STATEMENT

As is set forth more fully in the Common Brief, the Complaint is entirely frivolous. The Complaint alleges a fanciful – indeed, wholly imagined – international RICO and antitrust conspiracy among the Soros Defendants, Donald Trump, the prominent law firms of Fried Frank and Kirkland & Ellis, Deutsche Bank, Conseco, Lazard, Cerberus Capital Management, Harry Macklowe and assorted others, including Vornado (collectively, the "Defendants"). Vornado is a fully integrated real estate investment trust, and one of the largest owners and managers of real estate in the United States, including more than 16 million square feet of office space in New York.

Underneath its confusing mass of verbiage, the core of the Complaint – and the only injury alleged – is that the plaintiffs were somehow defrauded out of the opportunity to acquire the General Motors Building, which they claim was sold to Harry Macklowe in a "sham auction" in August, 2003. (*See* Complaint ¶¶ 339-373) (attached as Exhibit A to the Declaration of Robert J. Giuffra, Jr. ("Giuffra Decl."), dated December 22, 2008). The role Vornado is supposed to have played in this alleged fraud is nowhere specified in the Complaint, which

merely alleges that, following the closing, Vornado created a financing entity to provide mezzanine debt secured by the General Motors Building. (*See* Complaint ¶ 383).

The Complaint should be dismissed because plaintiffs have already litigated – and lost – a state court action involving the same subject matter, facts and circumstances as the instant Action. Thus, as a matter of law, plaintiffs are barred by *res judicata* and collateral estoppel from pressing these same issues against Vornado in this Action. (*See infra* at pages 6 to 9).

In addition, plaintiffs' RICO and antitrust claims are barred by the applicable statute of limitations. The alleged "sham auction" took place in 2003. Indeed – as detailed in the Common Brief at page 23 – in November 2003, plaintiff Leslie Dick threatened the Soros Defendants and other Defendants here with RICO and Sherman Act claims based on the same "bid rigging" alleged here. Because RICO and the Sherman Act claims are subject to a four-year statute of limitations, the Complaint here is time-barred on its face.

Beyond these glaring, fatal deficiencies, plaintiffs' RICO and Sherman Act claims also fail on their own merits. While the legal infirmities of plaintiffs' RICO claims – as detailed in the Common Brief – are manifest, those infirmities are particularly clear with respect to Vornado.

Despite rambling on for nearly 100 incoherent pages of groundless allegations, the Complaint never explains what role Vornado is supposed to have played in the alleged conspiracy, or any of the who, what, when, where, how, and why of Vornado's participation in the alleged RICO enterprise. Plaintiffs also fail to allege any "antitrust injury" that would support a Sherman Act claim. (*See infra* at pages 10 to 13).

In sum, the Complaint's claims against Vornado should be dismissed with prejudice, because those claims are precluded by *res judicata* and collateral estoppel, are time-barred, and fail to state a claim as a matter of law.

## THE ALLEGATIONS OF THE COMPLAINT

The Common Brief provides a comprehensive statement of the relevant background, including (i) the history of plaintiffs' earlier action in the New York State Courts, *Leslie Dick Worldwide Ltd. v. Macklowe Props., Inc., et al*, Index No. 06/600222 (Moskowitz, J.) (the "State Action"); (ii) the circumstances and allegations of the present Action; (iii) the fact that the allegations of the present Action arise out of the same transaction as the prior State Action; and (iv) the plaintiffs' five-year delay in bringing this Action, after asserting in a November 24, 2003 letter that they possessed claims under RICO and the Sherman Act. This background information is incorporated by reference, and will not be expanded upon here, except to spell out the Complaint's allegations against Vornado (such as they are).

The majority of the "allegations" against Vornado are conclusory statements, devoid of any specifics, proclaiming that Vornado – listed together with a shifting cast of co-defendants – was a member of a "RICO Enterprise" engaged in various classes of nefarious activities:

- The unlawful Money Laundering through the sale of the General Motors Building, orchestrated and carried out by the RICO Enterprise, including George Soros, Soros Fund Management, SFM Management, **Vornado Realty Trust**, German American Capital, Fortress Investment Group, Donald J. Trump, and the Rico conspirators Conseco, Deutsche Bank, Lazard, Eastdil Realty, Harry Macklowe, Cerberus Capital Management, Lazard, Kirkland & Ellis, Fried, Frank, Harris, Shriver & Jaconson, Carmel Fifth and 767 Manager, and, upon information and belief, other members of the Enterprise and co-conspirators, operated through a pattern of racketeering and forms one of the

cornerstones of the defendants' illicit activities of Money Laundering and Bankruptcy Fraud, predicate acts of RICO alleged herein and Bid Rigging. (Complaint ¶ 51)

