Jacqueline G. Veit
Laura Sulem
Golenbock Eiseman Assor Bell & Peskoe LLP
437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 907-7300
*Attorneys for Defendant*
*Eastdil Secured, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LESLIE DICK WORLDWIDE, LTD and LESLIE DICK,

     Plaintiffs,

 -against-

GEORGE SOROS, SOROS FUND MANAGEMENT LLC, SFM MANAGEMENT, LLC, CONSECO, INC., VORNADO REALTY TRUST, GERMAN AMERICAN CAPITAL CORP., DEUTSCHE BANK, AG., EASTDIL SECURED, LLC, HARRY MACKLOWE, FIG, LLC, CERBERUS CAPITAL MANAGEMENT, LP, LAZARD FRERES & CO., LLC, KIRKLAND & ELLIS, LLP, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP, CARMEL FIFTH, LLC, 767 MANAGER, LLC, DONALD J. TRUMP and John Does "1" through "10,"

     Defendants.

08-CV- 7900 (BSJ) (THK)

ECF CASE

---

**DEFENDANT EASTDIL SECURED, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

*444811.5*

# **TABLE OF CONTENTS**

Page

Table of Authorities ..................................................................................................... ii

PRELIMINARY STATEMENT.....................................................................................2

STATEMENT OF FACTS ..............................................................................................4

    *Conseco's Bankruptcy Proceedings*..........................................................................4

    *The Sale of the GM Building*...................................................................................5

    *Lone Allegation of Eastdil's Conduct After 2003* ..................................................6

    *Absence of Eastdil from the Complaint* ..................................................................6

ARGUMENT ...................................................................................................................7

I.    PLAINTIFFS' RICO CLAIMS AGAINST EASTDIL ARE
    BARRED BY *RES JUDICATA* .............................................................................7

II.   PLAINTIFFS' RICO CLAIMS AGAINST EASTDIL ARE
    TIME BARRED.....................................................................................................8

III.  PLAINTIFFS HAVE NOT SUFFICIENTLY PLEADED A § 1962(c)
    CLAIM AGAINST EASTDIL..............................................................................9

    A.    The Complaint Fails to Allege that Eastdil Committed
         Two or More Predicate Acts ..................................................................10

    B.    The Complaint Fails to Allege that Eastdil Committed a
         "Pattern" of Racketeering Activity ........................................................12

    C.    Eastdil Is Not Alleged to Have Participated in the Operation
         or Management of the Enterprise...........................................................14

IV.  PLAINTIFFS HAVE NOT SUFFICIENTLY PLEADED A § 1962(b)
    CLAIM AGAINST EASTDIL............................................................................16

V.   THE SHERMAN ACT CLAIM IS TIME BARRED AND HAS
    NO MERIT ..........................................................................................................17

CONCLUSION...............................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Allen v. New World Coffee, Inc.*, No. 00-CV-2610,
  2002 WL 432685 (S.D.N.Y. Mar. 19, 2002) ...................................................................... 16

*DeFalco v. Burns*, 244 F.3d 286 (2d Cir. 2001) ...................................................................... 10

*Feigen v. Advance Capital Mgmt. Corp.*, 536 N.Y.S.2d 786 (1st Dep't 1989) .................... 8

*Friedman v. Hartmann*, No. 91-CV-1523, 1996 WL 457300
  (S.D.N.Y. Aug. 13, 1996) .................................................................................................... 15

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) ............................................... 13

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ...................................................................... 9

*Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03-CV-9612,
  2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004) ................................................................... 10

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) ................................................... 10

*Procapui-Productores de Camaroes de Icapui Ltda. v. G.F. Higgins, Inc.*,
  No. 07-CV-6627, 2008 WL 3338200 (S.D.N.Y. Aug. 8, 2008) ...................................... 11

*Procapui-Productores de Camaroes De Icapui Ltda. v. Layani*,
  No. 07-CV-6627, 2008 WL 3338199 (S.D.N.Y. Jan. 11, 2008) ....................................... 9

*Rambarran v. Mount Sinai Hosp.*, No. 06-CV-5109, 2008 WL 850478
  (S.D.N.Y. Mar. 28, 2008) .................................................................................................... 12

