UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

LESLIE DICK WORLDWIDE, LTD. and          :
LESLIE DICK,                             :
                                         :
                Plaintiffs,              :
                                         :
        v.                               :          No. 08 Civ. 7900 (BSJ) (THK)
                                         :
GEORGE SOROS, SOROS FUND                 :
MANAGEMENT, LLC, SFM                     :
MANAGEMENT, LLC, CONSECO, INC.           :
VORNADO REALTY TRUST, GERMAN             :
AMERICAN CAPITAL CORP., DEUTSCHE         :
BANK, AG., EASTDIL SECURED, LLC,         :          ECF CASE
HARRY MACKLOWE, FIG, LLC, CERBERUS       :
CAPITAL MANAGEMENT, LP, LAZARD           :
FRERES & CO. LLC, KIRKLAND & ELLIS, LLP,:
FRIED, FRANK, HARRIS, SHRIVER &          :
JACOBSON LLP, CARMEL FIFTH, LLC,         :
CARMEL FIFTH, LLC, 767 MANAGER, LLC,     :
DONALD J. TRUMP                          :
and John Does "1" through "10,"          :
                                         :
                Defendants.              :

----------------------------------------------------------------x


## DEFENDANT FIG LLC'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
Marc E. Kasowitz
Albert Shemmy Mishaan
Kenneth R. David
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Defendant FIG LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................................ 4

    A.    Plaintiffs' Prior State Court Action ..................................................................... 4

    B.    Allegations Concerning FIG in This Action ......................................................... 4

            1.    The Sale of the GM Building in 2003 ...................................................... 5

            2.    The Unrelated Allegations Involving FIG ................................................ 5

    C.    Motion to Quash – Solow Action ....................................................................... 7

ARGUMENT ............................................................................................................................................ 9

I.    PLAINTIFFS' RICO CLAIMS AGAINST FIG SHOULD BE DISMISSED ................. 9

    A.    Plaintiffs' RICO Claims Against FIG are Barred by Res Judicata ......................... 9

    B.    Plaintiffs' Claims Against FIG Are Barred by Collateral Estoppel ..................... 12

    C.    Plaintiffs' RICO Claims are Time-Barred .......................................................... 14

    D.    Plaintiffs Lack Standing to Assert RICO Claims Against FIG ............................. 14

    E.    Plaintiffs Have Not Pled the Elements of a RICO Claim Against FIG ............... 16

    F.    Plaintiffs Have Not Alleged That FIG Committed Any Predicate Acts of
          Racketeering ...................................................................................................... 18

II.    PLAINTIFFS' ANTITRUST CLAIMS AGAINST FIG SHOULD BE
    DISMISSED ........................................................................................................................ 20

III.    PLAINTIFFS' CLAIMS AGAINST FIG SHOULD BE DISMISSED
    WITH PREJUDICE ............................................................................................................ 20

CONCLUSION ....................................................................................................................................... 22

## TABLE OF AUTHORITIES

### Cases

*Amadsau v. Bronx Lebanon Hosp. Ctr.*,
  No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746 (S.D.N.Y. Jan. 21, 2005), *adopted by* No.
  03 Civ. 6450 (LAK), 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005), *aff'd*, 225 Fed. Appx. 32
  (2d Cir. 2007)............................................................................................................................... 13

*Amalgamated Sugar Co. v. NL Indus., Inc.*,
  825 F.2d 634 (2d Cir. 1987).......................................................................................................... 10

*Andrea Doreen Ltd. v. Bldg. Material Local Union 282*,
  299 F. Supp. 2d 129 (E.D.N.Y. 2004) .......................................................................................... 13

*Arbitron Co. v. Tropicana Prod. Sales, Inc.*,
  No. 91 Civ. 3697 (PKL), 1993 WL 138965 (S.D.N.Y. Apr. 23, 1993)......................................... 20

*Browning Ave. Realty Corp. v. Rubin*,
  207 A.D.2d 263, 615 N.Y.S.2d 360 (1st Dep't 1994)................................................................... 10

*Buechel v. Bain*,
  97 N.Y.2d 295, 740 N.Y.S.2d 252, 766 N.E.2d 914 (2001)......................................................... 12

*Cahill v. Arthur Andersen & Co.*,
  659 F. Supp. 1115 (S.D.N.Y. 1986), *aff'd*, 822 F.2d 14 (2d Cir. 1987) ...................................... 11

*City of New York v. Smokes-Spirits.com, Inc.*,
  541 F.3d 425 (2d Cir. 2008)........................................................................................................... 17

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994)........................................................................................................ 15, 16

*Haughton v. Burroughs*,
  No. 98 Civ. 3418 (BSJ), 2004 WL 330242 (S.D.N.Y. Feb. 23, 2004)......................................... 21

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997)....................................................................................................................... 14

*Lakonia Mgmt. Ltd. v. Meriwether*,
  106 F. Supp. 2d 540 (S.D.N.Y. 2000)........................................................................................... 19

*Leptha Enters., Inc. v. Longenback*,
  No. 90 Civ. 7704 (KTD), 1991 WL 183373 (S.D.N.Y. Sept. 9, 1991) ........................................ 11

*Lerner v. Fleet Bank, N.A.,*
    318 F.3d 113 (2d Cir. 2003)........................................................................................................ 15

*Moore v. Guesno,*
    485 F. Supp. 2d 300 (W.D.N.Y. 2007), *aff'd*, No. 07-2463-CV, 2008 WL 5082982 (2d Cir.
    Dec. 1, 2008)......................................................................................................................... 16, 17

*Moore v. PaineWebber, Inc.,*
    189 F.3d 165 (2d Cir. 1999)...................................................................................................... 19

*New York v. Julius Nasso Concrete Corp.,*
    202 F.3d 82 (2d Cir. 2000)........................................................................................................ 13

*Official Publ'ns, Inc. v. Kable News Co., Inc.,*
    811 F. Supp. 143 (S.D.N.Y. 1993) ........................................................................................... 10

*Ouaknine v. MacFarlane,*
    897 F.2d 75 (2d Cir. 1990)........................................................................................................ 15

*Ray Larsen Assocs., Inc. v. Nikko America, Inc.,*
    No. 89 Civ. 2809 (BSJ), 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) .......................... 16, 17, 18

