UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                        :

LESLIE DICK WORLDWIDE, LTD. and LESLIE DICK,

                                        :

                           Plaintiffs,      ELECTRONICALLY FILED

                                        :

              - against -              ECF CASE

                                  : Civil Action No. 08 CV 7900

GEORGE SOROS, SOROS FUND MANAGEMENT      (BSJ) (THK)
LLC, SFM MANAGEMENT, LLC, CONSECO, INC.,  :
VORNADO REALTY TRUST, GERMAN AMERICAN
CAPITAL, CORP., DEUTSCHE BANK, AG., EASTDIL : **AFFIDAVIT IN OPPOSITION**
SECURED, LLC, HARRY MACKLOWE, FIG, LLC,
CERBERUS CAPITAL MANAGEMENT, LP, LAZARD :
FRERES & CO., LLC, KIRKLAND & ELLIS, LLP,
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON  :
LLP, CARMEL FIFTH, LLC, 767 MANAGER, LLC,
DONALD J. TRUMP and John Does "1" through "10", :

                            Defendants. :

                                          :
------------------------------------------------------------------------x

STATE OF NEW YORK    )
                       : ss.:
COUNTY OF NEW YORK  )

       PERRY S. GALLER, being duly sworn, deposes and says:

       1.      I am the Managing Partner of Phillips Nizer LLP and a member of its Litigation Department.  I have been with the firm since 1972, a partner since 1981, and the Managing Partner since 1994.

       2.      In my role, I am often involved in determining whether new matters should be undertaken, taking into consideration the merits of the matter, the firm's competency to handle it, making sure that there is no conflict that would bar us from handling it, and reviewing the financial arrangement for payment of our fees.  I make this affidavit in opposition to the

1070236.1

plaintiffs' motion to disqualify our firm form representing Donald J. Trump and 767 Manager, LLC in this case.

3.     I have knowledge of the facts stated herein.   As appears from our firm's memorandum of law submitted herewith, according to the law of this Circuit, our firm should not be disqualified because 1) we did not "represent" the plaintiffs in the prior state court action, 2) we received no confidential information relating to that action, 3) the few other matters we undertook for Leslie Dick ("Mr. Dick") are not substantially related to this case, and 4) they were of a fleeting nature.

4.     Mr. Dick and David Relkin have made a number of unsupported and unsupportable charges against me and other attorneys in our firm, using language which is totally inappropriate for papers filed in this Court.  Rather than engage in similar tactics, I will simply lay out the facts as they occurred.  As explained in the memorandum of law submitted herewith, they do not merit disqualification of our firm.

A.  Donald J. Trump Was a Client of our Firm When We Were Introduced to Leslie Dick.

5.     In mid-January, 2008, our firm was retained by Donald J. Trump, personally, his corporation, the Trump Organization, his son Donald Trump, Jr., and several other individuals and entities who were named as defendants in an action brought against them by a former owner of a condominium unit in a Trump building in the Supreme Court of the State of New York, in New York County, entitled *Eugenia Kaye v. Donald J. Trump, et. el.*, Index No. 116572/2007.  I was fully aware of that retention when it occurred and thereafter when I first met with Leslie Dick in late February 2008.

2

B. I Was The Principal Contact With Leslie Dick at Our Firm.

6.    On or about February 25, 2008, Wilfredo Pesante, an attorney who had joined Phillips Nizer LLP as a contract partner on August 27, 2007, and who is no longer with the firm,[1] told me the following:[2]  He had been contacted by Robert Hantman ("Mr. Hantman") the attorney for Leslie Dick Worldwide, Ltd. ("Worldwide") and Leslie Dick ("Mr. Dick") with respect a notice of pendency which Worldwide had filed against the General Motors Building (767 Fifth Inc.), then owned by Macklowe Properties ("GM Building"), in connection with its New York State Supreme Court action entitled *Leslie Dick Worldwide, Ltd. and Leslie Dick against Macklowe Properties, Inc. et. al.*, Index No. 600222/06 (the "State Court Action"). According to Mr. Hantman, the notice of pendency had been cancelled in the State Court Action by Hon. Karla Moskowitz by Order dated March 29, 2007, following her dismissal of Worldwide's complaint in the State Court Action.  Mr. Hantman had told him that Mr. Dick was the principal of Worldwide and that he was a very well-to-do real estate developer from Detroit, Michigan.  Mr. Hantman stated that he had been retained to handle the appeal of the dismissal of the complaint in the State Court Action.  Mr. Hantman said that he could use our assistance and that Mr. Dick would engage us to help him.

