George Berger (GB 8924)
Jeffrey Shore (JS 2441)
PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700
*Attorneys for Defendants*
*Donald J. Trump and 767 Manager, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
                                                                  :
LESLIE DICK WORLDWIDE, LTD. and LESLIE       ELECTRONICALLY FILED
DICK,                                      :

                                    Plaintiff,:   ECF CASE
                                                  Civil Action No: 08 CV 7900
            - against -                       :   (BSJ) (THK)

GEORGE SOROS, SOROS FUND                      :
MANAGEMENT LLC, SFM MANAGEMENT,
LLC, CONSECO, INC., VORNADO REALTY             :
TRUST, GERMAN AMERICAN CAPITAL,
CORP., DEUTSCHE BANK, AG., EASTDIL             :
SECURED, LLC, HARRY MACKLOWE, FIG,
LLC, CERBERUS CAPITAL MANAGEMENT,
LP, LAZARD FRERES & CO., LLC, KIRKLAND
& ELLIS, LLP, FRIED, FRANK, HARRIS,
SHRIVER & JACOBSON LLP, CARMEL FIFTH,
LLC, 767 MANAGER, LLC, DONALD J. TRUMP
and John Does "1" through "10",

                                    Defendants.

----------------------------------------------------------------- x


# MEMORANDUM OF LAW IN OPPOSITION TO
# PLAINTIFFS' MOTION TO DISQUALIFY PHILLIPS NIZER LLP

1069451.1

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

THE FACTS ............................................................................................................................. 1

    Leslie Dick First Met With Phillips Nizer In Late February 2008 ...................................... 1

    Phillips Nizer Did Not "Represent" Or Appear For Plaintiffs On The Appeal In The State Court Action and Never Received Any Confidential Information Relating To The State Court Action. ............................................................. 3

    Phillips Nizer Performed Some Fleeting Unrelated Work For Mr. Dick. ........................... 4

    Donald J. Trump Was A Client Of Phillips Nizer In January 2008, Prior To Phillips Nizer's Involvement With Leslie Dick and Leslie Dick Never Mentioned To Phillips Nizer Making Donald J. Trump or any Trump-Related Entity A Defendant In The State Court Action. ..................................................... 4

    The So-Called Attempted Fraud Is Irrelevant and was Resolved Promptly to Mr. Dick's Complete Satisfaction. ...................................................................................... 5

    Neither Of The Phillips Nizer Attorneys Representing The Trump Defendants In This Lawsuit Have Any Confidential Information Relating To State Court Action ................................................................................................................ 6

ARGUMENT ........................................................................................................................... 6

    A.   Under The Applicable Legal Standard, Phillips Nizer Should Not Be Disqualified ......... 6

    B.   This Motion Is Untimely ............................................................................................... 11

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

Adams v. Vill. of Keesville, 2008 U.S. Dist. LEXIS 61764 (N.D.N.Y. Aug. 8, 2008) .................. 6

Board of Education v. Nyquist, 590 F.2d 1241 (2d Cir. 1979) ....................................................... 7, 8

Butala v. Agashiwala, 1997 U.S. Dist. LEXIS 3402 (S.D.N.Y. March 18, 1997) ......................... 9

Cheng v. GAF Corp., 631 F.2d 1052 (2d Cir. 1980), vacated on other grounds, 450 U.S. 903 (1981) ................................................................................................................................ 9, 10

Community Programs of Westchester Jewish Cmty. Servs. v. City of Mt. Vernon, 2007 U.S. Dist. LEXIS 37301 (S.D.N.Y. May 18, 2007) .................................................................. 6

Evans v. Artek Systems Corp., 715 F.2d 788 (2d Cir. 1983) ......................................................... 7

Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225 (2d Cir. 1977) .............................. 7

Government of India v. Cook Industries, Inc., 569 F.2d 737 (2d Cir. 1978) ............................. 7, 9

Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream, 409 F.3d 127 (2d Cir. 2005) ................................................................................................................................................. 8

Jones v. Winters Bros. Waste Sys., 2007 U.S. Dist. LEXIS 69460 (E.D.N.Y. Sept. 19, 2007) ............................................................................................................................................... 6

Medical Diagnostic Imaging, PLLC v. Carecore National, LLC, 542 F. Supp. 2d 296 (S.D.N.Y. 2008) ................................................................................................................. 6, 7, 8, 9, 10

T.C. Theatre Corp. v. Warner Bros. Pictures, Inc., 113 F. Supp 265 (S.D.N.Y. 1953) ........... 10, 11

## MISCELLANEOUS

Black's Law Dictionary (6th Ed. 1990) ..................................................................................... 9, 11

1069451.TOA

## PRELIMINARY STATEMENT

Phillips Nizer LLP ("Phillips Nizer") respectfully submits this Memorandum of Law in opposition to plaintiffs' motion to disqualify it from representing Donald J. Trump and 767 Manager, LLC (collectively the "Trump Defendants") in this action.[1]

Although acknowledging that motions to disqualify attorneys are governed by Second Circuit precedent, plaintiffs have either disregarded that authority or thoroughly misconstrued its import. More importantly, plaintiffs have simply invented discussions which never occurred. Phillips Nizer never "represented" the plaintiffs in the prior state court action, never received any confidential information relating to that action, and the few other matters that Phillips Nizer undertook for Leslie Dick were not substantially related to this case and were fleeting in nature.

## THE FACTS

### Leslie Dick First Met With Phillips Nizer In Late February 2008

The relevant facts of Phillips Nizer's very limited contact with the plaintiffs is set forth in the affidavits of Perry S. Galler, Alfred D. Lerner and Richard H. Langsam submitted herewith. In sum, they show that Leslie Dick was first introduced to Phillips Nizer in late February, 2008. (Galler Aff., ¶6). On February 25, 2008, Wilfredo Pesante, who was then a contract partner at Phillips Nizer and who is no longer with the firm, advised Phillips Nizer's managing partner, Perry Galler, that he had been contacted by Robert Hantman, an attorney for Leslie Dick Worldwide, Ltd. ("Worldwide") and Leslie Dick, who wished to consult with Phillips Nizer with respect to a notice of pendency which had been cancelled by Justice Moskowitz in connection with Mr. Dick's and Worldwide's unsuccessful New York State Supreme Court action entitled *Leslie Dick Worldwide, Ltd. and Leslie Dick against Macklowe Properties, Inc. et. al.*, Index No.

---

[1] Plaintiffs, who have threatened four motions to disqualify the defendants' law firms, have now apparently settled for just this one.

600222/06 (the "State Court Action"). (Galler Aff., ¶6 and fn. 1). Mr. Hantman was representing Mr. Dick and Worldwide in their appeal of the dismissal of the complaint in the State Court Action. (Galler Aff., ¶6).

Mr. Galler, along with Mr. Pesante and an associate attorney from Phillips Nizer, Daniel Kolko, who is also no longer employed by Phillips Nizer, thereafter met with Mr. Dick and Mr. Hantman on February 27, 2008. (Galler Aff., ¶8 and fn. 3). Perry Galler suggested at that meeting that Mr. Hantman could also consult with former Appellate Division Presiding Justice Alfred D. Lerner ("Judge Lerner), who had joined Phillips Nizer as counsel in 2005, regarding the notice of pendency.[2] (Galler Aff., ¶8). Mr. Dick asked Perry Galler at that meeting if Mr. Hantman could also consult with Judge Lerner on how best to present his oral argument on the appeal from the dismissal of the complaint. (Galler Aff., ¶8). Mr. Hantman stated that the Record on Appeal and all briefs had been filed and that everything that Judge Lerner would need was in them. (Galler Aff., ¶8). It was expressly agreed, contrary to Mr. Dick's affidavit (at para. 4), that Judge Lerner would not "represent" plaintiffs on the appeal in the State Court Action, or even be present in Court during Mr. Hantman's oral argument. (Galler Aff., ¶8) Judge Lerner's role would be solely that of a consultant to Mr. Hantman, helping to identify which of the arguments made in Mr. Hantman's briefs would be most effective at oral argument, and how best to present them. (Galler Aff., ¶8).

