# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK            IAS. PART 3

-------------------------------------------------------x

LESLIE DICK WORLDWIDE, LTD and LESLIE
DICK

                      Plaintiffs,

            against

MACKLOWE PROPERTIES INC., FIFTH AVENUE
58/59 ACQUISITION, CO., L.P., HARRY
MACKLOWE, EASTDIL REALTY COMPANY, LLC,
BENJAMIN V. LAMBERT, WAYNE L. MAGGIN,
GEORGE SOROS, SOROS FUND MANAGEMENT,
LLC, CONSECO, INC., CARMEL FIFTH, LLC, 767
INTERMEDIATE, LLC, 767 FIFTH AVENUE, LLC
and CHUCK CREMENS,

                      Defendants.

-------------------------------------------------------x

Index No. 600222/2006

**DECISION and ORDER**

FILED
DEC 05 2006
NEW YORK
COUNTY CLERK'S OFFICE

KARLA MOSKOWITZ, J:

Motions sequence 004, 005 and 006 are consolidated for disposition.

In this action, Leslie Dick Worldwide, Ltd and Leslie Dick (collectively "plaintiff") claim that defendants Conseco, Inc., Carmel Fifth LLC, 767 Intermediate, LLC, 767 Fifth Avenue, LLC and Chuck Cremens (collectively "the Conseco defendants"); Eastdil Realty Company, LLC, Benjamin V. Lambert and Wayne L. Maggin (collectively "the Eastdil defendants") and Macklowe Properties Inc., Fifth Avenue 58/59 Acquisition Co., L.P., and Harry Macklowe (collectively "the Macklowe defendants"), engaged in fraud and bid rigging in connection with the 2003 sale of the General Motors Building ("GM Building"). The Conseco, Eastdil and Macklowe defendants have filed separate motions pursuant to CPLR Section 3211(a)(1) and (a)(7) to dismiss the amended complaint in its entirety based on documentary evidence, failure to state a cause of action and laches. The Macklowe defendants also move pursuant to CPLR Section 3016(b) to dismiss for failure to plead fraud with particularity

## BACKGROUND

### A. The Amended Complaint

Plaintiff alleges that, on March 6, 2002, it wrote to Conseco, then the owner of a majority interest in the GM Building[1], to express interest in purchasing the building. On March 14, 2002, plaintiff sent a follow-up letter to Conseco offering to purchase the building from Conseco for a total of $1.2 billion. In a letter dated March 21, 2002, Conseco's CEO responded to plaintiff's offer stating, "it is unlikely that [Conseco] will find your proposal acceptable in that we do intend to use an open auction once we achieve control of the situation."[2]

Plaintiff states that two weeks later, Chuck Cremens, the Conseco employee who was responsible for selling the GM Building, confirmed that Conseco intended to obtain the highest price possible for the GM Building through an "open bid policy."[3] Plaintiff claims that in reliance on Conseco's statements that the building would be sold to the highest bidder, it invested significant time and expense in marshaling investors in order to submit the winning bid.

In the early summer of 2003, after the court resolved the litigation regarding the GM Building in Conseco's favor, Conseco employed Eastdil Realty Company, LLC, a real estate investment firm, to market and sell the building. Plaintiff claims that Wayne L. Maggin, the managing director of Eastdil, orally confirmed that Eastdil would hold an "open auction" for the

---

[1] Conseco owned the GM building through its indirect wholly owned subsidiary Carmel Fifth and two other companies—767 Intermediate and 767 Fifth Avenue.

[2] In March, 2002, the ownership of the GM building was the subject of litigation in this court.

[3] In December of 2002, Conseco filed for bankruptcy protection under Chapter 11. Although Conseco originally considered selling the GM Building as part of the bankruptcy estate, the 2003 sale to Macklowe was not the subject of a Section 363 Bankruptcy sale.

2

building and that the building would be sold to the highest bidder. Plaintiff contends that Maggin knew, at the time of the conversation, that the auction would not be open and that defendants were conspiring to rig the bidding process so that the building would be sold to the Macklowe defendants.