- During secret negotiations that ensued between the members of the RICO Enterprise and its co-conspirators, George Soros, SFM Management, Soros Fund Management, Fortress Investment Group, Harry Macklowe, *Vornado*, Donald J. Trump, Cerberus Capital Management, the RICO Enterprise engaged in a pattern of racketeering activity involving interstate commerce to acquire an interest in Conseco, to invest proceeds of a pattern of racketeering activities in Conseco, and to conduct the affairs of Conseco through a pattern of racketeering, through Money Laundering, Bankruptcy Fraud, and Bid Rigging. (Complaint ¶ 165)

- Upon information and belief, George Soros, Donald J. Trump, Conseco, Harry Macklowe, Kirkland & Ellis, Fried Frank Harris Shriver & Jacobson, *Vornado Realty Trust*, German American Bank and Deutsche Bank all knew that the bidding process was merely a dumb-show, and that the winner of the bidding was going to be Harry Macklowe, and conspired to achieve this goal for the purpose of Money Laundering. (Complaint ¶ 343)

- On August 27, 2003, despite the fact that plaintiffs' bid was the highest and best, and the fact that Macklowe's bid was below other bidders, was untimely submitted and as part of the commission of Bid Rigging by defendants Conseco, Soros, *Vornado*, and Kirkland & Ellis, Harry Macklowe was privately allowed to increase his bid to appear to have won the auction. (Complaint ¶ 352)

- This conduct was in furtherance of the RICO conspiracy of Soros, Trump and Conseco, German American Bank, Fortress Investment Group and *Vornado Realty Trust* and involved the conspiratorial participation of Macklowe, Eastdil Realty, Kirkland & Ellis, and Fried Frank Harris Shriver & Jacobson to launder money. (Complaint ¶ 361)

- The scheme of the RICO Enterprise was to engage in racketeering activity of Money Laundering to make it appear that Macklowe acquired the General Motors Building, when, in fact, Soros, Soros Fund Management, SFM Capital Management and Macklowe, together with the unlawful and knowing assistance of Conseco, *Vornado Realty Trust*, German American Capital Corp., and in conspiracy with Deutsche Bank, Fried Frank Harris Shriver &

>Jacobson, and Kirkland & Ellis, and other presently unknown defendants, and numerous entities which are no longer existing, contrived a massive fraud to use various shell entities and instrumentalities to use the General Motors Building for Money Laundering. (Complaint ¶ 382)

Beyond these conclusory assertions, the Complaint lacks any specifics of what Vornado is actually alleged to have done, or of what role Vornado is alleged to have played in the central transaction – the alleged "sham auction" of the General Motors Building. Instead, the Complaint alleges only that, in 2001, "Vornado Realty Trust proposed to Conseco to purchase the General Motors Building for 1.15 Billion Dollars, which Conseco rejected." (Complaint ¶ 133).

From there, the Complaint moves to September 23, 2003, when "Vornado Real Estate Trust [sic] formed Vornado General Motors III, LLC" as a financing vehicle for providing "250 Million Dollars of mezzanine debt on the General Motors Building...after the closing." (Complaint ¶ 383). George Soros is then alleged to have used "Vornado General Motors III, LLC" – in a manner that is never made clear – to facilitate his "Money Laundering." (*See* Complaint ¶¶ 389-405). Finally, the Complaint alleges that Vornado "holds a stake in four of the seven office Buildings" Harry Macklowe is alleged to have purchased in 2007 by borrowing against the General Motors Building. (Complaint ¶ 421).

## STANDARDS OF REVIEW

The Common Brief's discussion of the appropriate standards of review is incorporated by reference and will not be recapitulated here.

## ARGUMENT

### I.

### PLAINTIFFS' RICO CLAIMS AGAINST VORNADO SHOULD BE DISMISSED.

Plaintiffs' RICO claims against Vornado fail, because (a) they are barred by *res judicata* or collateral estoppel; (b) they are barred by the statute of limitations; and (c) they do not adequately plead a RICO claim against Vornado.