*Ray Larsen Assocs. Inc. v. Nikko America, Inc.*, No. 89-CV-2809,
  1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ................................................................. 12, 13

*Ray v. General Motors Acceptance Corp.*, No. 92-CV-5043,
  1995 WL 151852 (E.D.N.Y. Mar. 28, 1995) ............................................................... 11, 12

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ................................................................. 14, 16

*Rosendale v. Citibank, N.A.*, No. 94-CV-8591, 1996 WL 175089
  (S.D.N.Y. Apr. 15, 1996) ..................................................................................................... 15

*Strong & Fisher Ltd. v. Maxima Leather, Inc.*, No. 91-CV-1779,
  1993 WL 277205 (S.D.N.Y. July 22, 1993) ...................................................................... 15

*Sundial Int'l Fund Ltd. v. Delta Consultants*, Inc., 923 F. Supp. 38
   (S.D.N.Y. 1996) ................................................................................................16

*Vickers v. Quotron Sys., Inc.*, No. 96-CV-2269, 1997 WL 420265
   (S.D.N.Y. July 25, 1997), *aff'd*, Docket No. 97-9114
   (2d Cir. Aug. 24, 1998) ................................................................................14, 16

## STATUTES

18 U.S.C. § 1961(1)(B) (2008) .............................................................................12

18 U.S.C. § 1962(a) (2008) ....................................................................................4

18 U.S.C. § 1962(b) (2008) ..............................................................................4, 16

18 U.S.C. § 1962(c) (2008) .........................................................4, 9, 10, 14, 15, 16

Fed.R.Civ.P. 8(a) ....................................................................................................2

Fed.R.Civ.P. 9(b) .......................................................................................2, 10, 11

Fed.R.Civ.P. 12(b)(6) .......................................................................................2, 12

Defendant Eastdil Secured, LLC, formerly known as Eastdil Realty ("Eastdil"), by its counsel, Golenbock Eiseman Assor Bell & Peskoe LLP, respectfully submits this memorandum of law in support of Eastdil's motion to dismiss the complaint (the "Complaint" or "Cmplt.") filed by plaintiffs Leslie Dick Worldwide, Ltd. ("LDW") and Leslie Dick (together with LDW, the "Plaintiffs"), pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 8(a), 9(b) and 12(b)(6). The Complaint asserts RICO and antitrust claims against all of the defendants ("Defendants"), and thus Defendants' arguments for dismissal of the Complaint necessarily overlap. In order to minimize duplication and burden on the Court, Eastdil joins in the Brief in Support of the Soros Defendants' Motion to Dismiss, dated December 22, 2008 (the "Soros Brief"), and incorporates by reference all facts and arguments therein as if fully set forth herein. This memorandum addresses only those facts and arguments that are specific to Eastdil.

## PRELIMINARY STATEMENT

Eastdil is a real estate investment banking firm that was retained in 2003 by the owner of the General Motors Building (the "GM Building" or "Building") to help it market and sell the Building. The sale closed in September 2003. Since then, Plaintiffs have dragged Eastdil (and others) through three years of litigation -- first in state court, and now in this Court -- in their relentless and futile search for a claim arising out of the fact that their offer to purchase the GM Building was not selected, and the Building was sold to someone else instead.

The only allegedly wrongful acts asserted against Eastdil in the Complaint are identical to those asserted by Plaintiffs against Eastdil in the prior State Action:[1] namely, that Eastdil allegedly rigged the bids during the GM Building sale process to ensure that Macklowe would be the purchaser, and thereby prevented Plaintiffs from purchasing the Building. As a result, the RICO claims against Eastdil fall squarely within the doctrine of *res judicata* and must be dismissed.

Further, as is true for all Defendants, all of Plaintiffs' claims against Eastdil are barred by the four-year statute of limitations applicable to both RICO and Sherman Act claims. The allegations of the Complaint establish that Plaintiffs were aware of their alleged injury no later than August 30, 2003, and Plaintiffs certainly demonstrated their awareness of their claims by no later than November 24, 2003, when they sent a letter to Eastdil expressly threatening to assert RICO and Sherman Act claims arising from the alleged "bid rigging" of the sale of the GM Building. Plaintiffs waited nearly five years after sending that letter to assert those claims, and they are now time barred.