*Ruskay v. Jensen,*
    342 F. Supp. 264 (S.D.N.Y. 1972), *aff'd*, 552 F.2d 392 (2d Cir. 1977) ................................... 11

*Schwartzreich v. E.P.C. Carting Co., Inc.,*
    246 A.D.2d 439, 668 N.Y.S.2d 370 (1st Dep't 1998)................................................................ 9

*Sedima v. Imrex Co., Inc.,*
    473 U.S. 479 (1985).................................................................................................................. 15

*Singh v. Parnes,*
    199 F. Supp. 2d 152 (S.D.N.Y. 2002)............................................................................ 13, 16, 21

*Solow v. Conseco, Inc.,*
    No. 06 Civ. 5988 (BSJ) (THK), 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008)................ 8, 15, 18

*Somerville House Mgmt., Ltd. v. Arts & Entm't Television Network,*
    No. 92 Civ. 4705 (LJF), 1993 WL 138736 (S.D.N.Y. Apr. 28, 1993) ................................ 10, 11

*Spitzer v. Applied Card Sys., Inc.,*
    11 N.Y.3d 105, 863 N.Y.S.2d 615, 894 N.E.2d 1 (2008)....................................................... 9, 10

*Standardbred Owners Ass'n v. Roosevelt Raceway Assocs., L.P.,*
    985 F.2d 102 (2d Cir. 1993)...................................................................................................... 15

*Stolow v. Greg Manning Auctions Inc.,*
258 F. Supp. 2d 236 (S.D.N.Y. 2003), *aff'd,* 80 Fed. Appx. 722 (2d Cir. 2003) ......... 15, 16, 17

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch,*
No. 03 Civ. 8606 (RWS), 2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004)................................. 20

*Wolf v. Wagner Spray Tech Corp.,*
715 F. Supp. 504 (S.D.N.Y. 1989) ...................................................................................... 14

## Statutes

18 U.S.C. § 1962(a) (2008)........................................................................................... 16, 17
18 U.S.C. § 1962(b) (2008) .......................................................................................... 16, 17
18 U.S.C. § 1962(d) (2008) .............................................................................................. 17
18 U.S.C. § 1964(c) (2008)............................................................................................... 15

## Rules

Fed. R. Civ. P. 8(a) ........................................................................................................... 1
Fed. R. Civ. P. 9(b) ................................................................................................. 1, 18, 19
Fed. R. Civ. P. 12(b)(6)...................................................................................................... 1

Defendant FIG LLC ("FIG") respectfully submits this memorandum of law in support of

its motion to dismiss the complaint ("Complaint" or "Compl.") pursuant to Federal Rules of

Civil Procedure 8(a), 9(b), and 12(b)(6). In an effort to minimize duplication and the burden on

the Court, FIG joins, and incorporates herein by reference, the arguments contained in Sections

I-III and V of the Brief in Support of the Soros Defendants' Motion to Dismiss the Complaint

("Soros Brief") and accompanying declaration, as well as any other arguments by other

defendants applicable to plaintiffs' claims against FIG. FIG separately addresses herein those

issues and arguments relating to allegations made specifically against it.

## PRELIMINARY STATEMENT

Plaintiffs have filed this action in an attempt to revive their dismissed state court claims

by bringing sweeping and incoherent federal RICO and antitrust claims against the 17 named

defendants. These frivolous claims are not only unsupported by any relevant factual allegations,

but are time-barred and subject to defenses of *res judicata* and collateral estoppel.

Plaintiffs contend that they were wrongfully deprived of the right to purchase the General

Motors Building in New York City (the "GM Building") in 2003, and that alleged deprivation

forms the sole basis for plaintiffs' claims in this action. FIG is an indirect subsidiary of Fortress

Investment Group LLC ("Fortress"), a publicly-traded alternative asset management firm.[1] FIG

---

[1]     Plaintiffs allege that FIG "was a member of the RICO Enterprise, and was known at all times herein as
Fortress Investment Group, LLC." (Compl. ¶ 31.) FIG is a separate entity from Fortress, which has not been sued
in this action. Plaintiffs nevertheless appear to refer to the two entities interchangeably in the Complaint, even
though only FIG is a named defendant. (*See id.*) Because it is impossible to discern the basis for plaintiffs'
scattershot pleading, for the purposes of this motion, FIG will assume that references to Fortress are in fact
references to FIG, the actual named defendant. In addition, the affidavit of service plaintiffs filed with the Court
states that they served "FIG LLC sued herein as Fig Fig LP," although "Fig Fig LP" is neither named nor referenced
in the Complaint in anyway. Plaintiffs' affidavit of service also demonstrates that they did not serve the correct
"FIG LLC" because the FIG LLC they served listed a service address of "Annelore, 536 Hudson Street, New York,
New York 10014," instead of Fortress's address or the address of its registered agent -- CT Corporation System. All
of which may explain why, to this day, neither FIG nor Fortress has ever been served with a Summons and
Complaint in this action.

had no involvement in the alleged fraudulent bidding process for the GM Building in 2003 that supposedly caused plaintiffs' injury, and there is not a single factual allegation in the Complaint that suggests otherwise. Thus, simply put: because FIG is not alleged to have participated in any activity that caused plaintiffs' purported injury, the claims against FIG should be dismissed in their entirety.

Parties who were not involved in the 2003 bidding for the GM Building, like FIG, have been newly named as defendants in this action because plaintiffs are trying to disguise the reality that they have already litigated the same claims and lost. As set forth in detail in the Soros Brief, plaintiffs fully litigated their claims concerning the 2003 sale of the GM Building against many of the same parties in state court. Having failed in that forum, plaintiffs fabricated a vast and fantastical RICO Enterprise -- by adding a number of additional defendants and allegations that relate to transactions far afield from the transaction that is actually alleged to have caused plaintiffs' injury -- in a transparent attempt to litigate their prior claims anew. However, as set forth in the Soros Brief, plaintiffs are barred by *res judicata* from relitigating their state court claims and all of their claims are barred by the statute of limitations. Though FIG was not a party to plaintiffs' earlier state court action, FIG is entitled under New York law to assert the defense of *res judicata* against plaintiffs -- who were parties to that action -- to preclude plaintiffs from relitigating their claims, which arise entirely out of the same transaction on which the state action was based, as well as principles of collateral estoppel.