C. We Did Run A Conflicts Check.

7.    Based on the foregoing, Mr. Pesante ran a conflicts check on Worldwide, Mr. Dick and all of the named defendants in the State Court Action.  No conflict turned up.  The conflict check did not mention Donald J. Trump or 767 Manager, LLC, because they were not defendants in the State Court Action and no one ever said that Mr. Dick was contemplating

---

[1] Mr. Pesante left the firm on March 7, 2008.
[2] Since  Mr. Dick has not disclosed the details of our conversations in his affidavit (other than conversations which never occurred), I am reluctant to recite them in other than conclusory language in my affidavit.  However, I can assure the Court that even if recited, they would have no bearing on the issues in the present action.

3

making Mr. Trump or any Trump-related entity a defendant in the State Court Action.  Had either Mr. Dick or Mr. Hantman made such a suggestion, the discussion would have ended immediately and we would not have even had to run a conflicts check since, as explained, I knew Mr. Trump was already a client of ours at that time.  Daniel Kolko, one of our then-associates who is no longer at the firm,[3] was assigned to do some initial research regarding the notice of pendency on February 26th.

D.   We Did Not Represent Plaintiffs On The Appeal In The State Court Action.

8.     On February 27th, Mr. Dick and Mr. Hantman came to our office and introduced themselves to me, stated the legal reasons which they thought would enable them to succeed on the appeal and discussed the notice of pendency.  Messrs. Pesante and Kolko were also present. I suggested that Mr. Hantman could also consult regarding the notice of pendency with former Appellate Division Presiding Justice Alfred D. Lerner, who had joined our firm as counsel in 2005.  Mr. Dick asked me if Mr. Hantman could also consult with Judge Lerner on how best to present the oral argument on the appeal from the dismissal of the complaint, which they then thought might be scheduled for early March.  Mr. Hantman stated that the Record on Appeal and all briefs had been filed and that everything that Judge Lerner would need was in them.  It was expressly agreed, contrary to Mr. Dick's affidavit (para. 4), that Judge Lerner would not represent plaintiffs on the appeal, or even appear in Court during Mr. Hantman's oral argument. Judge Lerner's role would be solely that of a consultant to Mr. Hantman, helping to identify which of the arguments made in the briefs would be most effective at oral argument and how best to present them.

9.     At no time were we asked to take over for Mr. Hantman, either at the oral argument or, if successful, at any time thereafter.  Nor did we ever suggest any interest in doing

---

[3] Mr. Kolko left the firm on August 27, 2008.

4

so.  Mr. Hantman had introduced us to Mr. Dick and Mr. Dick was clearly very pleased with Mr. Hantman.  I agreed that Mr. Hantman could consult with Judge Lerner and that we would have to work out a financial arrangement for payment of our fees.  Judge Lerner describes his involvement in this process in his accompanying affidavit.

10.     There was very little discussion at this meeting of the underlying facts in the State Court Action.  Most of the remaining time at the meeting was spent by Mr. Hantman explaining why he believed that Justice Moskowitz's decision dismissing the complaint was in error and that in a similar case brought by Sheldon Solow in the Federal Court, Judge Barbara Jones had denied a similar motion to dismiss that complaint.

11.     The engagement letter for this undertaking was the subject of some discussion, including our insistence on the insertion of language that we felt was necessary to prevent Mr. Dick from using Judge Lerner's or our firm's name on the eve of the oral argument out of my concern that it would appear contrived, and because we had learned that Mr. Dick had issued a Press Release on February 14, 2008 relating to the appeal and the notice of pendency that concerned us.  Mr. Dick ultimately agreed to our language and it was prepared and presented to him on March 18, 2008.  The agreement provided for a $10,000 one-time payment plus a bonus in the event the Appellate Division reversed or if the matter was resolved by settlement.  Needless to say, we never received a bonus.

E.  The Other Unrelated Issues.

12.     The only other involvement the firm had with Mr. Dick was a discussion in late February about creating a real estate investment fund (which did not go forward) and, later, at the beginning of April, he asked us to review and redraft a memorandum of understanding and to draft an additional memorandum of understanding.  That work was assigned to Richard

5

Langsam, a corporate partner, and it is discussed in his accompanying affidavit. The work was minor and never completed. We never billed Mr. Dick for the time.