At no time was Phillips Nizer asked to take over for Mr. Hantman, either at the oral argument or, if successful, at any time thereafter. (Galler Aff., ¶9). Nor did Phillips Nizer ever suggest any interest in doing so. (Galler Aff., ¶9). Perry Galler and Mr. Dick agreed at that initial meeting that Mr. Hantman could consult with Judge Lerner and that they would have to

---

[2] Mr. Kolko did some research on the notice of pendency matter.

work out a financial arrangement for payment of its fees. (Galler Aff., ¶9). Most of the time at the meeting was spent by Mr. Hantman explaining why he believed that Justice Moskowitz's decision dismissing the complaint was in error and that in a similar case brought by Sheldon Solow in the Federal Court, Judge Barbara Jones had denied a motion to dismiss that complaint. (Galler Aff., ¶10).

### Phillips Nizer Did Not "Represent" Or Appear For Plaintiffs On The Appeal In The State Court Action and Never Received Any Confidential Information Relating To The State Court Action.

Shortly following Perry Galler's meeting with Mr. Dick and Mr. Hantman, Judge Lerner was asked by Perry Galler to review the appellate record and briefs in the State Court Action, and to consult with Plaintiffs-Appellants' attorney of record, Robert Hantman, with respect to his planned oral argument of that appeal. (Lerner Aff., ¶2). Judge Lerner did what he was asked to do, read the Record and the briefs and met with Mr. Hantman on two occasions (Lerner Aff., ¶2). Mr. Dick sat in on one of those meetings but said nothing of substance (Lerner Aff., ¶2). Although Mr. Dick is not contending otherwise, it merits stating that Judge Lerner did not write one word of the briefs on appeal.

The only materials which were provided to Judge Lerner were the Record on Appeal and the briefs of the parties, all public documents, which were returned to Mr. Hantman at or shortly after Judge Lerner's last meeting on April 8, 2008 (Lerner Aff., ¶3). Judge Lerner did not retain a file (Lerner Aff., ¶3).

Neither Judge Lerner, Perry Galler, nor anyone else at Phillips Nizer, ever received any confidential information relating to the State Court Action. (Lerner Aff., ¶4; Galler Aff., ¶21; Langsam Aff., ¶4)).

3

1069451.1

**Phillips Nizer Performed Some Fleeting Unrelated Work For Mr. Dick.**

Mr. Dick also had a discussion with Phillips Nizer in late February 2008 about creating a real estate investment trust (which did not go forward) (Galler Aff., ¶12) and, later, at the beginning of April, Mr. Dick asked Phillips Nizer to redraft a memorandum of understanding that was prepared by someone else, and to draft an additional memorandum of understanding. (Galler Aff., ¶12). Mr. Galler assigned that work to another Phillips Nizer partner, Richard Langsam (Galler Aff., ¶12). Mr. Langsam and Monte Engler, both members of Phillips Nizer's corporate department, first met with Mr. Dick on April 2, 2008 (Langsam Aff., ¶3). Mr. Langsam and Mr. Engler also met with Mr. Dick and Mr. Hantman on April 4, 2008. That was the last time that either Mr. Langsam or Mr. Engler saw Mr. Dick (Langsam Aff., ¶3). On April 8th, Mr. Dick telephoned Mr. Langsam with a question regarding New York City transfer taxes which Mr. Langsam answered (Langsam Aff., ¶3). Mr. Langsam never heard from Mr. Dick again (Langsam Aff., ¶3). The work that was performed by Mr. Langsam was unrelated to the claims in the current lawsuit (Langsam Aff., ¶5). Moreover, Phillips Nizer never even billed Mr. Dick for this time spent on this work. (Galler Aff., ¶12).