On June 23, 2003, plaintiff made an acquisition proposal to Carmel Fifth, LLC c/o Wayne L. Maggin. Thereafter, on July 16, 2003, plaintiff received a document titled "Principal Confidentiality Statement" ("confidentiality statement") from Eastdil. Plaintiff contends that the confidentiality statement was false and misleading, because it contained language that had nothing to do with confidentiality. In particular, a clause in the confidentiality statement provided that "the owner expressly reserves the right at its sole discretion to terminate, at any time with or without notice and without liability, any discussions with a party regarding a possible sale of the property." Plaintiff signed the confidentiality statement and faxed it back to Eastdil.

After signing the statement, plaintiff received a letter from Eastdil instructing plaintiff to submit its initial acquisition proposal no later than August 11, 2003 at 6:00 pm. Plaintiff states, on information and belief, that it submitted the highest bid for the GM building but that shortly thereafter, plaintiff received a call from Maggin informing plaintiff that it had not been selected to take part in a second round of bidding because plaintiff's bid included "foreign investors." Plaintiff contends that Maggin's excuse was a sham intended to cover the fact that the winner of the bidding process had already been predetermined.

Plaintiff nevertheless participated in the second round of bidding and, on August 27,

3

plaintiff submitted a timely bid of $1.5 billion to Eastdil.[4] On August 30, plaintiff discovered that Macklowe had submitted the winning bid.

Plaintiff alleges that Macklowe's bid was improper because Macklowe did not submit it until after the 5:00 pm deadline on August 27, 2003. Plaintiff also claims that Macklowe's bid was for only $1.38 billion and that Eastdil improperly gave Macklowe an opportunity to increase its bid to $1.4 billion to match a bid that Solow Building Corp. ("Solow") submitted.

On September 12, 2003, Solow, another unsuccessful bidder, filed a complaint against Carmel Fifth, LLC and various Conseco entities in the Chancery Court of Delaware for a preliminary injunction to stop the closing, alleging, inter alia, that defendants breached their duty to hold a fair auction. The Chancery Court denied the preliminary injunction finding that Solow had not satisfied any of the elements that would entitle it to an injunction. Solow discontinued the Delaware lawsuit before the court ruled on Solow's substantive causes of action for fraud and promissory estoppel.

The amended complaint states causes of action against all of the defendants for fraud and aiding and abetting fraud (1st cause of action); for a declaratory judgment setting aside the sale and awarding the building to plaintiff (2nd cause of action); promissory estoppel (3rd cause of action) and constructive trust (6th cause of action). Plaintiff's fourth cause of action states a promissory estoppel claim against the Conseco and Eastdil defendants and the fifth cause of action states a claim for interference with prospective business advantage against the Macklowe

---

[4]According to plaintiff the second bid included [a] an all cash purchase price of $1.5 billion, [b] no due diligence required, [c] a guarantee of closing within thirty days of contract signing and [d] a deposit of $50 million upon execution of the contract. Plaintiff submitted this bill on August 27, before the 5:00 pm deadline.

and Eastdil defendants[5].

## THE DISMISSAL MOTIONS

### A. The Conseco Defendants' Motion to Dismiss

The Conseco defendants argue that the fraud and promissory estoppel causes of action will not lie because the documentary evidence establishes that plaintiff could not have reasonably relied on any alleged statements that the Conseco and Eastdil defendants would hold an auction and sell the GM Building to the highest bidder. They contend that the July 16, 2003 confidentiality statement plaintiff signed provides that Conseco was free to withdraw the property from the market at any time for any reason. Defendants also contend that an August 13, 2003 letter to plaintiff from Eastdil states that the owner has the right, in its absolute discretion, to accept or reject any offer for any reason. They also argue that plaintiff's claims violate the statute of frauds and that, if plaintiff's claims are true, then Conseco, not plaintiff, is the victim of the fraud.

Moreover, those defendants argue that plaintiff's unreasonable 2 ½ year delay in commencing this lawsuit requires the court to dismiss the equitable causes of action based on laches; that the contract bars specific performance between the parties; and that plaintiff cannot meet the pleading requirements to state a claim for a constructive trust because there was no confidential relationship between plaintiff and any of the defendants.