**A.  Plaintiffs' RICO Claims Against Vornado Are Barred by *Res Judicata* and Collateral Estoppel.**

**1.  *Res Judicata.***

Although Vornado was not a party to the State Action, plaintiffs' claims are barred by *res judicata*. As a federal court, this Court must give the judgments in the State Action "the same preclusive effect as would be given [those] judgment[s] under the law of the State in which the judgment[s] w[ere] rendered." *See Migra* v. *Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80-81 (1984); *Singh* v. *Parnes*, 199 F. Supp. 2d 152, 158 (S.D.N.Y. 2002).

As the New York Court of Appeals has recently made clear: "In New York, res judicata, or claim preclusion, bars successive litigation based on the 'same transaction or series of transactions' if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *Spitzer* v. *Applied Card Sys., Inc.*, 863 N.Y.S.2d 615, 626 (NY 2008) (internal citations omitted); *see also Schwartzreich* v. *E.P.C. Carting Co., Inc.*, 668 N.Y.S.2d 370, 372 (1st Dep't 1998) ("If the party against whom *res judicata* is invoked had a full and fair opportunity to litigate the claim in a prior proceeding based on the same transaction, but did not raise it therein, he will be barred from raising it in a subsequent action.").

The addition of new parties does not alter the analysis. *See, e.g., Cameron* v. *Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003) ("Res judicata operates to preclude claims, rather than particular configurations of parties; Plaintiff's addition of new defendants...does not entitle him to revive the previously-dismissed claims."). As explained in the Common Brief at pages 17 to 22, the requirements for *res judicata* are met here.

Some earlier cases also require that a new party, such as Vornado, be in privity with a party to the original action to be protected by *res judicata*. *See Index Fund, Inc.* v. *Hagopian*, 677 F. Supp. 710, 715 (S.D.N.Y. 1987). Even under this standard, the claims against Vornado are precluded. "The concept of privity is to be applied with flexibility" and "arises when the interests of the nonparty were adequately represented in the initial action." *Id.* (internal citations and quotation marks omitted); *see also Leptha Enterprises, Inc.* v. *Longenback*, 1991 WL 183373, at *2 (S.D.N.Y. Sept. 9, 1991) (applying *res judicata* where plaintiff was aware of new defendants at the time of the earlier action and the new complaint "name[d] the previously unnamed defendants merely as co-conspirators [whose] alleged activities were not independent of the actions of the earlier defendants.").

Here, Vornado's interests were adequately represented in the State Action, which resulted in a holding that plaintiffs here had not been defrauded in connection with the transaction at issue. In addition, as shown in the Common Brief on page 13, plaintiffs were aware of Vornado's alleged conduct – the provision of mezzanine financing for the transaction at issue – at the time of the State Action, and even referred to this conduct in the state court complaint. Plaintiffs now merely allege that Vornado is a co-conspirator with the named defendants in the State Action. Under any applicable standard, the RICO claims asserted against Vornado in the present Action are barred by *res judicata*.

## 2.   Collateral Estoppel.

Moreover, plaintiffs' RICO claims against Vornado are barred by collateral estoppel. In New York courts, "collateral estoppel is available to protect those defendants who were not parties to the earlier proceedings from having to litigate those issues previously raised and rejected." *Corto* v. *Lefrak*, 610 N.Y.S.2d 214, 216 (1st Dep't 1994); *see also Calka* v. *Kucker & Bruh, LLP*, 2000 WL 557266 at *10 (S.D.N.Y. 2000) ("Under New York law, relitigation of an issue is barred by collateral estoppel, whether or not the party invoking the estoppel would have been barred by a judgment adverse to that party."). Collateral estoppel "bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive in the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans* v. *Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citing *Kaufman* v. *Eli Lilly & Co.*, 65 N.Y.2d 449, 455-56 (NY 1985)).

"The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues...whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue." *Kaufman*, 65 N.Y.2d at 456 (citations omitted). In New York, the identical issue requirement for collateral estoppel is also evaluated using the "same transaction" test – any final decision on the merits bars all subsequent claims arising from the same transaction or series of transactions, even if based on different legal theories. *See Smith* v. *Russell Sage College*, 54 N.Y.2d 185, 192-93 (NY 1981); *see also Davidson* v. *Capuano*, 792 F.2d 275, 278 (2d Cir. 1986).