Even if Plaintiffs' claims were to survive dismissal on *res judicata* and statute of limitations grounds, dismissal of the Complaint would nonetheless be required because it utterly fails to allege a RICO claim against Eastdil. Most of the deficiencies of the Complaint are fully set forth in the Soros Brief, and apply equally to Eastdil. In connection with these arguments, we note that the only wrongful act allegedly committed by Eastdil -- "bid rigging" -- simply is not a "predicate act," and certainly cannot meet the requirement that Eastdil have engaged in "two or more" predicate acts. Likewise,

---

[1] The "State Action" refers to the case filed in New York State Supreme Court on or about January 24, 2006, by the same Plaintiffs here -- LDW and Leslie Dick -- against Eastdil and, among others, Defendants George Soros, Soros Fund Management LLC, Conseco, Inc. ("Conseco"), Harry Macklowe ("Macklowe") and Carmel Fifth, LLC.

there are absolutely no allegations that Eastdil participated in the "operation or management of the Enterprise" as is required for a Section 1962(c) claim, or that it acquired or maintained an interest in or control of the enterprise as is required for a Section 1962(b) claim.[2]

Finally, the bid rigging allegations against Eastdil do not constitute a Sherman Act claim either, because Plaintiffs have only alleged injury to themselves. The Complaint does not even attempt to establish the existence of antitrust injury, as required for this claim.

## STATEMENT OF FACTS

*Conseco's Bankruptcy Proceedings*

Eastdil does not appear in the Complaint until paragraph 278 on page 59, in which Plaintiffs allege that Conseco made a motion in Bankruptcy Court in March 2003 to retain Eastdil to assist with the sale of the GM Building. According to the Complaint, on March 17, 2003, Eastdil "submitted an affidavit, by its attorneys Kirkland & Ellis, in support of its motion to be retained to sell by Conseco the General Motors Building." *Id.* ¶ 302. Days later, however, Trump (who claimed an interest in the GM Building and was involved in litigation against Conseco at the time) opposed the retention of Eastdil, arguing, among other things, that the GM Building was not part of the Conseco bankruptcy estate because Conseco did not own the Building. *Id.* ¶¶ 309-10. On April 3, 2003, the Bankruptcy Court determined that it did not have jurisdiction over the sale of the GM Building (*id.* ¶ 315), and thus on April 14, Eastdil "withdrew its application to be retained by Conseco as the seller's agent . . . ." *Id.* ¶ 316.

---

[2] Plaintiffs' Complaint does not assert a § 1962(a) claim against Eastdil. *See* Cmplt. ¶¶ 426-34.

These same allegations, *i.e.*, that Eastdil filed and later withdrew an affidavit in the Bankruptcy Court, were also alleged by Plaintiffs in the amended complaint in the State Action. *See* Soros Brief at 13 (comparing the allegations of the amended complaint in the State Action to the allegations of the Complaint in this action).

Plaintiffs assert conclusory allegations that Conseco's motion to retain Eastdil, and the subsequent withdrawal of that motion following the Court's April 3 ruling, was part of and was in furtherance of some unidentified racketeering activity by an alleged enterprise comprised of inconsistently identified parties "to deceive the creditors of the Conseco bankruptcy as to the ownership of the General Motors Building." Cmplt. ¶¶ 279, 303, 316.[3] No facts are alleged as to any role played by Eastdil in this alleged conspiracy or racketeering activity or in Plaintiffs' ill-defined "enterprise."

### *The Sale of the GM Building*

The Complaint alleges that on July 16, 2003 -- two months after the Bankruptcy Court determined that the GM Building was not part of Conseco's bankruptcy estate (*id.* ¶ 315) -- Conseco retained Eastdil to sell the GM Building "outside the purview of the Bankruptcy Court." *Id.* ¶ 339. The Complaint then launches into Eastdil's participation in the alleged bid-rigging scheme to sell the GM Building to Macklowe and its operation of a "sham auction" *Id.* ¶¶ 340-73. These allegations were also made -- and rejected -- in the State Action. *See* Soros Brief at 12-13. The Complaint conclusorily avers that the "bid rigging" was in furtherance of the RICO conspiracy of several of the Defendants,

---

[3] Plaintiffs are not alleged to have been creditors of Conseco, or to have been injured by these events in any way.