Cutting through the Complaint's vague, conclusory and often unintelligible allegations, the only thing that FIG is alleged to have actually done is enter into unrelated business transactions with certain defendants. While some of these defendants, like Conseco, Inc. and Harry Macklowe, were involved in the 2003 sale of the GM Building, FIG was not, and none of

the transactions that plaintiffs allege FIG participated in relate to that sale. Plaintiffs therefore
lack standing to assert RICO claims against FIG based on activity that is not alleged to have
harmed plaintiffs. Plaintiffs also fail to allege the most basic elements of their RICO claims
against FIG, including that FIG (i) actually participated in the alleged enterprise through a
"pattern of racketeering activity," (ii) invested, or acquired an interest in the enterprise, or
(iii) committed any of the alleged predicate acts. Each of these flaws is fatal and each
individually would result in the dismissal of plaintiffs' RICO claims against FIG. Taken
together, they show the complete failure of plaintiffs to plead any cognizable RICO claim against
FIG.

Also, as set forth in the Soros Brief, plaintiffs' antitrust claim based on purported "bid-
rigging" does not state a cause of action under the antitrust laws. Moreover, since plaintiffs
utterly fail to allege even a single fact suggesting that FIG was involved in any way with the
alleged fraudulent bidding process for the GM Building, plaintiffs clearly have not sufficiently
alleged that FIG conspired with anyone to rig the bidding for that sale. As with plaintiffs'
frivolous RICO claims, their antitrust claim against FIG is wholly without merit and should be
dismissed.

Plaintiffs' attempt to load the Complaint with irrelevant allegations concerning unrelated
transactions and conclusory broadsides (without any factual support) against the defendants does
nothing to bolster their wholly insufficient claims against FIG. Plaintiffs should not be permitted
to continue their vexatious and repetitive litigation that plainly lacks any basis in law or fact and
serves no purpose other than harassment. Their claims should be dismissed with prejudice.

3

## STATEMENT OF FACTS

### A.   Plaintiffs' Prior State Court Action

Though plaintiffs fail to acknowledge it, and as the Soros Brief discusses in detail, plaintiffs brought an action in New York state court in 2006 (the "State Action"), seeking damages for the harm they allegedly suffered as a result of their failure to acquire the GM Building in 2003 -- precisely the same injury alleged in this action. (Soros Brief at 5-7.) As here, plaintiffs did not allege in the State Action that FIG participated in the 2003 bidding process, but instead made allegations about transactions allegedly involving FIG that had nothing to do with plaintiffs' claims. (*See* Amended Verified Complaint, *Leslie Dick Worldwide Ltd, v. Macklowe Props., Inc.*, Index No. 06/600222 (N.Y. Sup. Ct. May 30, 2006) ¶¶ 6-7, 57 (alleging (i) that Soros "obtained effective control over the assets of Conseco Finance Corp. through . . . a joint venture led by Fortress Investment Group LLC, the same Soros-controlled entity that provided . . . debtor in possession financing through an affiliate (FPS DIP LLC);" and (ii) that FIG was an investor in Trump Chicago and "provided $160 million in financing, and is partially owned (50%) by Mapeley Holdings Ltd., another Soros-controlled company") (attached as Exhibit A to the Declaration of John R. Oller ("Oller Decl."), dated December 22, 2008).)

However, unlike in this action, plaintiffs did not name FIG as a defendant in the State Action, presumably because FIG has nothing to do with the injury plaintiffs allegedly suffered. As set forth in the Soros Brief, all of plaintiffs' claims in the State Action were dismissed on the merits, and affirmed on appeal when plaintiffs fully exhausted their appellate relief. (Soros Brief at 7.)

### B.   Allegations Concerning FIG in This Action

Having lost their first suit concerning the 2003 bidding and sale of the GM Building, plaintiffs filed this action, which asserts claims based upon the exact same injury. In an attempt

4

to camouflage the fact that they have merely restated their dismissed state court claims, plaintiffs expanded their federal Complaint to include even more allegations that are entirely unrelated to the 2003 sale of the GM Building and have named additional parties like FIG who were strangers to that bidding process.

### 1.    The Sale of the GM Building in 2003

The incoherent nature of plaintiffs' allegations make it difficult to articulate the purported basis for plaintiffs' claims against FIG or to discern exactly how FIG supposedly violated the RICO and antitrust statutes. However, what is entirely clear is that the factual allegations concerning FIG have nothing to do with the sale of the GM Building in 2003. Because there are no facts to tie FIG to that sale, plaintiffs simply lump FIG together in a string-cite of defendants with no supporting facts:

> This bidding process was rigged by Soros, Conseco, Vornado, Fortress and Eastdil, Kirkland & Ellis and Fried Frank Harris Shriver & Jacobson and was rife with fraud, bad faith and in violation of the rule of law that every contract contains an obligation of good faith and in violation of RICO by reason of the Money Laundering purpose of the sale and of the Sherman Act by being in restraint of trade.

(Compl. ¶ 353; *see also id.* ¶ 361 (alleging in a conclusory allegation that FIG was in a conspiracy to launder money).)[2]

### 2.    The Unrelated Allegations Involving FIG

Though FIG was not involved in the 2003 sale of the GM Building, plaintiffs include irrelevant allegations purporting to describe FIG's involvement with (i) defendant Conseco Inc.'s

---

[2]    Although plaintiffs mention FIG in their section heading on alleged "Money Laundering" through the purchase of the GM Building, and refer to an unexplained "chart" that references FIG (attached to the Complaint as Exhibit LL) and purports to show the various entities involved with the alleged money laundering, neither the text of the Complaint nor the chart provide any facts concerning any alleged money laundering by FIG or participation by FIG in the sale of the GM Building. (Compl. at 77 & n.15.) Exhibit LL simply notes that Fortress and "Soros [are] 50/50 partners in Mapley [sic], a Curacao, N.A. [entity]," but does not provide any factual allegations connecting Fortress with any aspect of the bidding, sale, financing, or proceeds from Macklowe's acquisition of the GM Building in 2003.

bankruptcy; (ii) a hotel project by defendant Donald Trump in Chicago ("Trump Chicago"); (iii)

defendant Harry Macklowe's purchase of office buildings in New York City in 2007; and (iv)

"partnerships" with defendant George Soros. Plaintiffs conclude without any factual support that

these transactions were unlawful and in furtherance of the RICO enterprise. (Id. ¶¶ 166, 168,

170-71, 414, 424.)