13.     We have had no further relationship of any kind with Mr. Dick or Mr. Hantman since April 8, 2008.

F.    The So-Called Attempted Fraud Is Irrelevant and was Resolved Promptly to Mr. Dick's Complete Satisfaction.

14.     Although irrelevant to the issue of disqualification on the instant motion, I do not want to leave unanswered Mr. Dick's allegation in paragraph 7 of his affidavit that a member of our firm attempted to have him drop his State Court Action in consideration for which he would procure financing for Mr. Dick to purchase the G.M. Building at the then pending sale, and Mr. Dick's conclusory accusation in paragraph 8 that "they involved me in a fraudulent scheme to have me drop the action with a promise of obtaining new sufficient financing for me to purchase the General Motors Building."

15.     Mr. Dick is clearly referring to an incident which he reported to me in person on March 3rd or 4th, 2008, and which he and I addressed in person with Mr. Pesante on March 5th, and then resolved to Mr. Dick's expressed complete satisfaction. Mr. Dick reported to me that on Friday, February 29, 2008, Mr. Pesante called him and asked if he would like to be the winning bidder for the purchase of the G.M. Building from Macklowe Properties. Mr. Dick invited Mr. Pesante to meet him at the 21 Club. Mr. Dick told me that Mr. Pesante made a business proposal to him giving him the name of a person who was willing to back him on the acquisition of the G.M. Building on Mr. Dick's terms, because this person allegedly believed the building would be worth considerably more in five to ten years.

16.     Mr. Dick also said that Mr. Pesante told him that he, personally (not Phillips Nizer) and some middle person would have to be paid one-half of a point and three-quarters of

6

Case 1:08-cv-07900-BSJ-THK   Document 114   Filed 02/09/09   Page 7 of 9

a point, respectively, as commissions at the closing, and he presented Mr. Dick with prepared "Financial Services Agreements" for that purpose. Mr. Pesante also said that the financier had a couple of additional conditions in consideration for backing the acquisition. Mr. Dick reported to me that he believed Mr. Pesante was trying to make a deal for himself to the detriment of our firm and that he was suspicious of Mr. Pesante.

17. I told Mr. Dick that I was appalled to hear of Mr. Pesante's alleged conduct, that it was unacceptable, and I apologized to him on behalf of the firm. Mr. Dick said "That's exactly what I wanted to hear." Mr. Dick and I (together with an associate of Mr. Hantman) met with Mr. Pesante on Wednesday, March 5th. Mr. Pesante confirmed that he had made the proposal, but insisted that it was legitimate, and that the conditions were those of the financier as reported to him by the middle person.

18. Mr. Dick assured me that he understood completely that Mr. Pesante had acted in his individual capacity independent of our firm, for his own personal benefit. Mr. Dick also told me a few days later that he had learned that within two days of our meeting, on March 7, 2008, the firm had severed its relationship with Mr. Pesante. He told me that he was very pleased that we had taken firm and immediate action.

G. There Was Never A Mention Of Making Our Clients Defendants In The State Court Action.

19. From the time Mr. Hantman and Mr. Dick first approached us on or about February 25th and through the less than six weeks that our firm had contact with them, neither of them ever mentioned to me that Mr. Trump or any entity affiliated with him was being considered as a potential defendant, and no one at the firm ever reported to me that either of them had said it to them either. As noted, by February 25th we were already representing

1070236.1

Donald Trump, his son, the Trump Organization and several other individuals in a litigation brought against them.

20.    I was fully aware of that matter, having been the one who approved taking it in. Had Mr. Dick or Mr. Hantman mentioned that Mr. Trump was being considered as an adverse party, I would have halted the discussion IMMEDIATELY, explained that we concurrently represented Mr. Trump and could not consider being adverse to him or any Trump entity in any respect whatsoever.  I would also have explained that to do otherwise would constitute a conflict of interest, which is prohibited.

H.. <u>No Confidential Information Was Ever Provided.</u>

21.    Most importantly, at no time did Mr. Dick or Mr. Hantman ever provide me with any confidential information relating to the State Court Action, nor did they ever provide me with any secrets, plans, or strategies relating to the State Court Action or relating to any future litigations.

WHEREFORE, the plaintiffs' motion to disqualify Phillips Nizer LLP should be denied.

_____
Perry S. Galler

Sworn to before me this
5ᵗʰ  day of February, 2009.

_____
Notary Public

KRISTINE M. GRISSETT
NOTARY PUBLIC, State of New York
No. 01GR6075310
Qualified in New York County
Commission Expires June 3, 2010

8

**CERTIFICATE OF SERVICE**

I hereby certify that I arranged for the annexed affidavit of Perry Galler to be electronically filed on February 9, 2009, thereby serving all parties of record.

Dated: New York, New York
       February 9, 2009

                                   s/ George Berger (GB 8924)

9

1070236.1