**Donald J. Trump Was A Client Of Phillips Nizer In January 2008, Prior To Phillips Nizer's Involvement With Leslie Dick and Leslie Dick Never Mentioned To Phillips Nizer Making Donald J. Trump or any Trump-Related Entity A Defendant In The State Court Action.**

In mid-January of 2008, prior to ever meeting Leslie Dick, Phillips Nizer was retained to represent Donald J. Trump and 13 other individuals and entities in an action that was commenced in the Supreme Court of the State of New York, New York County, entitled *Eugenia Kaye v. Donald J. Trump, et. el.*, Index No. 116572/2007 (Galler Aff. at ¶5). Despite Mr. Dick's assertions in his affidavit to the contrary, it is inconceivable that Mr. Dick ever advised anyone at Phillips Nizer that he was considering adding Donald J. Trump or any of his affiliated entities as

4

1069451.1

a defendant in the State Court Action, because had he done so, any Phillips Nizer attorney involved in discussion with him would have immediately advised him that Phillips Nizer was already representing Mr. Trump in another lawsuit. (Galler Aff., ¶¶7, 19; Berger Aff., ¶2).[3]

From the time Mr. Hantman and Mr. Dick first approached Phillips Nizer and through the less than six weeks that Phillips Nizer had contact with them, neither of them ever mentioned to Perry Galler, Judge Lerner, Richard Langsam or Monte Engler that Trump or any entity affiliated with him was being considered as a potential defendant, and no one at the firm ever reported that either of them had so indicated (Galler Aff., ¶¶19-20; Lerner Aff., ¶5; Langsam Aff., ¶4).

Indeed, Mr. Relkin in his December 10, 2008 letter to Magistrate Judge Katz contradicts Mr. Dick's affidavit when Mr. Relkin states:

> … Phillips Nizer represented plaintiffs in a State Court action involving the same subject matter, facts and circumstances as the instant action and in which *we now know Trump was part of the RICO Enterprise*. (emphasis in original, italics added).

If "we now know" about Trump's alleged involvement, then Mr. Dick did not know it ten or eleven months ago when he allegedly told his plan to add Mr. Trump as a defendant to Mr. Galler.

### The So-Called Attempted Fraud Is Irrelevant and was Resolved Promptly to Mr. Dick's Complete Satisfaction.

Although irrelevant to the issue of disqualification on the instant motion, Mr. Dick alleges in paragraph 7 of his affidavit that a member of Phillips Nizer attempted to have him drop his State Court Action in consideration for which he would procure financing for Mr. Dick to purchase the G.M. Building at the then pending sale, and Mr. Dick then makes a conclusory

---

[3] The statement in paragraph 5 of Mr. Dick's affidavit that he and Mr. Hantman "discussed issues related to . . . considerations of adding them [Donald J. Trump and 767 Manager, LLC] as defendants in that action as John Does, if the Decision was reversed" is absurd. One does not identify known defendants as John Does.

accusation in paragraph 8 of his affidavit that "they involved me in a fraudulent scheme to have me drop the action with a promise of obtaining new sufficient financing for me to purchase the General Motors Building."

Mr. Dick is referring to an incident which he reported to Perry Galler on March 3rd or 4th, 2008, and which he and Perry Galler addressed in person with Mr. Pesante on March 5th, 2008, and then resolved to Mr. Dick's expressed complete satisfaction. (Galler Aff., ¶¶15-18).

### Neither Of The Phillips Nizer Attorneys Representing The Trump Defendants In This Lawsuit Have Any Confidential Information Relating To State Court Action

George Berger, a Phillips Nizer partner, and Jeffrey L. Shore, an associate attorney with Phillips Nizer, have rendered all of the professional services for the Trump Defendants in this matter. (Berger Aff., ¶2). Neither Mr. Berger nor Mr. Shore have ever met or spoken with Mr. Dick and possess no confidential information. (Berger Aff., ¶2).