### B. The Macklowe Defendants' Motion to Dismiss

The Macklowe defendants argue that the court should dismiss the fraud claim against

---

[5] The fifth cause of action also states a claim against the Soros defendants who are not a party to these dismissal motions.

them because the complaint does not allege that they made any misrepresentation to plaintiff. They also state that the claim for aiding and abetting fraud fails because plaintiff has not stated a valid fraud claim against any defendant and because plaintiff has failed to plead with particularity. The Macklowe defendants contend that the promissory estoppel claim against them will not lie because the complaint does not allege that the Macklowe defendants made any promises to plaintiff and that the claim for tortious interference with prospective business advantage is deficient because the complaint does not allege that they did anything unlawful or acted for the sole purpose of harming plaintiff.

The Macklowe defendants join the Conseco defendants' argument for dismissal of the equitable causes of action based on laches and that plaintiff has failed to meet the pleading requirements for a constructive trust.

### C. Eastdil Defendant's Motion to Dismiss

The Eastdil defendants join Conseco's arguments in support of dismissing plaintiff's fraud and promissory estoppel claims. These defendants also contend that plaintiff's attempt to salvage those claims by alleging reliance on oral statements made before the July and August writings is unavailing because plaintiff's bald conclusory statement of reliance is inconsistent with other allegations in the complaint.

The Eastil defendants state that plaintiff's claim for interference with prospective economic advantage is deficient because the contract between the parties authorized the Eastdil defendants' conduct and, in addition, plaintiff did not plead two essential elements of that cause of action: 1) that the Eastdil defendants committed an independent tort or acted solely to harm plaintiff and 2) that "but for" the Eastdil defendants' conduct, the Conseco defendants would

6

have accepted plaintiff's bid.

These defendants also argue that the court should dismiss any claims against Benjamin Lambert and Wayne Maggin, personally, because plaintiff does not allege that those defendants acted outside the scope of their employment or personally profited from their acts.

The Eastdil defendants join the Conseco and Macklowe defendants' arguments regarding dismissal of the second and sixth causes of action based on laches and failure to satisfy the pleading requirements for a constructive trust.

DISCUSSION

A. Fraud and Promissory Estoppel Claims as against the Conseco and Eastdil Defendants

To recover for fraud or promissory estoppel, plaintiff must allege and ultimately prove that it relied on the alleged oral representation and that such reliance was reasonable. (Arias v Women in Need, Inc., 274 A.D.2d 353 [1st Dept 2000]; Ripples of Clearview, Inc. v Le Havre Assocs., 88 A.D.2d 120 [2nd Dept 1982], lv. denied, 57 N.Y.2d 609 [1982]).

Here, both the July 16, 2003 Confidentiality Statement that plaintiff executed and the August 13, 2003 letter from Eastdil to plaintiff establish that plaintiff could not have reasonably relied on oral representations, if any, that plaintiff would hold an auction with specific ground rules and/or that they would sell the GM Building to the highest bidder.[6]

The Confidentiality Statement states, at paragraph 8:

> The undersigned acknowledges that the property has been offered

---

[6] A motion to dismiss a cause of action on the ground that it is barred by documentary evidence pursuant to CPLR 3211(a)(1) may be appropriately granted "where the documentary evidence utterly refutes plaintiff's factual allegations and "conclusively establishes a defense to the asserted claim as a matter of law. (Goshen Mutual Life Ins. Co. Of N.Y., 98 N.Y.2d 314, 326; see, Leon v Martinez, 84 N.Y.2d 83).

7

> for sale subject to withdrawal from the market, change in any offering price, prior sale or rejection of any offer, lack of satisfactory credit references of any prospective purchaser, or for any other reason whatsoever, without notice. The owner expressly reserves the right in its sole discretion to terminate, at any time with or without notice and without liability, any discussions with any party regarding a possible sale of the property.

Plaintiff agreed to the terms of the Confidentiality Statement by signing the statement and returning it to Eastdil.