As the Common Brief demonstrates, all of the elements of the collateral estoppel test are met with regard to the RICO claims against Vornado. First, the sole injury plaintiffs

claim from the supposed "RICO Enterprise" arises from the same transaction that formed the basis of the State Action – the alleged "sham auction" of the General Motors Building. The issue decided in the State Action – that the plaintiffs were not defrauded out of the General Motors Building – plainly bars plaintiffs' RICO claims in the present Action. *See Singh* v. *Parnes*, 199 F. Supp. 2d at 159 ("a party cannot avoid the preclusive effect of *res judicata* or collateral estoppel by recasting allegations of fraud adjudicated in the prior litigation as a federal RICO action"). If, as the state court determined, the plaintiffs were not defrauded out of the General Motors Building, then they have suffered no RICO injury. Second, the plaintiffs had a "full and fair" opportunity to contest the prior determination, litigating the issue in the New York Supreme Court, and appealing to the Appellate Division. Furthermore, the plaintiffs' RICO claims could have been brought in the prior State Action. *See Tafflin* v. *Levitt*, 493 U.S. 455 (1990).

Thus, the RICO claims asserted against Vornado in the present Action are barred by collateral estoppel.

### B.     Plaintiffs' RICO Claims Are Also Barred by the Statute of Limitations.

The Common Brief details how the plaintiffs' RICO claims runs afoul of the four-year statute of limitations, which begins to run once a plaintiff "discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998).

None of the particular allegations against Vornado alter the analysis in the Common Brief, which is incorporated by reference. The sole post-2003 allegation regarding Vornado is that it holds a stake in several office buildings purchased by Harry Macklowe in 2007. (Complaint ¶ 421). Plaintiffs do not allege any RICO injury connected to these holdings. Plaintiffs' letter of November 24, 2003 – asserting that the plaintiffs had claims under RICO and

- 9 -

the Sherman Act arising out of the sale of the General Motors Building – leaves no doubt that the plaintiffs had discovered their only alleged RICO injury nearly five years before the filing of the present Action on September 10, 2008. (*See* 11/24/03 Leslie Dick Letter) (attached as Exhibit C to Giuffra Decl.).

### C. Plaintiffs Fail To Allege That Vornado Violated the RICO Statute.

The manifold failings of the plaintiffs' attempt to plead RICO claims are set forth in great detail in the Common Brief, and are incorporated by reference. These failings need not be recited again here, except to note that the Complaint's allegations regarding Vornado consist almost entirely of vague and conclusory statements alleging that Vornado – listed together with a shifting cast of co-defendants – was a member of a "RICO Enterprise" engaged in a "pattern of racketeering" (*See* Complaint ¶¶ 51, 165, 361, 382) and "Bid Rigging" (*See* Complaint ¶¶ 343, 352).

By any measure, the nature of Vornado's alleged participation in this "Enterprise" is left wholly to the imagination. When and how did Vornado join the "Enterprise"? What position did Vornado occupy within it? Why did Vornado join the "Enterprise" – what common purpose did Vornado share with the other members? How were decisions made and instructions conveyed by and to Vornado? The Complaint is fatally silent.

Indeed, as detailed above, the Complaint alleges only the following specific actions by Vornado: (1) that in 2001 – two years *before* the alleged "sham auction" – Vornado merely *offered* to purchase the General Motors Building for $1.15 billion (*See* Complaint ¶ 133); and (2) that in September, 2003 – one month *after* the alleged "sham auction" – Vornado created a financing vehicle to provide a mezzanine loan secured by the General Motors Building (*See* Complaint ¶ 383). The Complaint does not explain who received this loan, though presumably it

would be Harry Macklowe. Also left unexplained are the significance of Vornado's alleged actions, Vornado's role in the functioning of the alleged "RICO Enterprise," and how Vornado's actions may have led to any RICO injury to the plaintiffs.

As a matter of law, these bare allegations are wholly inadequate to establish, *inter alia*, the (1) predicate acts; or (2) pattern of racketeering activity necessary to support a civil RICO claim against Vornado. *See Moss* v. *Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983); 18 U.S.C. § 1962(c).

The predicate acts alleged by plaintiffs are (1) bid rigging; (ii) bankruptcy fraud in connection with Conseco's bankruptcy proceedings; and (iii) money laundering. As is explained in the Common Brief, bid rigging is not a RICO predicate act.

Furthermore, there are no specific factual allegations to support a claim of bankruptcy fraud against Vornado. Nowhere does the Complaint allege that Vornado participated in the Conseco bankruptcy proceedings, or provide any of the details necessary to support allegations of fraud. *See Moore* v. *PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) ("In the RICO context, Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." (internal quotation marks omitted)).