"and involved the conspiratorial participation of . . . Eastdil," among others, "to launder money," but alleges no facts to support such an allegation. *Id.* ¶ 361.

On August 30, 2003, the New York Times reported that Macklowe had submitted the winning bid to purchase the GM Building. *Id.* ¶ 372. The closing was scheduled for September 27, 2003. *Id.* ¶ 373. At or shortly after the closing, Eastdil was paid its commission. *Id.* ¶ 411.

### *Lone Allegation of Eastdil's Conduct After 2003*

The Complaint references Eastdil only once after the 2003 sale of the GM Building, in connection with an unrelated real estate transaction. Plaintiffs assert that "[i]n 2007, Macklowe purchased seven office buildings from Blackstone through Eastdil Realty in New York City, upon information and belief, for approximately 7 Billion Dollars with only 50 Million Dollars of equity." Cmplt. ¶ 417. This paragraph does not assert that Eastdil committed any wrongdoing; in fact, Eastdil was alleged to have represented the seller (who is not a Defendant), not Macklowe, in this transaction. Plaintiffs are not alleged to have had any connection with, or to have been injured in any way by, this transaction.

### *Absence of Eastdil from the Complaint*

While conclusory allegations are insufficient to state a claim in all events, it is telling that, along with the Complaint's sparse allegations about Eastdil, Eastdil is *excluded* from many summary allegations of the Complaint:

- Eastdil is not named as one of the entities that allegedly participated in a "delay tactic and ruse . . . to delay the resolution of the ownership of the General Motors Building for the benefit of the RICO Enterprise." *Id.* ¶ 114.

- Nowhere is Eastdil mentioned as a member of the RICO enterprise that allegedly "engaged in a pattern of racketeering activity involving interstate commerce to acquire an interest in Conseco, to invest proceeds of a pattern of

      racketeering activities in Conseco, and to conduct the affairs of Conseco through a pattern of racketeering, through Money Laundering, Bankruptcy Fraud and Bid Rigging." *Id.* ¶ 165.

- Eastdil is not listed as a participant during the six-month period prior to the planned Bankruptcy filing of Conseco as one of the parties that allegedly "engaged in a pattern of racketeering activity . . . to prepare the Conseco bankruptcy proceeding to allow . . . the RICO Enterprise to Launder Money through the Conseco Bankruptcy . . . ." *Id.* ¶ 182.

- Eastdil is not alleged as one of the parties involved in the allegedly illegal "acquisition of Conseco Finance [as] part of the defendants' racketeering activities and Bankruptcy Fraud on the bankruptcy court and creditors of Conseco." *Id.* ¶ 236.

- Eastdil is not one of the parties that allegedly "knew that the bidding process was merely a dumb-show, and that the winner of the bidding was going to be Harry Macklowe, and conspired to achieve this goal for the purpose of Money Laundering." *Id.* ¶ 343.

- Eastdil is not included as one of the parties who allegedly "contrived a massive fraud to use various shell entities and instrumentalities to use the General Motors Building for Money Laundering." *Id.* ¶ 382.

## ARGUMENT

### I. PLAINTIFFS' RICO CLAIMS AGAINST EASTDIL ARE BARRED BY *RES JUDICATA*

Plaintiffs' RICO claims are barred by the doctrine of *res judicata* because they arise out of the same transaction as the common-law claims that Plaintiffs unsuccessfully asserted against Eastdil (and others) in the State Action. Plaintiffs could have, but did not, allege RICO claims in that forum, and are now precluded from doing so here.

Eastdil, like the Soros Defendants, Macklowe, and the Conseco Defendants, was a party in the State Action and is a party in this case. For the many reasons explained in the Soros Brief at 17-22, the claims against Eastdil are barred by the doctrine of *res judicata*.