Plaintiffs do not allege that they were injured in any way by any of the unrelated

transactions in which they allege FIG was involved, nor do plaintiffs' allegations concerning

these transactions allege any unlawful conduct by FIG. Rather, the Complaint merely alleges

entirely lawful (and often times court-approved) conduct by FIG, which, most significantly, has

no connection to plaintiffs and their alleged injury.

With respect to the Conseco bankruptcy, the Complaint alleges facts that, taken as true,

suggest only that (i) FIG was one of three "members" of CFN Holdings, LLC ("CFN Holdings"),

which acquired Conseco Finance Corp. ("Conseco Finance") through a court-approved

agreement and auction in the Conseco bankruptcy[3] (id. ¶¶ 188-89, 198, 210-14, 222, 237, 295,

330); and (ii) FIG was one of two entities that "controlled" FPS DIP, LLC ("FPS DIP"), which

provided court-approved debtor-in-possession financing to Conseco in bankruptcy[4] (id. ¶¶ 199,

206-10, 215, 225, 317).

Plaintiffs' allegations concerning the other unrelated conduct are similarly deficient. The

Complaint alleges merely that FIG provided mezzanine financing for the Trump Chicago project.

---

[3]      As to specific conduct by FIG, the Complaint only alleges that it was one of three members of CFN
Holdings (Compl. ¶ 189), and that defendant Lazard provided "Fortress Financial" with information on an
unspecified date about the value of Conseco Finance (id. ¶ 163). Plaintiffs allege no other actual facts as to conduct
by FIG, but, rather, seem to contend (without any factual support) that FIG should be liable for CFN Holdings'
alleged conduct in the Conseco bankruptcy.

[4]      The Complaint's only allegations as to conduct by FIG concerning the DIP financing for Conseco is that
"[u]pon information and belief, FPS DIP was also controlled by Fortress Investment Group and George Soros."
(Compl. ¶ 191.) However, plaintiffs do not allege any facts to support their conclusion that FIG controlled FPS DIP
and plaintiffs allege no other related conduct by FIG.

(*Id.* ¶¶ 171 & n.6, 415.)  Plaintiffs also allege that FIG financed part of Macklowe's 2007 acquisition of seven office buildings in New York City by loaning him $1.2 billion, which then grew to $1.4 billion, and that it sold "25 percent of the equity" to Deutsche Bank.  (*Id.* ¶¶ 419-20.)  There are no factual allegations connecting any of these subsequent transactions to the sale of the GM Building in 2003, or to plaintiffs' alleged injury.

Finally, consistent with their obvious practice of including any possible connection between any two defendants (no matter how irrelevant or inaccurate), plaintiffs allege that FIG and defendant George Soros had overseas "partnerships," including "Mapeley Holdings, Ltd." through which plaintiffs allege -- without any factual support -- that FIG and Soros are co-conspirators in money laundering.  (*Id.* ¶¶ 171 n.6, 191.)  However, the Complaint contains no allegations, whether factual or even conclusory, that connect these alleged "partnerships" between Soros and FIG to any of the conduct alleged in the Complaint, let alone the sale of the GM Building in 2003 that allegedly caused plaintiffs' injury.

### C.    Motion to Quash -- Solow Action

Plaintiffs' baseless inclusion of FIG as a defendant in this action is highlighted not only by plaintiffs' failure to name FIG as a defendant when they sued for the same alleged injuries in the State Action, but also by Magistrate Judge Katz's recent decision in connection with a discovery motion in an action by another plaintiff who unsuccessfully sought to purchase the GM Building in 2003.  In that action, plaintiff Sheldon Solow seeks damages based on claims nearly identical to plaintiffs' claims in the State Action, and, like plaintiffs in the State Action, did not name FIG (or any related entity) as a defendant or allege that FIG was involved in the 2003 sale.  Solow did, however, serve a subpoena on Fortress seeking documents concerning any transactions with Harry Macklowe, a non-party in that action, relating to the GM Building between 2002 and 2007, including any financing or refinancing of the GM Building and any

7

pledges of Macklowe's interest in the building. *Solow v. Conseco, Inc.*, No. 06 Civ. 5988 (BSJ) (THK), 2008 WL 190340, at *1-2 (S.D.N.Y. Jan. 18, 2008).

Macklowe moved to quash the subpoena to Fortress, arguing that the documents sought by Solow were irrelevant because, among other reasons, Fortress "was not involved in Macklowe's purchase of the General Motors Building. Macklowe did not directly seek and did not obtain financing from Fortress in connection with the 2003 transaction." *Id.* at *5. As such, the Court found that "the documents sought in the subpoena have little or no relevance to the claims and defenses in [Solow's] action [concerning the sale of the GM Building in 2003]." *Id.* Thus, Magistrate Judge Katz found that FIG was not even sufficiently connected to the 2003 sale of the GM Building to be required to provide documents or testimony, not to mention be named as a party.

## ARGUMENT[5]

### I.

## PLAINTIFFS' RICO CLAIMS AGAINST
## FIG SHOULD BE DISMISSED

### A.   Plaintiffs' RICO Claims Against FIG are Barred by *Res Judicata*

Plaintiffs unsuccessfully litigated their claims relating to the 2003 sale of the GM

Building in state court and exhausted all appellate avenues. They may not resuscitate these dead

claims by recasting them as federal RICO claims, and those claims should be dismissed.

As the Soros Brief demonstrates, plaintiffs' RICO claims are barred by *res judicata*

because the gravamen of the wrong alleged in both the State Action and the current action is the

same: plaintiffs were allegedly injured when they participated in the alleged fraudulent bidding

process for the GM Building in 2003. (Soros Brief at 17-22.) Although FIG was not a party to

the State Action, plaintiffs' claims against FIG are also barred by *res judicata* under New York

law.