### ARGUMENT

A.  **Under The Applicable Legal Standard, Phillips Nizer Should Not Be Disqualified**

As this Court has stated, in reviewing disqualification of counsel motions, "'the only truly binding authority on disqualification issues [in a technical sense] is [Second] Circuit precedent ....'" Medical Diagnostic Imaging, PLLC v. Carecore National, LLC, 542 F. Supp. 2d 296, 305 (S.D.N.Y. 2008) (the "MDI Action") (citation omitted).[4] Motions to disqualify attorneys are disfavored in this Circuit. See, e.g., Adams v. Vill. of Keesville, 2008 U.S. Dist. LEXIS 61764, at *24 (N.D.N.Y. Aug. 8, 2008); Jones v. Winters Bros. Waste Sys., 2007 U.S. Dist. LEXIS 69460, at *5 (E.D.N.Y. Sept. 19, 2007); Community Programs of Westchester Jewish Cmty. Servs. v. City of Mt. Vernon, 2007 U.S. Dist. LEXIS 37301, at *2-3 (S.D.N.Y.

---

[4] Plaintiffs correctly state this rule in their brief (at page 3), but nevertheless incorrectly rely, at least in part, on non-Second Circuit precedent, including cases from the Fifth Circuit and from New York State courts. Such cases are therefore not binding on this Court.

May 18, 2007). Moreover, the Second Circuit requires "'a high standard of proof on the part of one who seeks to disqualify his former counsel ....'" Evans v. Artek Systems Corp., 715 F.2d 788, 791 (2d Cir. 1983) (quoting Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir. 1978). "Unless there is a risk of taint to a court proceeding, courts are quite hesitant to disqualify an attorney from representing his client in litigation." MDI Action, 542 F. Supp. 2d at 306. Moreover, the Second Circuit has quoted former Chief Judge Kaufman's "oft-quoted admonition":

> when dealing with ethical principles, ... we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after a painstaking analysis of the facts and precise application of precedent.

Board of Education v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979) (quoting Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 227 (2d Cir. 1977)).

Here, even a superficial analysis of the facts shows that Phillips Nizer was retained by plaintiffs for an extremely limited consulting role with plaintiffs' attorney of record, Robert Hantman, with respect to Mr. Hantman's oral argument on the appeal in the State Court Action, and that Phillips Nizer also very briefly worked on two memoranda of understanding that were not substantially related to this lawsuit. Phillips Nizer never appeared on behalf of plaintiffs in the State Court Action, never wrote one word of any brief and never received any confidential information. Accordingly, there is no risk of taint to this proceeding, and the Court should not disqualify Phillips Nizer from representing the Trump Defendants in this action.

This Court, in the MDI Action, clearly set forth the legal standard for motions to disqualify an attorney from representing his client in litigation based on Second Circuit precedent, explaining that disqualification is generally sought in two kinds of cases. The first type of disqualification case is where "an attorney's concurrent representation of two clients

7

1069451.1

undermines the court's confidence in the attorney's loyalty to his clients, in violation of Canon 5 of New York's Code." MDI Action, 542 F. Supp. 2d at 306. Here, there is no allegation by plaintiffs that Phillips Nizer is engaged in a concurrent representation. Plaintiffs nevertheless argue that Phillips Nizer should be disqualified based on its purported violation of Canon 5 (Pl.Brief at 3-4), completely ignoring this Court's holding that Canon 5 relates to concurrent representation. Moreover, Canon 5 states that "[a] lawyer should exercise independent judgment on behalf of a client." Plaintiffs have not made any allegations that Phillips Nizer did anything in contravention of this ethical Canon.[5]

The second type of disqualification arises where the attorney is actually or potentially in a position to use privileged information gained from a former client to the advantage of a current client in violation of Canon 4 of New York's Code of Professional Responsibility. MDI Action, 542 F. Supp. 2d at 306. With respect to this type of disqualification, this Court stated "'[a]n attorney may be disqualified from representing a client in a particular case if (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.'" MDI Action, 542 F. Supp. 2d at 311 (quoting Evans v. Artek Systems Corp., 715 F.2d 788 (2d Cir. 1983); other citations omitted); see also, Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005).