The August 13, 2003 letter from Eastdil to plaintiff states in pertinent part:

> The Owner reserves the right, in its sole and absolute discretion, to accept or reject any offer for any reason. Factors that will be considered by the Owner in selection of a purchaser will include price, timing,... level of due diligence completed to date, closing capacity and credibility and earnest money deposit.

Several courts in this state have held that it is unreasonable as a matter of law for a plaintiff to rely on oral representations that conflict with written ones. In Banner Industries v Schwartz, 204 A.D.2d 190 (1st Dept 1994), plaintiff submitted a bid to buy two divisions of a company and claimed that, although it had submitted the highest bid, the defendant improperly awarded the contract to another party. Defendant argued that plaintiff's claims for fraud and "breach of the duty to conduct a fair auction" contradicted the language of the Confidentiality Agreement that the parties signed. The Supreme Court dismissed plaintiff's claims, holding that the disclaimers in the Confidentiality Agreement precluded plaintiff's reliance on the alleged oral representations. The Appellate Division affirmed, finding that the disclaimers were sufficiently specific to bar plaintiff's claims based on oral representations. (See also, Daily News, L.P. v Rockwell Int'l Corp., 256 A.D.2d 13 [1st Dept 1998], lv. denied, 93 N.Y.2d 803 [1999] [no reasonable reliance on oral representation where fraud claims were based on an alleged conflict

8

between oral representations and subsequent written contractual terms; Bango v Naughton, 184 A.D.2d 961 [3rd Dept 1992] [where an express provision of a contract contradicts the alleged oral representation, the conflict between the writing and the oral representation negates the claim of reliance on the latter).

In this case, both the Confidentiality Statement and the August 13, 2003 letter specifically state that Conseco, in its sole discretion, was entitled to sell the GM Building to any bidder or no bidder and that Conseco would consider several factors other than price when making its decision. Given the express terms of the two documents, plaintiff's alleged reliance on Eastdil's or Conseco's alleged oral representations is unreasonable as a matter of law.

Moreover, plaintiff's argument that its injuries arose before Eastdil sent the August 13, 2003 letter is unavailing. The complaint alleges that defendants Wendt and Cremens both stated that Conseco intend to use an "open auction" or "open bid policy." But those statements do not promise that Conseco will hold an "auction without reserve" where the highest dollar bid is the sole consideration.[7]

In addition, that plaintiff's efforts to find investors occurred at the time that Conseco had proposed selling the GM Building at a Section 363 sale under the Bankruptcy Code further undermines plaintiff's claim that it relied the alleged oral statements. In paragraph 14 of the

---

[7] The words "without reserve," as applied to auctions, impose a binding legal obligation upon the property owner, and the highest bona fide bidder at an auction "without reserve" may insist the property be sold to him or her. Under the Uniform Commercial Code, an auction with reserve, that is where the seller can reject all bids and withdraw the property from sale, is the usual procedure, and sales are with reserve unless the goods are in explicit terms put up "without reserve." (See, Drew v John Deere of Syracuse, Inc., 19 A.D.2d 308 [4th Dept 1963]).

9

complaint,[8] plaintiff acknowledges that a Section 363 sale permits the seller to consider factors other than price when considering a bid for its property. (See, Colliers Bankruptcy Manual [3rd Ed. Rev. 1999], Section 363.02[1][f] ["[T]here may be sound reasons to accept a lower bid, particularly in a negotiated sale."]).

Plaintiff's aiding and abetting claim is also deficient because there is no valid fraud claim against any of the defendants and no allegations that defendants agreed to engage in a common fraud or scheme to defraud the plaintiff. (See Elghanian v Harvey, 249 A.D.2d 206 [1st Dept 1998]; Kaufman v Cohen, 307 A.D.2d 113 [1st Dept 2003] [dismissing the claim because it failed to allege how the defendants participated in or provided substantial assistance]).

Because the court finds that plaintiff did not, as a matter of law, reasonably rely on defendants' alleged oral statements, the court need not reach the defendants' alternative arguments for dismissing the fraud and promissory estoppel claims.