Finally, the allegations of money laundering by Vornado – or any of the Defendants – are entirely conclusory, and fail to even identify the "specified unlawful activity" that supposedly provided the "criminally derived property." *See, e.g., W. 79th St. Corp.* v. *Congregation Kahl Minchas Chinuch*, 2004 WL 2187069, at *9 (S.D.N.Y. Sept. 29, 2004) ("[I]n

the absence of allegations concerning a 'specified unlawful activity,' no claim for money laundering may withstand a motion to dismiss.").

Similarly, the plaintiffs have not adequately alleged a "pattern of racketeering activity." To properly allege such a "pattern," the plaintiffs must plead either "open-ended" continuity (past criminal conduct combined with a threat of continued criminal conduct) or "closed-ended" continuity (past criminal conduct extending over a substantial period of time). *See GICC Capital Corp.* v. *Technology Finance Group, Inc.*, 67 F.3d 463, 466-67 (2d Cir. 1995). Plaintiffs are unable to allege either.

To plead "open-ended" continuity, a plaintiff must allege that "the scheme at issue is a regular part of defendants' business, or that there is a likelihood of repetition of the alleged predicated acts." *Qualis Care, L.P.* v. *Hall*, 1999 WL 683564, at *6 (S.D.N.Y. Sept. 1, 1999) (Jones, J.). Nowhere does the Complaint allege that the supposed predicate acts were a regular part of Vornado's business.

To show "closed-ended" continuity, "the plaintiff must prove a series of related predicates extending over a substantial period of time." *Cofacredit, S.A.* v. *Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (internal quotation marks omitted). The relevant period is the time "during which the RICO predicate activity [that harmed the plaintiffs] occurred, not the time during which the underlying scheme operated." *Spool* v. *World Child Intern. Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008).

Here, the only predicate activity alleged to have harmed the plaintiffs was the one-time sale of the General Motors Building in 2003. Vornado's provision of mezzanine financing – and the creation of the associated financing vehicle – took place one month after the alleged "sham auction." The only other allegations against Vornado – that it made an offer on

the General Motors Building in 2001 and that it owned a stake in several buildings in 2007 – bear no relation to the 2003 sale, and are not even alleged to have injured the plaintiffs. Thus, plaintiffs have failed to allege a "pattern of racketeering" against Vornado.

For these reasons, as well as the many others set forth in the Common Brief, the RICO claims against Vornado should be dismissed.

## II.

## PLAINTIFFS' SHERMAN ANTITRUST ACT CLAIM AGAINST VORNADO SHOULD BE DISMISSED.

Count V of the Complaint, alleging an antitrust violation under the Sherman Act 15 U.S.C. § 1, should be dismissed for two separate and independent reasons. First, like plaintiffs' frivolous RICO claim, their antitrust claim is barred by the statute of limitations. Second, plaintiffs have not alleged "antitrust injury," *i.e.*, injury of the type the antitrust laws were intended to prevent. These arguments are set forth fully in the Common Brief, are incorporated by reference, and need not be restated here.

## III.

## PLAINTIFFS' CONCLUSORY CLAIMS AGAINST VORNADO SHOULD BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE.

The Court should dismiss the claims against Vornado with prejudice, because amendment would be futile. Not only are the claims time-barred and untenable as a matter of law, but the plaintiffs are precluded from asserting them by *res judicata* and collateral estoppel. *See McKenzie* v. *Dow Jones & Co., Inc.*, 2008 WL 2856337, at *5 (S.D.N.Y. 2008) ("leave to replead is denied, as [plaintiff's] claim is barred by the statute of limitations no matter how the claim is pleaded."); *Stubbs* v. *de Simone*, 2005 WL 2429913, at *19 (S.D.N.Y. 2005) (denying

leave to amend where collateral estoppel precluded plaintiff from asserting its claims). These deficiencies are substantive and fatal, and cannot be cured by amending the Complaint.

## CONCLUSION

For the reasons stated above and in the Common Brief, the plaintiffs have failed to adequately plead any RICO or antitrust claims against Vornado, and the Complaint should be dismissed with prejudice.

Respectfully submitted,

*/s/ Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr. (RG-9969)
Charles R. Korsmo (CK-2761)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York
Tel.: (212) 558-4000
Fax: (212) 558-3588

*Counsel for Defendant Vornado Realty Trust*

December 22, 2008