Indeed, in the State Action, Justice Moskowitz dismissed the amended complaint on the grounds, among others, that Eastdil's alleged misrepresentation that the GM Building would be sold to the "highest bidder" was contradicted by the confidentiality agreement signed by Plaintiffs and an August 13, 2003 letter sent to Plaintiffs, both of which made clear that Conseco could discontinue negotiations with any potential purchaser at any time for any reason. *See* Declaration of John R. Oller in Support of the Soros Defendants' Motion to Dismiss, dated December 19, 2008 (the "Oller Decl."), Ex. B, pp. 7-8. The dismissal of a complaint based on documentary evidence "clearly demonstrates that dismissal of the claims against the . . . defendants was not merely because of technical pleading defects but on the merits for res judicata purposes . . . ." *Feigen v. Advance Capital Mgmt. Corp.*, 536 N.Y.S.2d 786, 788 (1st Dep't 1989) (*res judicata* precluded plaintiffs from repleading claims arising from same facts and transactions at issue in prior case when the prior case was dismissed on documentary evidence).

## II. PLAINTIFFS' RICO CLAIMS AGAINST EASTDIL ARE TIME BARRED

As set forth in the Soros Brief, Plaintiffs' RICO claims against all Defendants are barred by the applicable four-year statute of limitations. *See* Soros Brief at 22-25. The Complaint alleges that Plaintiffs learned via an August 30, 2003 newspaper article that they had not been selected to acquire the GM Building. Cmplt. ¶ 372. Plaintiffs' November 24, 2003 letter to the Chairman of Eastdil, which claimed that Eastdil's purported "bid rigging" violated both RICO and the Sherman Act, conclusively shows that they were on notice of these potential claims nearly five years before commencing this case. *See* Oller Decl., Ex. G(1), pp. 2-3.

Moreover, for the same reasons set forth in the Soros Brief at 24-25, the allegations relating to Macklowe's alleged real estate investments in 2007 are insufficient to bring Plaintiffs' RICO claims within the four-year statute of limitations. Plaintiffs merely assert that "Macklowe purchased seven office buildings from Blackstone through Eastdil Realty in New York City," onto which Plaintiffs tack the conclusory allegation that such acts "were in furtherance of the RICO Enterprise . . . ." Cmplt. ¶¶ 417, 424. The Complaint does not specify any wrongdoing by Eastdil, any injury to Plaintiffs, or any facts to suggest that the 2007 transaction was part of any RICO enterprise. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) ("plaintiff cannot use an independent, new act as a bootstrap to recover for injuries caused by other predicate acts that took place outside the limitations period").

### III. PLAINTIFFS HAVE NOT SUFFICIENTLY PLEADED A § 1962(c) CLAIM AGAINST EASTDIL

"To state a RICO claim for damages under 18 U.S.C. § 1962(c), a plaintiff must plead seven elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly conducted or participated in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Procapui-Productores de Camaroes De Icapui Ltda. v. Layani*, No. 07-CV-6627, 2008 WL 3338199, at *2 (S.D.N.Y. Jan. 11, 2008). In addition to the arguments set forth in the Soros Brief, which apply equally to Eastdil,[4] Plaintiffs' Complaint does not state a § 1962(c) claim against Eastdil because it fails to adequately plead that Eastdil committed two or more predicate acts; that any alleged acts constitute a "pattern;" or that Eastdil directly or indirectly conducted or participated in the conduct of

---

[4] *See* Soros Brief at 25-38.

444811.5                                        9

the alleged enterprise. Plaintiffs must allege the elements of § 1962(c) sufficiently as to each Defendant. *DeFalco v. Burns*, 244 F.3d 286, 306 (2d Cir. 2001).

### A. The Complaint Fails to Allege that Eastdil Committed Two or More Predicate Acts

Plaintiffs' Complaint alleges three purported predicate acts: bid rigging, bankruptcy fraud and money laundering. However, only one of those acts is alleged against Eastdil: bid rigging. Yet, the case law makes clear that bid rigging is not a predicate act under the RICO statute. *See* Soros Brief at 30-31 (citing *Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03-CV-9612, 2004 WL 2071689, at *15, n. 15 (S.D.N.Y. Sept. 16, 2004)).