As the New York Court of Appeals recently held: "In New York, *res judicata*, or claim

preclusion, bars successive litigation based on the 'same transaction or series of connected

transactions' if: (i) there is a judgment on the merits rendered by a court of competent

jurisdiction, and (ii) *the party against whom the doctrine is invoked* was a party to the previous

action, or in privity with a party who was." *Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105,

123, 863 N.Y.S.2d 615, 626, 894 N.E.2d 1, 12 (2008) (emphasis added and citations omitted);

*see also Schwartzreich v. E.P.C. Carting Co., Inc.*, 246 A.D.2d 439, 441, 668 N.Y.S.2d 370, 372

---

[5]      In addition to the arguments set forth herein, FIG joins, and incorporates by reference, the arguments in the
Soros Brief that all of plaintiffs' claims should be dismissed because they are (i) barred by *res judicata*; (ii) barred
by the statute of limitations; and (iii) fail to sufficiently state a claim for violations of either the RICO or antitrust
statutes. (Soros Brief §§ I-III, V.) Additional reasons why plaintiffs' claims against FIG should be dismissed are
discussed below.

(1st Dep't 1998) ("If the party against whom res judicata is invoked had a full and fair opportunity to litigate the claim in a prior proceeding based on the same transaction, but did not raise it therein, he will be barred from raising it in a subsequent action."); *Browning Ave. Realty Corp. v. Rubin*, 207 A.D.2d 263, 264-65, 615 N.Y.S.2d 360, 362 (1st Dep't 1994) ("The previous disposition must have been on the merits and the party opposing preclusion must have had a full and fair opportunity to litigate this claim in the prior proceeding.").

There is no dispute, nor could there be, that plaintiffs in this action were the plaintiffs in the State Action and that they had a full and fair opportunity to litigate their claims concerning their alleged injuries in that action. Thus, plaintiffs' claims against FIG are barred by *res judicata* based on the standard set forth by the New York Court of Appeals in *Applied Card Systems* and for the reasons set forth in the Soros Brief. (Soros Brief at 17-22.) Those claims should therefore be dismissed

Moreover, even if New York law required that the party asserting a defense of *res judicata* (as opposed to the party against whom *res judicata* is being asserted) was a party to the original action or in privity with such a party, the claims against FIG would still be barred. The concept of privity "is to be applied with flexibility." *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987); *see also Official Publ'ns, Inc. v. Kable News Co., Inc.*, 811 F. Supp. 143, 147 (S.D.N.Y. 1993) ("Where the 'new' defendants are sufficiently related to one or more of the defendants in the previous action which arises from the same transaction all defendants may invoke *res judicata*."). Thus, "a number of courts have found that alleged co-conspirators can be considered 'in privity' with one another for *res judicata* purposes, despite the fact that those parties might have some adverse interests." *Somerville House Mgmt., Ltd. v. Arts & Entm't Television Network*, No. 92 Civ. 4705 (LJF), 1993 WL 138736, at *2 (S.D.N.Y. Apr.

28, 1993) (collecting cases); *see also Leptha Enters., Inc. v. Longenback,* No. 90 Civ. 7704

(KTD), 1991 WL 183373, at \*2 (S.D.N.Y. Sept. 9, 1991) (permitting use of *res judicata* by

defendant where plaintiff was aware of defendant at the time of the earlier action and "the instant

complaint names the previously unnamed defendants merely as co-conspirators; their alleged

activities were not independent of the actions of the earlier defendants"); *Cahill v. Arthur*

*Andersen & Co.,* 659 F. Supp. 1115, 1121-23 (S.D.N.Y. 1986) (permitting use of *res judicata* by

defendant where plaintiff was aware of defendant at time of earlier action and defendant's

"participation in the activities that the plaintiff now complains of is not independent of the

actions of the earlier defendants"), *aff'd,* 822 F.2d 14 (2d Cir. 1987).

Here, plaintiffs were aware of FIG's alleged conduct at the time the State Action was

filed -- they even included those allegations in the state court complaint -- and they now allege

that FIG was a conspirator with other defendants who were named parties in the State Action.

Having made those allegations of conspiracy, plaintiffs may not now argue that FIG is not

sufficiently tied to the other defendants to assert a defense of *res judicata* to plaintiffs' RICO

claims. *See Somerville,* 1993 WL 138736, at \*2-3; *Leptha,* 1991 WL 183373, at \*2-3; *Cahill,*

659 F. Supp. at 1121-23; *see also Ruskay v. Jensen,* 342 F. Supp. 264, 271 (S.D.N.Y. 1972)

("new" defendant may assert *res judicata* where plaintiff was "fully aware of the role played by

the present defendants who were not parties to the earlier proceeding"), *aff'd,* 552 F.2d 392 (2d

Cir. 1977).

Under any applicable standard, plaintiffs' claims against FIG are barred by *res judicata*

and should be dismissed.

**B.** **Plaintiffs' Claims Against FIG Are Barred by Collateral Estoppel**

Moreover, even if *res judicata* did not dispose of the RICO claims against FIG -- which it does -- plaintiffs are precluded from alleging that the 2003 bidding process for the GM Building was unlawful and that they were injured thereby.

Under New York law, "[c]ollateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity." *Buechel v. Bain*, 97 N.Y.2d 295, 303, 740 N.Y.S.2d 252, 257, 766 N.E.2d 914, 919 (2001). To invoke collateral estoppel, "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action and there must have been a full and fair opportunity to context the decision now said to be controlling." *Id.*

As detailed in the Soros Brief, plaintiffs' claims in the State Action were dismissed because the Court found as a matter of law that plaintiffs were not defrauded in the bidding process for the GM Building in 2003 since they had expressly acknowledged that the sellers of the building reserved their rights to manage the bidding process precisely the way plaintiffs contended in that action (and here) was improper. (*See* Soros Brief at 5-7.)