---

[5] Plaintiffs also invokes in a footnote (Pl. Brief, footnote 2) Canon 9, which cautions lawyers to avoid the appearance of professional impropriety, but "Canon 9 ... is rarely a separate ground for disqualification." MDI Action, 542 F. Supp. 2d at 306. see also, Board of Education v. Nyquist, 590 F.2d 1241 (2d Cir. 1979)

8

"Additionally, the Court must be concerned with trial taint, i.e., the possibility that one party may gain an unfair advantage at trial." MDI Action, 542 F. Supp. 2d at 312 (citations omitted).

Here, the record demonstrates that Phillips Nizer did not "represent" the plaintiffs in the State Court Action, as that term is generally understood. "Representation" is not defined in the Code of Professional Responsibility. Black's Law Dictionary, p. 1301 (6th Ed. 1990) defines "represent" as "[t]o appear in the character of; .... To represent a person is to stand in his place; to speak or act with authority on behalf of such person ...." Phillips Nizer did not represent the plaintiffs on the appeal of the State Court Action. It did not file a notice of appearance, prepare the Record on Appeal or write one word of the appellants' briefs. It was merely retained to consult with the plaintiffs' attorney on the appeal of the State Court Action on how he should argue the appeal, based solely on the publicly available appellate record and briefs. Moreover, the evidence shows that Phillips Nizer never had access to relevant privileged information in the course of its extremely limited and short-lived role in consulting with plaintiffs' counsel on the appeal in the State Court Action.

Thus, Phillips Nizer has fully rebutted any presumption that it attained confidential information due to the substantial relationship between the State Court Action and this lawsuit. See, e.g., Butala v. Agashiwala, 1997 U.S. Dist. LEXIS 3402, at *3 (S.D.N.Y. March 18, 1997) (holding that "defendants have rebutted any presumption" that confidences were shared; citing Cheng v. GAF Corp., 631 F.2d 1052, 1056-57 (2d Cir. 1980), vacated on other grounds, 450 U.S. 903 (1981) ("although there may be an inference that an attorney has knowledge of the confidences and secrets of his firm's clients, that inference is rebuttable ... [and] the standard of proof to rebut this presumption should not become 'unattainably high.'")); see also, Government of India v. Cook Industries, Inc., 569 F.2d 737, 741 (2d Cir. 1979) (Mansfield, J. concurring) ("The essential issue ... is whether an impression is created that the attorney may have gained

9

1069451.1

confidential information from his prior relationship that is usable against his former client.  In some cases, even though the subject matter of the two relationships may appear to be substantially the same, the attorney may also be able to show that he gained no confidential information at all from the earlier representation.  It would be unfair to preclude such a showing by clinging to an irrebuttable presumption.");[6] .

The only other work performed by Phillips Nizer related to two memoranda of understanding that were not substantially related to this lawsuit.  "To be substantial, the relationship must be 'patently clear,' and the issues involved must be 'identical' or 'essentially the same'."  MDI Action, 540 F. Supp. 2d at 312.  The Phillips Nizer attorney who worked on these two memoranda of understanding has stated in his affidavit that he has reviewed the complaint in this action and that the two memoranda that he worked on are not related to the RICO and antitrust claims that have been asserted in this lawsuit. (Langsam Aff., ¶5).