Accordingly, the first, third and fourth causes of action against the Conseco and Eastdil defendants are dismissed.

B. Fraud and Promissory Estoppel Claims as against the Macklowe Defendants

(1) Under CPLR 3016(b), where a cause of action is based on fraud or misrepresentation, "the circumstances constituting the wrong shall be stated in detail." (See, Glickman v Alper, 236 A.D.2d 230 [1st Dept 1997] [the complaint in a fraud action was properly dismissed for lack of the specificity required by CPLR 3016[b]). Here, the complaint fails to allege that the Macklowe

---

[8] Paragraph 14 of the Complaint states, "[o]n December 18, 2002, Conseco issued a press relaease, stating...that '[i]n conjunction with the Chapter 11 filing and as required under Section 363 of the Bankruptcy Code, Conseco Finance Corp. will file a motion seeking to establish bidding procedures for an auction that will allow other qualified bidders to submit higher and better offers to purchase company assets.'"

defendants made any misrepresentation to, or even communicated with, plaintiff prior to the time that Conseco accepted Macklowe's bid. Accordingly, because there are no allegations in the complaint that the Macklowe defendants made any representation, fraudulent or otherwise, to plaintiff, the court dismisses the fraud claim as against the Macklowe defendants. (See, Gramazio v Borda, Wallace & Witty, 181 AD2d 428 [1st Dept 1992] [dismissing the fraud claim where there were no allegations in the complaint that defendant made any representation to plaintiff]). Moreover, for the reasons stated above regarding the Conseco and Eastdil motions, the court also dismisses plaintiff's claim that the Macklowe defendants aided and abetted a fraud.

(2) To establish a cause of action based on promissory estoppel, a plaintiff must allege (a) an oral promise that is sufficiently clear and unambiguous, (b) reasonable reliance on the promise, and (c) an injury caused by the reliance. (Knight Sec. L.P. v Fiduciary Trust Co., 5 AD3d 172 [1st Dept 2004]). Here, because the complaint fails to allege that the Macklowe defendants made any representations or promises to the plaintiff prior to August 27, 2003 or that it relied, to its detriment, on any promise of Macklowe, the promissory estoppel cause of action will not lie.

Accordingly, the first and third causes of action are dismissed as against the Macklowe defendants.

C. Tortious Interference With Prospective Business Advantage against the Macklowe and Eastdil Defendants

A claim of tortious interference will not lie where the conduct complained of was authorized by a contract between the parties. (Lazar's Auto Sales, Inc. v Chrysler Fin. Corp., 83

11

F. Supp.2d 384 [S.D.N.Y. 2000] [no tortious interference if the action allegedly taken was one that the defendant was authorized to take]). Here, the terms of the July 16, 2003 Confidentiality Statement and the August 13, 2003 letter authorized the defendants' conduct. The documentary evidence establishes that Conseco was entitled to negotiate, or not negotiate, with any prospective purchaser and to select a purchaser at it's sole discretion based on its own criteria.

However, even if the contract between the parties did not bar the claim, plaintiff has not pleaded the essential elements of a claim for tortious interference with prospective business advantage. To state a tortious interference claim, plaintiff must plead that the defendants (1) knew of plaintiff's relationship and intentionally interfered with it and (2) acted with the sole purpose of harming the plaintiff or used wrongful or unlawful means to do so. (See, Carvel Corp. v Noonan, 3 N.Y. 3rd 182 [2004], NBT Bancorp, Inc. v Fleet/Norstar Fin. Grp. Inc., 87 N.Y. 2d 614 [1996]). In addition, plaintiff must show that, "but for" defendant's interference, plaintiff would have gotten the contract. (See, Bankers Trust Co. v Bernstein, 169 A.D.2d 400 [1st Dept 1991] [tortious interference with prospective business advantage is actionable where plaintiff would have entered into a contract "but for" the defendant's actions]; Mandelblatt v Devon Stores, Inc., 132 A.D.2d 162 [1st Dept 1987]).