The Complaint does not, and cannot, allege bankruptcy fraud against Eastdil, and certainly does not meet the particularity requirement for such a fraud claim.[5] The only involvement that Eastdil is alleged to have had in Conseco's bankruptcy proceedings is its submission of an affidavit in support of Conseco's application to retain Eastdil to sell the GM Building, which was later withdrawn after the Bankruptcy Court determined that it did not have jurisdiction over the sale of the Building. Cmplt. ¶¶ 302, 316. The Complaint does not allege that Eastdil's affidavit contained any false or misleading statements, or that Eastdil misled the Plaintiffs, the Bankruptcy Court or any other person or entity in any way in connection with the Conseco bankruptcy proceedings. Nor is Eastdil alleged to have participated in any way regarding the acquisition of Conseco Finance, or to have played any role in the lawsuits, arbitrations and contested motions in

---

[5] Bankruptcy fraud allegations must satisfy the particularity requirements of Fed.R.Civ.P. 9(b) as to each defendant. *See* Soros Brief at 31-33; *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) ("In the RICO context, Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading . . . .") (internal quotations omitted).

Bankruptcy Court between the Conseco and Trump parties. In fact, Eastdil is excluded from conclusory paragraphs that assert the existence of fraud on the Bankruptcy Court by others. *See, e.g.*, Cmplt. ¶¶ 114, 165, 182, 236. The absence of particular allegations of fraud against Eastdil is fatal to Plaintiffs' fraud claim, and general, conclusory allegations against a group of defendants (to the extent that Eastdil was included in such allegations) are insufficient to satisfy Rule 9(b). *Procapui-Productores de Camaroes de Icapui Ltda. v. G.F. Higgins, Inc.*, No. 07-CV-6627, 2008 WL 3338200, at *2 (S.D.N.Y. Aug. 8, 2008); *see also* Soros Brief at 32-33.

Likewise, Plaintiffs' Complaint does not allege facts that suggest that Eastdil committed money laundering. "[T]o properly state a claim under the money laundering statutes, plaintiff must allege that a defendant knowingly used the proceeds of unlawful activity in a proscribed transaction." *Ray v. General Motors Acceptance Corp.*, No. 92-CV-5043, 1995 WL 151852, at *6 (E.D.N.Y. Mar. 28, 1995) (plaintiff failed to plead predicate act of money laundering when "there were no allegations, let alone those with factual support, which indicated that defendant engaged in any transaction involving the proceeds of prior unlawful activity"). The Complaint is devoid of a single factual allegation that Eastdil knowingly used proceeds obtained from allegedly unlawful activity. Eastdil is also not alleged to have any connection to the Trump International Hotel & Tower, which Plaintiffs claim (without the benefit of any supporting factual

allegations) is the entity into which the "laundered proceeds flowed." *Id.* ¶ 171 and n. 6.[6] The Complaint even excludes Eastdil from the conclusory allegations of money laundering alleged against other Defendants (which are insufficient allegations in all events). Cmplt. ¶¶ 165, 182, 343, 382.

Because Plaintiffs' Complaint does not allege even one predicate act against Eastdil -- much less the two that are required -- the RICO claim must be dismissed as against it. *Rambarran*, 2008 WL 850478, at *8 ("As the Amended Complaint fails to allege viable predicate acts . . . Plaintiff's proposed RICO claim would be subject to immediate dismissal under Fed.R.Civ.P. 12(b)(6) . . . .").

### B. The Complaint Fails to Allege that Eastdil Committed a "Pattern" of Racketeering Activity

Because Plaintiffs have not alleged two predicate acts against Eastdil, they are incapable of showing a "pattern" of racketeering activity, *i.e.*, "that among the predicate acts there is both relationship and continuity." *Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, No. 89-CV-2809, 1996 WL 442799, at *6 (S.D.N.Y. Aug. 6, 1996) (a pattern consists of "at least two predicate acts that occurred within two years of each other"). Failure to allege a pattern of racketeering activity by Eastdil is an independent reason why the § 1962(c) claim fails.