Here, once again, plaintiffs' sole asserted injury is that they were harmed through a fraudulent and improper bidding process for the sale of the GM Building in 2003. The purported basis for these claims is that various defendants made statements implying that "the bidding process was going to take place in good faith were false and were intended for plaintiffs to rely thereupon to their detriment" (Compl. ¶ 345), and that "the racketeering Enterprise never intended to adhere to the bidding procedure or the rules of the bidding process and never intended to sell the General Motors Building to plaintiff, who was the highest and best bidder on the General Motors Building" (*id.* ¶ 350). Thus, plaintiffs contend that the bidding process was

"a dumb-show" (*id.* ¶ 343), "rife with fraud [and] bad faith" (*id.* ¶ 353), and the procedure for the bidding was "a sham and never intended to be followed" (*id.* ¶ 371).

All of these issues were litigated and decided in the State Action and plaintiffs should not be permitted to waste this Court's resources and the time and money of the defendants relitigating the central issues in the State Action.

Moreover, there can be no dispute that the issues decided in the State Action were necessary to the state court's decision, or that plaintiffs had a full and fair opportunity to contest the decision. Therefore, plaintiffs are precluded from relitigating whether the 2003 bidding process for the GM Building was fraudulent or a "sham auction" or whether they were injured thereby. *See New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86-87 (2d Cir. 2000) (mail fraud "verdicts involved necessary findings regarding the defendants' participation in bid-rigging activities" that allow for the use of collateral estoppel); *Singh v. Parnes*, 199 F. Supp. 2d 152, 160 (S.D.N.Y. 2002) (applying collateral estoppel to claims grounded on same issues as previously litigated claims); *Andrea Doreen Ltd. v. Bldg. Material Local Union 282*, 299 F. Supp. 2d 129, 146 (E.D.N.Y. 2004) ("Although the actual claims in the RICO case are not identical to those made in the [prior] ERISA Collection Action, underlying each of [Plaintiff's] allegations of mail and wire fraud is the contention that the Defendants intentionally or recklessly defrauded it because [Plaintiff] did not owe benefit contributions when the letters were sent. Thus, [Plaintiff] seeks to relitigate a factual issue decided by this Court—which it cannot do."); *Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746, at *5 (S.D.N.Y. Jan. 21, 2005) (Report and Recommendation) ("Collateral estoppel, or issue preclusion, bars Amadasu's claims in this action to the extent that they are premised on the

events that Amadasu described in his state law complaint."), *adopted by* No. 03 Civ. 6450

(LAK), 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005), *aff'd*, 225 Fed. Appx. 32 (2d Cir. 2007).

### C.   Plaintiffs' RICO Claims are Time-Barred

As the Soros Brief demonstrates, plaintiffs' RICO claims against all defendants are

barred by the four-year statute of limitations for civil RICO claims.  (Soros Brief at 22-25.)

Plaintiffs' allegations concerning FIG's post-2003 financing for the Trump Chicago project and

Macklowe's purchase of additional office buildings in Manhattan, none of which is alleged to

have injured plaintiffs, do not extend or restart the statute of limitations.  *Klehr v. A.O. Smith*

*Corp.*, 521 U.S. 179, 190 (1997) ("[P]laintiff[s] cannot use an independent, new predicate act as

a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside

the limitations period."); *Wolf v. Wagner Spray Tech Corp.*, 715 F. Supp. 504, 508 (S.D.N.Y.

1989) ("[T]he last act alleged to have injured plaintiffs . . . was . . . more than four years prior to

the commencement of this action, [and thus] plaintiffs' [claims] are time-barred.").

### D.   Plaintiffs Lack Standing to Assert RICO Claims Against FIG

Even if plaintiffs' RICO claims against FIG were not precluded -- which they are -- their

claims should nevertheless be dismissed as to FIG because plaintiffs lack standing to assert such

claims since they have not alleged (and cannot allege) that they were injured by *any* conduct by

FIG.  FIG did not participate in the 2003 bidding for or sale of the GM Building -- which is the

only event that plaintiffs allege caused it any injury -- and the allegations of other unrelated

conduct by FIG is not alleged to have been directed at plaintiffs in any way and is not alleged to

have caused plaintiffs any injury.  (*See supra* at 4-7.)  Plaintiffs' inability to allege any facts to

support this required element of their RICO claims requires that those claims be dismissed as to

FIG.

Plaintiffs may only assert a RICO claim if they "'ha[ve] been injured in [their] business or property *by the conduct constituting the violation*.'" *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990) (*quoting Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 497 (1985)); *accord* 18 U.S.C. § 1964(c) (2008); *Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 245-47 (S.D.N.Y. 2003), *aff'd*, 80 Fed. Appx. 722 (2d Cir. 2003); *see also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) ("RICO provides a civil remedy only to those persons injured 'by reason of' the defendant's predicate acts. To show that an injury resulted 'by reason of' the defendant's action, and therefore to have standing under RICO, the plaintiff must allege 'that defendant's violations were a proximate cause of the plaintiff's injury, i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct.'" (*quoting Standardbred Owners Ass'n v. Roosevelt Raceway Assocs., L.P.*, 985 F.2d 102, 104 (2d Cir. 1993)).

As shown in the Soros Brief, plaintiffs do not have standing to assert RICO claims based on their frivolous allegations of bankruptcy fraud and money laundering against any of the defendants because plaintiffs do not and cannot allege that they were injured by that alleged misconduct. (Soros Brief at 25-26.) But plaintiffs' lack of standing to assert RICO claims against FIG is even more stark. Plaintiffs have not alleged any facts suggesting that FIG rigged the bidding for the GM Building in 2003. Indeed, as Magistrate Judge Katz previously held, FIG was irrelevant -- even as a witness -- to the 2003 sale of the GM Building. *Solow v. Conseco, Inc.*, No. 06 Civ. 5988 (BSJ) (THK), 2008 WL 190340, at *5 (S.D.N.Y. Jan. 18, 2008). As such, plaintiffs have not alleged that the harm they allegedly suffered as a result of the alleged rigged bidding for the GM Building in 2003 was caused in any way by FIG, and thus, they do not have standing to assert such claims against FIG. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120-

23 (2d Cir. 2003); *First Nationwide*, 27 F.3d at 769-72; *Moore v. Guesno*, 485 F. Supp. 2d 300,
304-06 (W.D.N.Y. 2007), *aff'd*, No. 07-2463-CV, 2008 WL 5082982 (2d Cir. Dec. 1, 2008).[6]