Thus, there is no possibility that the Trump Defendants will gain any unfair advantage at trial if they continue to be represented by Phillips Nizer.  Moreover, in a case such as this one, where the complaint is clearly insufficient, time-barred and precluded by the judgment in the State Court Action, this case should not survive the motion to dismiss.

Plaintiffs cite to and quote from Judge Weinfeld's 1953 decision in T.C. Theatre Corp. v. Warner Bros. Pictures, Inc., 113 F. Supp 265 (S.D.N.Y. 1953), for the proposition that where a prior lawsuit is substantially related to the current lawsuit, that the Court will assume that confidences were disclosed.  T.C. Theatre Corp., however, is easily distinguished.  There, unlike the instant case, Universal's former counsel, Cooke, briefed and argued Universal's case in the United States Supreme Court.  Moreover, Judge Weinfeld rejected counsel's argument that he

---

[6] The Second Circuit cited favorably to Judge Mansfield's concurrence in Cheng v. GAF Corp., supra, 631 F.2d at 1057

1069451.1

did not receive privileged information as a matter of fact. The court stated that counsel's contention

> overlooks an important aspect of Cooke's representation .... His services included the preparation, drafting, presentation and argument in support of the findings of fact, conclusions of law and decree proposed by Universal, as well as opposition to those offered by the government and some of the other defendants. This was no mere mechanical job of paste pot and shears. It involved the acquisition of a thorough knowledge of Universal's entire business. To this end, whatever information, whatever documents, he sought from Universal were made available to him. During the preparation of the findings and decree he was in full command of Universal's legal forces; house and general counsel looked to him for leadership and he freely consulted with them as to various aspects of Universal's activities. It was Cooke's duty to his client to know Universal's individual trade practices, its relationship to other producers and distributors, to exhibitors, its methods of operation and procedures and all other matters relevant to the decree. ... In sum, enough appears to show that Mr. Cooke's present representation deals with matters as to which his former client reposed confidence in him.

Id. at 270-271. Here, it is not and could not be claimed that Phillips Nizer ever undertook any comparable services for plaintiffs, and never gained any such confidential information or any confidential information whatsoever, relating to the State Court Action.

## B.  This Motion Is Untimely

On December 12, 2008, Magistrate Judge Katz ordered:

> "The Motion to dismiss on behalf of Defendants Trump and 767 Manager, LLC shall be stayed pending resolution of Plaintiff's motion for disqualification, <u>which should be filed promptly</u>."  (Emphasis added) (Document 76)

Black's Law Dictionary, p. 1214 (6th Ed. 1990) defines "Promptly" as:

> "**Promptly.** Adverbial form of the word 'prompt,' which means ready and quick to act as occasion demands. The meaning of the word depends largely on the facts in each case, for what is 'prompt' in one situation may not be considered such under other circumstances or conditions. To do something 'promptly' is to do it without delay and with reasonable speed. Application of Beattie, 4 Storey 506, 180 A.2d 741, 744."

11

1069451.1

>   "**Prompt**" is therein defined as "To act immediately, responding on the instant."

Notwithstanding Magistrate Judge Katz's December 12, 2008 order, plaintiffs waited forty-four days to make this motion. The motion should therefore be denied as untimely, as well as lacking in merit.

## CONCLUSION

For the reasons stated, plaintiffs' motion to disqualify Phillips Nizer from representing the Trump Defendants in this lawsuit should be denied.

Dated: New York, New York
February 9, 2009

                    PHILLIPS NIZER LLP

          By:   <u>s/ George Berger</u>
                George Berger (GB 8924)
                Jeffrey Shore (JS 2441)
                666 Fifth Avenue
                New York, New York 10103-0084
                (212) 977-9700
                Attorneys for Defendants

## CERTIFICATE OF SERVICE

     I hereby certify that I arranged for the annexed memorandum of law to be electronically filed on February 9, 2009, thereby serving all parties of record.

Dated: New York, New York
       February 9, 2009

                                                s/ George Berger (GB 8924)

1069451.1