Plaintiff does not, nor can it, allege that it had a relationship with Conseco and that, "but for" the conduct of Macklowe and Eastdil, it would have been the successful bidder. Here, Conseco never agreed to sell the G.M. Building to plaintiff. In fact, Conseco rejected plaintiff's first round bid and informed plaintiff by letter that Conseco had not chosen plaintiff to participate in the final round of bidding. Plaintiff, nevertheless, insisted on submitting a final bid.

Moreover plaintiff has not pleaded that defendants engaged in conduct for the sole purpose of intentionally harming plaintiff.[9] (See, Carvel Corp. 3 N.Y.2d at 190). The Macklowe defendants were certainly motivated by their own self interest when they submitted their bid for the GM Building—they were not simply seeking to harm plaintiff. (See, Strapex Corp. v Metaverpa, 607 F. Supp. 1047, 1050 [S.D.N.Y. 1985], citing Guard Life Corp. v S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183 [1980] [Interference with a prospective contract will be excused if the conduct complained of was, at least in part, meant to advance the competing interests of the interferer unless the conduct includes, inter alia, physical violence, fraud and some degrees of economic pressure]).

Moreover, plaintiff's allegations against the Eastdil defendants—that those defendants permitted Macklowe to submit a late bid and that they disclosed Solow's bid to Macklowe and allowed Macklowe to match it – do not suggest that there was a deal, or a potential deal, between Conseco and plaintiff or that the Eastdil defendants' conduct was solely intended to harm plaintiff.

Accordingly, the fifth cause of action is dismissed as against the Macklowe and Eastdil defendants.

### D. Declaratory Judgment and Constructive Trust

Laches bar plaintiff's second cause of action for a declaratory judgment to set aside the transaction and to transfer the building to plaintiff and the sixth cause of action for a constructive

---

[9] The allegations of interference do not rise to the level of an independent tort or crime because the court has dismissed the tort claims.

13

trust. Based on laches, a court denies a request for equitable relief where, as a result of a plaintiff's unreasonable delay in the assertion of a right, "changes occur in the subject matter of the transaction in suit or in the relative positions of the parties thereto... ." (In re Boylan, 249 A.D. 35, 38 [3d Dept 1936]). "The underlying basis for the defense of laches is that the plaintiff has unreasonably and inexcusably delayed to the prejudice of the defendant and by doing so has worked a disadvantage or injury to the defendant." (Eastern Shopping Ctrs., Inc. v Trenholm Motels, Inc., 33 A.D. 2d 930, 932 [3rd Dept 1970]).

Even though plaintiff knew the circumstances underlying the sale of the GM Building in 2003, it delayed filing this suit for over two years.[10] In the interim, Conseco transferred title to Macklowe that proceeded with its plans for renovating the building. If plaintiff had asserted its claims in a timely manner, the court could have assessed those claims prior to the closing. Now, any grant of injunctive relief will require the parties to "undo" a complex transaction and prejudice the Macklowe defendants who have spent millions of dollars making improvements to the GM Building. In addition, unwinding the transaction now would affect the rights of third parties, such as the building tenants, who have relied on the transaction.

However, even if laches did not bar the equitable causes of action, the declaratory judgment cause of action fails because the court has dismissed plaintiff's substantive claims. The constructive trust claim fails because the plaintiff has not pled several of the elements of that

---

[10] On November 24, 2003, plaintiff sent letters to Eastdil, Conseco and Macklowe outlining its complaints about the sale and threatening both criminal prosecution and a civil suit in connection with its failed bid to buy the property. Moreover, as stated in the complaint, Solow filed suit to set aside the transaction based on defendants' alleged failure to hold a fair auction.

claim, to wit: (a) a confidential or fiduciary relationship; (b) a transfer in reliance on a promise and (3) unjust enrichment.

Accordingly, the motions of the Conseco, Eastdil and Macklowe defendants to dismiss the amended complaint, as against them, are granted and;

It is ORDERED that the complaint is dismissed as to the moving defendants, and the clerk is directed to enter judgment accordingly, severing and continuing any claims as to remaining defendants.

Dated: November 29, 2006

_____
J.S.C.