The only wrongful acts allegedly taken by Eastdil were (i) its submission and subsequent withdrawal of an affidavit in Conseco's bankruptcy case in March and April

---

[6] Plaintiffs cannot rely on Eastdil's purported involvement in a "conspiratorial participation . . . to launder money" (*id.* ¶ 361) as a predicate act. Not only is there an utter absence of facts to support this conclusory allegation, but an alleged conspiracy to commit a violation listed in 18 U.S.C. § 1961(1)(B), which includes money laundering, cannot constitute a predicate act under the RICO statute. *Rambarran v. Mount Sinai Hosp.*, No. 06-CV-5109, 2008 WL 850478, at *6 (S.D.N.Y. Mar. 28, 2008).

2003 supporting its retention to sell the GM Building (Cmplt. ¶¶ 302, 316), and (ii) its marketing and sale of the GM building between July 2003 and September 2003 (*id.* ¶¶ 302-16, 331-73, 411). Thus, any allegedly improper acts on the part of Eastdil occurred between March and September 2003. Neither "open-ended" continuity nor "closed-ended" continuity can be established on these facts. *See* Soros Brief at 34-38.

Plaintiffs have failed to plead open-ended continuity because the Complaint does not allege that Eastdil's alleged conduct was a regular aspect of its business, or that Eastdil is likely to repeat any of these alleged acts. Indeed, the allegations against Eastdil are finite, and involve its role in connection with a single matter -- the sale of the GM Building. *See* Soros Brief at 34-35.

Nor have Plaintiffs alleged closed-ended continuity with respect to Eastdil. To satisfy closed-ended continuity, the plaintiff must prove "a series of related predicates extending over a substantial period of time." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Ray Larsen Assocs., Inc.*, 1996 WL 442799, at *6 (quoting *H.J., Inc.*, 492 U.S. at 241-42). Eastdil's alleged wrongdoing in connection with the sale of the GM Building spans the course of approximately six months, which, as a matter of law, is an insufficient period of time for a finding of closed-ended continuity. *Id.* at *9 (allegation of seventeen-month scheme insufficient to constitute closed-ended continuity); *see also* Soros Brief at 35-37.

The lone reference to Eastdil's role in Macklowe's purchase of seven office buildings from Blackstone in 2007 (Cmplt. ¶ 417) does not alter the analysis. As

explained *supra* at 6, this paragraph concerns an unrelated real estate transaction and, in any event, does not accuse Eastdil of any wrongful conduct. See Soros Brief at 37-38.

### C. Eastdil Is Not Alleged to Have Participated in the Operation or Management of the Enterprise

The § 1962(c) claim fails for the additional reason that the Complaint does not allege that Eastdil participated in the operation or management of the enterprise. Section 1962(c) states that it is unlawful:

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

The United States Supreme Court has held that in order "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs . . . one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (accounting firm's failure to provide certain information to board members of the alleged enterprise did not constitute "operation or management" of an enterprise and was insufficient to give rise to § 1962(c) liability). "RICO liability will not be imposed upon a defendant simply because he provides goods and services that benefit the RICO enterprise." *Vickers v. Quotron Sys., Inc.*, No. 96-CV-2269, 1997 WL 420265, at *4 (S.D.N.Y. July 25, 1997), *aff'd*, Docket No. 97-9114 (2d Cir. Aug. 24, 1998) (finding that defendant's activities "arise directly from their contractual relationship" with the victim enterprise and do not lead to the conclusion that defendant directed the enterprise's affairs "like one who gives bribes").

The Complaint contains no allegations that Eastdil directed, controlled or had any supervisory or management responsibilities whatsoever with respect to the alleged

enterprise.[7] Rather, the Complaint alleges that Eastdil was retained by Conseco to provide services in connection with the sale of the GM Building, such as publishing the bid requirements (Cmplt. ¶ 341), circulating an informational memorandum and a confidentiality agreement (*id.* ¶ 344), inviting bids (*id.*), conducting the sale process (*id.* ¶ 346) and scheduling the final bid (*id.* ¶ 351). The Complaint does not allege, and these acts do not suggest, that Eastdil had any control over the seller that retained Eastdil or over any alleged RICO enterprise.