### E.   Plaintiffs Have Not Pled the Elements of a RICO Claim Against FIG

As demonstrated in the Soros Brief, plaintiffs have failed to properly allege the basic
elements of a RICO claim, including a "pattern of racketeering activity." (Soros Brief at 26-30,
34-38.) In addition to the reasons set forth in the Soros Brief, the RICO claims against FIG
should also be dismissed because they have not sufficiently alleged: (i) predicate acts by FIG that
were related to each other or plaintiffs' alleged injury; (ii) that FIG participated in a RICO
enterprise that caused plaintiffs' injury; (iii) that FIG invested income from racketeering activity
in an enterprise; and (iv) that FIG acquired an interest in an enterprise through racketeering
activity.[7]

To sufficiently allege a "pattern of racketeering activity," plaintiffs must "show that
among the predicate acts there is both relationship and continuity." *Ray Larsen Assocs., Inc. v.
Nikko America, Inc.*, No. 89 Civ. 2809 (BSJ), 1996 WL 442799, at *6 (S.D.N.Y. Aug. 6, 1996);
*see also Singh v. Parnes*, 199 F. Supp. 2d 152, 161 (S.D.N.Y. 2002) ("Thus, separate, discreet
acts which are unrelated would not suffice."). Here, plaintiffs have not alleged any predicate acts
against FIG that are sufficiently related to constitute a pattern of racketeering activity. Plaintiffs
fail to allege in any way how their conclusory allegations of bankruptcy fraud and money

---

[6]     Nor have plaintiffs alleged any harm from FIG's "investment of racketeering income in an enterprise," or
FIG's "acquisition or maintenance of any interest in or control of an enterprise." 18 U.S.C. § 1962(a)-(b) (2008).
Thus, plaintiffs do not have standing to assert their Section 1962(a) & (b) claims against FIG. *See Stolow*, 258 F.
Supp. 2d at 245-46.

[7]     As demonstrated in the Soros Brief, plaintiffs also fail to allege a cognizable RICO enterprise because they
do not allege any facts that identify the alleged enterprise, its structure, members, common purpose, or how it
operated as a continuing unit. (Soros Brief at 26-30.)

laundering by FIG are related to each other, or related to the only conduct that allegedly caused
plaintiffs harm -- the alleged fraudulent biding process for the GM Building in 2003.[8]

Instead, plaintiffs improperly added conclusory allegations of bankruptcy fraud and
money laundering to previously-litigated claims in an attempt to "buttress its weak argument
with respect to 'continuity,' that is to extend the duration of the scheme. These acts, however,
are unrelated to the predicate acts which allegedly injured plaintiff, and therefore can not be
considered as part of the activity to extend the scope of the 'pattern.'"[9]  *Ray Larsen*, 1996 WL
442799, at \*7; *accord Moore*, 485 F. Supp. 2d at 304-06 ("[P]laintiffs unsuccessfully attempt to
weave a web between the discrete acts of certain individual defendants that occurred over the
course of several years in an effort to pursue a new theory of recovery in this case, their fourth
lawsuit attacking [plaintiff's] conviction.").

As noted in the Soros Brief, "Section 1962(a) prohibits any person who derived income
from a pattern of racketeering activity from investing that income in an 'enterprise', as defined
by the statute," *Stolow*, 258 F. Supp. 2d at 245, and Section 1962(b) makes it unlawful for "any
person through a pattern of racketeering activity . . . to acquire or maintain . . . any interest in or
control of any enterprise," 18 U.S.C. § 1962(b) (2008). (Soros Brief at 38-39.) Here, plaintiffs
do not adequately allege that FIG received any money from a pattern of racketeering activity,
much less that it invested it in the alleged enterprise. Nor do they sufficiently allege that FIG
acquired an interest in a RICO enterprise through a pattern of racketeering activity.[10]

---

[8]      In addition, where plaintiffs do not allege that FIG participated in any way in the only conduct that is
alleged to have injured them, they have not alleged that FIG participated in the operation or management of the
enterprise. *See City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 449 (2d Cir. 2008).

[9]      Plaintiffs also fail to sufficiently allege the continuity of the alleged pattern of racketeering activity thereby
requiring dismissal of its RICO claims. (Soros Brief at 34-38.)

[10]      Further, as noted in the Soros Brief, since plaintiffs have not alleged an underlying RICO violation, their
claim for a RICO conspiracy in violation of Section 1962(d) cannot survive. (Soros Brief at 39-40.) Plaintiffs'
conspiracy claim against FIG should also be dismissed because they have alleged neither the existence of a RICO

17

**F.    Plaintiffs Have Not Alleged That FIG Committed
Any Predicate Acts of Racketeering**

Assuming *arguendo* that plaintiffs had standing to assert its RICO claims against FIG and

otherwise satisfied the elements of a RICO violation -- which they do not -- plaintiffs' RICO

claims still should be dismissed because plaintiffs have not sufficiently alleged that FIG engaged

in any predicate acts of racketeering.

As the Soros Brief demonstrates, "bid rigging" is not a predicate act under federal RICO.

(Soros Brief at 30-31.) Even if bid rigging were a cognizable predicate act under federal RICO,

plaintiffs have not alleged any facts even suggesting that FIG participated in the bidding for, or

sale or financing of, the GM Building in 2003.[11] FIG's lack of involvement is confirmed by

plaintiffs' complaint in the State Action where they not only did not name FIG (or any related

entity) as a defendant, but also did not allege that FIG (or any related entity) had any connection

with the actual bidding for, or financing or sale of, the GM Building in 2003.[12] (*See supra* at 4-

5.)

As the Soros Brief also shows, bankruptcy fraud, like any fraud claim, must be pleaded

with particularity in accordance with Federal Rule of Civil Procedure 9(b).  (Soros Brief at 31-

33.)  Here, in addition to the reasons detailed in the Soros Brief, plaintiffs' RICO claims against

FIG based on purported bankruptcy fraud are insufficient.  Fundamentally, plaintiffs do not

conspiracy nor that FIG knowingly reached an agreement to enter such a conspiracy.  *See Ray Larsen*, 1996 WL
442799, at *9 (dismissing complaint where plaintiff "failed to allege any factual basis for a finding of conscious
agreement among [the defendants] to commit predicate acts").