In similar circumstances, where "outsiders" such as Eastdil provided services to clients who allegedly operated an enterprise, and were not alleged themselves to have controlled or managed the enterprise, courts in this District have not hesitated to dismiss § 1962(c) claims against such defendants. *See, e.g., Friedman v. Hartmann*, No. 91-CV-1523, 1996 WL 457300, at *7 (S.D.N.Y. Aug. 13, 1996) (dismissing § 1962(c) claim on summary judgment against attorney outsider because attorney "did not 'operate or manage' the affairs of" the subject companies); *Rosendale v. Citibank, N.A.*, No. 94-CV-8591, 1996 WL 175089, at *3 (S.D.N.Y. Apr. 15, 1996) (dismissing § 1962(c) claim against attorneys when complaint asserted only "bald allegation," without factual support, that they were associated with the enterprise, and no allegation that they participated in the operation or management of the enterprise); *Strong & Fisher Ltd. v. Maxima Leather, Inc.*, No. 91-CV-1779, 1993 WL 277205, at *1 (S.D.N.Y. July 22, 1993) (dismissing § 1962(c) claim against moving defendants, who were factors for the alleged enterprise, because "the complaint fails to allege facts which support a conclusion that these

---

[7] As explained in the Soros Brief at 26-30, the Complaint does not adequately allege the existence of an enterprise at all. It certainly does not explain how any such enterprise operated or what each Defendant's role was, if at all, with respect to the enterprise, including Eastdil's.

defendants had some part in directing [the enterprise's] activities"); *Sundial Int'l Fund Ltd. v. Delta Consultants, Inc.*, 923 F.Supp. 38, 41 (S.D.N.Y. 1996) (dismissing § 1962(c) claim against individual bank officers and banks who held investors' deposits in fraudulent schemes after court concluded that "under no possible set of allegations could it be found that the bank defendants . . . played any role in directing the affairs of" the enterprise). *See also Reves*, 507 U.S. at 185, and *Vickers*, 1997 WL 420265, at *4 (*supra* at 14).

## IV. PLAINTIFFS HAVE NOT SUFFICIENTLY PLEADED A § 1962(b) CLAIM AGAINST EASTDIL

The Complaint's conclusory allegations against Eastdil also fail to state a claim under § 1962(b) of the RICO statute. Section 1962(b) states:

> It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

"In order to state a claim under § 1962(b), plaintiffs must allege that the injury was caused by the acquisition or maintenance of control and not by the predicate acts." *Allen v. New World Coffee, Inc.*, No. 00-CV-2610, 2002 WL 432685, at *5 (S.D.N.Y. Mar. 19, 2002) (internal quotation omitted).

As described above, the Complaint alleges that Eastdil ran a "sham auction," but contains no factual allegations whatsoever that (i) Eastdil acquired an interest in or control of the alleged enterprise; or (ii) Plaintiffs were injured by reason of any such acquisition. The absence of any facts that might satisfy these elements mandates dismissal of this claim. *See id.* (dismissing § 1962(b) claim when "Plaintiffs offer[ed] no factual allegations to support a claim of distinct acquisition injury"); Soros Brief at 39.

V. **THE SHERMAN ACT CLAIM IS TIME BARRED AND HAS NO MERIT**

Plaintiffs' claim against Eastdil under the Sherman Act should be dismissed for the same reasons that it fails against the other Defendants: it is time barred by the four-year statute of limitations, and the Complaint fails to plead antitrust injury. *See* Soros Brief at 40-44.

## CONCLUSION

For all of the reasons herein and in the Soros Brief, the Complaint against Eastdil should be dismissed with prejudice.

Dated:  New York, New York
        December 22, 2008

Respectfully Submitted,

GOLENBOCK EISEMAN ASSOR
 BELL & PESKOE LLP

By: /s/ Jacqueline G. Veit
    Jacqueline G. Veit (JV-2935)
    Laura Sulem (LS-6621)

437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 907-7300
jveit@golenbock.com
lsulem@golenbock.com

*Attorneys for Defendant Eastdil Secured, LLC*

444811.5                          17