[11]    The only allegation in the entire Complaint connecting FIG in any way to the 2003 purported "sham
auction" of the GM Building is a conclusory allegation that the bidding process was "rigged" by a litany of
defendants, including FIG.  (Compl. ¶ 353.)

[12]    Magistrate Judge Katz, moreover, similarly confirmed recently that Fortress (a non-party to the action) was
not relevant to the 2003 bidding for and sale of the GM Building in an action brought by another unsatisfied
participant in that bidding process.  *Solow v. Conseco, Inc.*, No. 06 Civ. 5988 (BSJ) (THK), 2008 WL 190340, at *5
(S.D.N.Y. Jan. 18, 2008) (holding that documents from Fortress concerning the 2003 sale were not relevant because
Fortress was not involved with Macklowe's bid or financing).

allege any facts at all supporting their conclusory statement that FIG engaged in bankruptcy fraud. The only factual allegations concerning FIG in the bankruptcy are simply that it was a member/shareholder in CFN Holdings -- the entity that acquired Conseco Finance -- and FPS DIP -- the entity that provided debtor-in-possession financing to Conseco in its bankruptcy. (Compl. ¶¶ 189, 191.) Plaintiffs appear to seek to hold FIG liable for the alleged conduct of CFN Holdings and FPS DIP, but even assuming that plaintiffs properly alleged (which they have not) that FIG -- as a shareholder -- is responsible for CFN Holdings' and FPS DIP's conduct, plaintiffs have not alleged that either of those entities engaged in bankruptcy fraud.[13]

Although there are conclusory statements in the Complaint that FIG engaged in bankruptcy fraud (*see, e.g.*, Compl. ¶ 236), there are no particularized factual allegations to supply the requisite who, what, when, where, and how of the fraud allegations. *See Lakonia Mgmt. Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 553 (S.D.N.Y. 2000) ("'In the RICO context, Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999)).

Similarly, plaintiffs have not sufficiently alleged that FIG engaged in money laundering or that plaintiffs were harmed by any such conduct. (Soros Brief at 33-34; *see also* Compl. ¶ 119 (conclusory allegation that FIG laundered money with Soros), *id.* ¶ 361 (concluding that FIG was part of a RICO conspiracy to launder money from the sale of the GM Building), *id.* ¶ 424 (alleging without factual support that FIG's financing of Macklowe's 2007 purchase of office

---

[13]    Plaintiffs' factual allegations concerning CFN Holdings' and FPS DIP's conduct establish only that CFN Holdings acquired Conseco Finance through a court-approved bidding process and sale, and FPS DIP provided Conseco with debtor-in-possession financing on terms approved by the Bankruptcy Court. (*See supra* at 6.) None of these allegations even come close to sufficiently alleging fraud, let alone alleging it with particularity.

buildings laundered proceeds from racketeering activity).)  Thus, plaintiffs have not sufficiently alleged that FIG committed a predicate act of money laundering. *See W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606 (RWS), 2004 WL 2187069, at *9 (S.D.N.Y. Sept. 29, 2004) ("[I]n the absence of allegations concerning a 'specified unlawful activity,' no claim for money laundering may withstand a motion to dismiss.").

## II.

### PLAINTIFFS' ANTITRUST CLAIMS AGAINST FIG SHOULD BE DISMISSED

As with their RICO claims, plaintiffs' antitrust claims are nothing more than a transparent restatement of their state court claims and those claims should be dismissed for the reasons set forth in the Soros Brief.[14]  With respect to FIG specifically, plaintiffs do not allege *any* facts suggesting that FIG participated in the bidding process and/or sale of the GM Building in 2003, and instead make only a single conclusory allegation against defendants as a group that attempts to connect FIG to that 2003 process. (Compl. ¶ 353.)  This allegation cannot support an antitrust claim. *See Arbitron Co. v. Tropicana Prod. Sales, Inc.*, No. 91 Civ. 3697 (PKL), 1993 WL 138965, at *9-10 (S.D.N.Y. Apr. 23, 1993).

## III.

### PLAINTIFFS' CLAIMS AGAINST FIG SHOULD BE DISMISSED WITH PREJUDICE

The Court should dismiss all of the claims against FIG with prejudice.  As the Soros Brief establishes, amendment would be futile because plaintiffs' claims are both time-barred and precluded by *res judicata*. (Soros Brief at 46-47.)  Amendment of the claims against FIG would be futile for the additional reason that between this case and the State Action, plaintiffs have had

---

[14]    Specifically, plaintiffs' antitrust claim is time-barred and fails to allege antitrust injury.  (Soros Brief at 40-44.)

more than ample time and opportunity to allege any facts that show that FIG engaged in any conduct that caused them injury and have failed to do so. Put simply, plaintiffs cannot allege that FIG -- a stranger to both the 2003 sale of the GM Building and plaintiffs themselves -- caused plaintiffs any harm such that they would have any basis to bring any claims against FIG. *See Haughton v. Burroughs*, No. 98 Civ. 3418 (BSJ), 2004 WL 330242, at \*7-8 (S.D.N.Y. Feb. 23, 2004) (finding amendment futile where plaintiff had already filed several complaints and claims were barred by *res judicata* and collateral estoppel); *Singh v. Parnes*, 199 F. Supp. 2d 152, 165 (S.D.N.Y. 2002) (denying leave to amend after serial complaints were filed and where "there is no theory under which the defendants could be held liable for the injuries [plaintiff] asserts arising from the events and transactions at issue").

## CONCLUSION

For the reasons stated above and in the memoranda of the other defendants to the extent incorporated herein, plaintiffs have failed to state any valid cause of action against FIG, and the Court should dismiss plaintiffs' claims against FIG with prejudice, and grant any other relief as the Court deems appropriate.

Dated:  December 22, 2008

.

                        KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

                        By:    /s Albert Shemmy Mishaan
                               Marc E. Kasowitz
                               (mkasowitz@kasowitz.com)
                               Albert Shemmy Mishaan
                               (amishaan@kasowitz.com)
                               Kenneth R. David
                               (kdavid@kasowitz.com)

                        1633 Broadway
                        New York, NY  10019
                        (212) 506-1700

                        *Attorneys for Defendant FIG LLC*

22