UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

LESLIE DICK WORLDWIDE, LTD. and
LESLIE DICK,

    *Plaintiffs,*

    v.

GEORGE SOROS, SOROS FUND
MANAGEMENT, LLC, FIG, LLC, VORNADO
REALTY TRUST, GERMAN AMERICAN
CAPITAL CORP., EASTDIL SECURED, LLC,
HARRY MACKLOWE, CONSECO, INC.,
KIRKLAND & ELLIS, LLP, DONALD J.
TRUMP and JOHN DOES "1" THROUGH "10,"

    *Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

Hon. Barbara S. Jones

No. 08 Civ. 7900 (BSJ)(THK)

ECF Case


# MEMORANDUM OF LAW IN SUPPORT OF
# VORNADO REALTY TRUST'S MOTION TO DISMISS


Robert J. Giuffra, Jr. (RG-9969)
Charles R. Korsmo (CK-2761)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Counsel for Defendant Vornado Realty Trust*

April 24, 2009

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

THE ALLEGATIONS OF THE AMENDED COMPLAINT ................................... 3

STANDARDS OF REVIEW .................................................................................... 7

ARGUMENT ............................................................................................................ 8

I.  PLAINTIFFS' RICO CLAIMS AGAINST VORNADO SHOULD
    BE DISMISSED. ......................................................................................... 8

    A.  Plaintiffs' RICO Claims Against Vornado Are Barred by *Res Judicata* and
        Collateral Estoppel .......................................................................... 8

        1.  *Res Judicata* ......................................................................... 8

        2.  Collateral Estoppel .............................................................. 10

    B.  Plaintiffs' RICO Claims Also Are Barred by the Statute of Limitations .............. 12

    C.  Plaintiffs' Lack RICO Standing Because They Fail To Allege an Injury
        Proximately Caused by a RICO Violation ........................................ 12

    D.  As a Matter of Law, Plaintiffs Do Not Allege That Vornado Violated the
        RICO Statute .................................................................................. 13

        1.  Predicate Acts ..................................................................... 14

        2.  Pattern of Racketeering Activity .......................................... 16

II. PLAINTIFFS' CONCLUSORY CLAIMS AGAINST VORNADO SHOULD
    BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD
    BE FUTILE. .............................................................................................. 17

CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Bernstein* v. *Misk*,
948 F. Supp. 228 (E.D.N.Y. 1997) ...................................................................................15

*Calka* v. *Kucker & Bruh, LLP*,
2000 WL 557266 (S.D.N.Y. 2000) ............................................................................ 10-11

*Cameron* v. *Church*,
253 F. Supp. 2d 611 (S.D.N.Y. 2003) ...............................................................................9

*Cofacredit, S.A.* v. *Windsor Plumbing Supply Co., Inc.*,
187 F.3d 229 (2d Cir. 1999) ............................................................................................17

*Corto* v. *Lefrak*,
610 N.Y.S.2d 214 (1st Dep't 1994) ................................................................................10

*Davidson* v. *Capuano*,
792 F.2d 275 (2d Cir. 1986) ............................................................................................11

*Evans* v. *Ottimo*,
469 F.3d 278 (2d Cir. 2006) ............................................................................................11

*GICC Capital Corp.* v. *Technology Finance Group, Inc.*,
67 F.3d 463 (2d Cir. 1995) ..............................................................................................16

*Index Fund, Inc.* v. *Hagopian*,
677 F. Supp. 710 (S.D.N.Y. 1987) ...................................................................................9

*In re Merrill Lynch Ltd. Partnerships Litig.*,
154 F.3d 56 (2d Cir. 1998) ..............................................................................................12

*Kaufman* v. *Eli Lilly & Co.*,
65 N.Y.2d 449 (NY 1985) ...............................................................................................11

*Leptha Enterprises, Inc.* v. *Longenback*,
1991 WL 183373 (S.D.N.Y. Sept. 9, 1991) ......................................................................9

*Leslie Dick Worldwide Ltd.* v. *Macklowe Props., Inc., et al.*,
Index No. 06/600222 (Moskowitz, J.) ...............................................................................3

*McKenzie* v. *Dow Jones & Co., Inc.*,
2008 WL 2856337 (S.D.N.Y. 2008) ........................................................................... 17-18

*Page(s)*

*Migra* v. *Warren City Sch. Dist. Bd. Of Educ.*,
    465 U.S. 75 (1984).................................................................8

*Moore* v. *PaineWebber, Inc.*,
    189 F.3d 165 (2d Cir. 1999)...............................................14

*Moss* v. *Morgan Stanley Inc.*,
    719 F.2d 5 (2d Cir. 1983)...................................................14

*Procapui-Productores de Camaroes De Icapui Ltda.* v. *Layani*,
    2008 WL 3338199 (S.D.N.Y. Aug. 8, 2008)......................16

*Qualis Care, L.P.* v. *Hall*,
    1999 WL 683564 (S.D.N.Y. Sept. 1, 1999).........................16

*Republic of Colombia* v. *Diageo North America Inc.*,
    531 F. Supp. 2d 365 (E.D.N.Y. 2007) ...........................14-15

*Saud* v. *Bank of New York*,
    929 F.2d 916 (2d Cir. 1991)................................................10

*Schwartzreich* v. *E.P.C. Carting Co., Inc.*,
    668 N.Y.S.2d 370 (1st Dep't 1998) ...................................8-9

*Singh* v. *Parnes*,
    199 F. Supp. 2d 152 (S.D.N.Y. 2002).....................8, 11-12, 14

*Smith* v. *Russell Sage College*,
    54 N.Y.2d 185 (NY 1981) ..................................................11

*Spitzer* v. *Applied Card Sys., Inc.*,
    863 N.Y.S.2d 615 (NY 2008) ...............................................8

*Spool* v. *World Child Intern. Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)...............................................17

*Stubbs* v. *de Simone*,
    2005 WL 2429913 (S.D.N.Y. 2005)...................................18

*Tafflin* v. *Levitt*,
    493 U.S. 455 (1990)...........................................................12

*United States* v. *Autuori*,
    212 F.3d 105 (2d Cir. 2000)...........................................15-16

*W. 79th St. Corp.* v. *Congregation Kahl Minchas Chinuch*,
    2004 WL 2187069 (S.D.N.Y. Sep. 29, 2004)......................15

*Page(s)*

**Statutes**

18 U.S.C. § 1956..............................................................................................14

18 U.S.C. § 1957..............................................................................................14

18 U.S.C. § 1962..............................................................................................14

Defendant Vornado Realty Trust ("Vornado") respectfully submits this brief in support of its motion to dismiss the Amended RICO Complaint ("Amended Complaint" or "Am. Cplt.") brought by Leslie Dick Worldwide Ltd. and Leslie Dick ("Plaintiffs") in the above-captioned action (the "Action").  To minimize duplication and burden on this Court, this brief addresses only those arguments that are specific to Vornado, while the Defendants George Soros and Soros Fund Management, LLC (together, the "Soros Defendants") are submitting a brief addressing common issues and arguments affecting all Defendants (the "Common Brief"). Vornado joins the Common Brief in full.

## PRELIMINARY STATEMENT

As is set forth more fully in the Common Brief, the Amended Complaint is entirely frivolous and was filed in an attempt to resurrect baseless claims already rejected in state court.  The Amended Complaint alleges a fanciful – indeed, wholly imagined – international RICO conspiracy among the Soros Defendants, Donald Trump, the prominent law firm Kirkland & Ellis, Conseco, German American Capital, Harry Macklowe and assorted others, including Vornado (collectively, the "Defendants").  Vornado is a fully integrated real estate investment trust, and one of the largest owners and managers of real estate in the United States, including more than 16 million square feet of office space in New York.

Having already forced the Defendants to waste time and resources responding to their 95-page complaint, the plaintiffs have now bloated the already prolix original to 154 rambling, incoherent pages of groundless and often incomprehensible allegations.  Underneath its confusing mass of verbiage, the core of the Amended Complaint – and the only injury alleged – is that the plaintiffs were somehow defrauded out of the opportunity to acquire the General Motors Building, which they claim was sold to Harry Macklowe in a "sham auction" in August,

2003.  (*See* Am. Cplt. ¶¶ 411-436).  The role Vornado is supposed to have played in this alleged fraud is nowhere specified in the Amended Complaint, which merely alleges that, several weeks after the "auction," Vornado created a financing entity and provided mezzanine debt secured by the General Motors Building.  (*See* Am. Cplt. ¶ 447).

The Amended Complaint should be dismissed because plaintiffs have already litigated – and lost – a state court action involving the very same subject matter, facts and circumstances as the instant federal Action.  Thus, as a matter of law, plaintiffs are barred by *res judicata* and collateral estoppel from pressing these same issues against Vornado in this Action. (*See infra* at pages 8 to 12).

In addition, plaintiffs' RICO claims are barred by the applicable statute of limitations.  The alleged "sham auction" took place in 2003.  Indeed – as detailed in the Common Brief at pages 14-15 – in November 2003, plaintiff Leslie Dick threatened the Soros Defendants and other Defendants here with RICO claims based on the same "bid rigging" alleged here.  Because RICO claims are subject to a four-year statute of limitations, the Amended Complaint here is time-barred on its face.  (*See infra* at page 12).

Beyond these glaring, fatal deficiencies, plaintiffs' claims also fail on their own merits.  While the legal infirmities of plaintiffs' RICO claims – as detailed in the Common Brief – are manifest, those infirmities are particularly clear with respect to Vornado.

Despite burdening this Court with an additional 60 pages of redundancy – on top of the 95 pages of the original complaint – the Amended Complaint fails to provide any new relevant information.  Like the original, the Amended Complaint never explains what role Vornado is supposed to have played in the alleged conspiracy, or any of the who, what, when, where, how, and why of Vornado's participation in the alleged RICO enterprise.  (*See infra* at

pages 12 to 17).  Instead, the plaintiffs simply describe a perfectly normal and legitimate

structure for a complex real estate transaction and append the conclusory labels "money

laundering" and "wire fraud."

In sum, the Amended Complaint's claims against Vornado should be dismissed

with prejudice, because those claims are precluded by *res judicata* and collateral estoppel, are

time-barred, and fail to state a claim as a matter of law.

### THE ALLEGATIONS OF THE AMENDED COMPLAINT

The Common Brief provides a comprehensive statement of the relevant

background, including (i) the history of plaintiffs' earlier action in the New York State Courts,

*Leslie Dick Worldwide Ltd.* v. *Macklowe Props., Inc., et al*, Index No. 06/600222 (Moskowitz,

J.) (the "State Action"); (ii) the circumstances and allegations of the present Action; (iii) the fact

that the allegations of the present Action arise out of the same transaction as the prior State

Action; and (iv) the plaintiffs' five-year delay in bringing this Action, after asserting in a

November 24, 2003 letter that they possessed RICO claims.  This background information is

incorporated by reference, and will not be expanded upon here, except to spell out the Amended

Complaint's allegations against Vornado (such as they are).

The majority of the "allegations" against Vornado are conclusory statements,

devoid of any specifics, proclaiming that Vornado – listed together with a shifting cast of co-

defendants – was a member of a "RICO Enterprise" engaged in various classes of nefarious

activities:

> • In conspiracy with, and with the unlawful assistance and
> participation of Conseco, Inc., Conseco, Inc.'s attorneys,
> Kirkland & Ellis, LLP, Eastdil Secured, LLC, Harry Macklowe,
> German American Capital Corp. and ***Vornado Realty Trust***, the
> defendants conspired and conceived a criminal enterprise, plan

and scheme to acquire prime assets of Conseco, Inc. and to reap enormous profits by acquiring Conseco Finance Corp. and the General Motors Building by means of invisibly laundering money through Conseco, Inc. for profit. (Am. Cplt. ¶ 15)

- In order to achieve these illegal goals, from on or about June 20, 2002 through September 25, 2003, defendants George Soros, Soros Fund Management, LLC ("SFM"), Fortress Investment Group, LLC, now known as FIG, LLC, or one of its affiliates , ("Fortress"), **Vornado Realty Trust** ("**Vornado**"), German American Capital Corp. ("German American"), Conseco, Harry Macklowe, Eastdil Secured, LLC ("Eastdil"), Donald J. Trump, and Kirkland & Ellis, LLP ("Kirkland & Ellis") and other third parties, including but not limited to Mapeley and Quantum, each agreed to, and did conspire with each other to conduct and participate in a pattern of racketeering activity involved in acquiring the Conseco assets in order to illegally launder money through such transactions and for profit. (Am. Cplt. ¶ 28)

- To conceal the unlawful origin the funds employed in connection with the purchase of the GM Building, within the week prior to purchasing the GM Building, in conspiracy with German American, Macklowe, Mapeley, and Quantum, Soros, Fortress and **Vornado** formed at least five ephemeral shell entities, which had no officers, directors or capital, in order to control the funneling of the illegally derived funds by wire fraud into the limited liability company which bought the building, 5th Avenue 58/59 Acquisition Co., LLC ("Acquisition"). (Am. Cplt. ¶ 40)

- Upon information and belief, the illegal source of the funds to purchase the GM Building were derived from entities jointly managed or controlled by Soros, SFM, Fortress, **Vornado**, Mapeley and/or Quantum. (Am. Cplt. ¶ 41)

- The unlawful Money Laundering through the purchase of the GM Building, orchestrated and carried out by the defendants through a pattern of racketeering, including Soros, SFM, Fortress, **Vornado**, German American, Conseco, Trump, Eastdil, Macklowe, Kirkland & Eliis and, upon information and belief, other co-conspirators, operated an enterprise involving Money Laundering, Bankruptcy Fraud and wire fraud. (Am. Cplt. ¶ 136)

- These activities by Soros, SFM, Fortress, Macklowe, **Vornado**, and Trump, constituted a pattern of racketeering activity involving interstate commerce to acquire an interest in Conseco,

to invest proceeds of a pattern of racketeering activities in Conseco, and to conduct the affairs of Conseco through a pattern of racketeering, through Money Laundering and Bankruptcy Fraud. (Am. Cplt. ¶ 251)

- Fortress, *Vornado*, Trump, Soros, SFM and others, acquired or maintained, directly or indirectly, an interest in, or control of Conseco, an enterprise which was engaged in, or the activities of which affected, interstate or foreign commerce in two ways: (a) by purchasing Conseco Finance with laundered money deriving from illegal sources, and (b) by obtaining the Debtor in Possession Financing (the "DIP Financing") of Conseco through racketeering activities. (Am. Cplt. ¶ 252)

- Upon information and belief, from June 2002 to December 2002, the six month period prior to the Bankruptcy filing of Conseco, the defendants in furtherance of the pattern of racketeering of the Enterprise, including Soros, SFM, Fortress, *Vornado*, Conseco, and Kirkland & Ellis entered into various conspiratorial agreements to facilitate the goals and purposes of the Enterprise to launder money through the Conseco Bankruptcy using the acquisition of Conseco Finance, which was a violation of 18 U.S.C. 1962(a), and the DIP Financing by FPS, LLC, which was a violation 18 U.S.C. §1962(c), and ultimately allowing the defendants through a pattern of racketeering to purchase the GM Building, to launder money through its sale, and thereafter into Trump Chicago. (Am. Cplt. ¶ 267)

- Upon information and belief, as part of the criminal conspiracy, plan and scheme by the RICO Enterprise in or about mid-2002, Soros, Fortress or someone else acting on behalf of them approached Trump with a proposal to use money laundering to acquire the GM Building and, once acquired by the Enterprise, Soros and the other individuals associated in fact with Soros, Fortress, *Vornado*, Harry Macklowe, Trump, Eastdil and German American to engage in a Money Laundering scheme through which they could launder money through the sale of the GM Building into a Trump real estate property.  All the aforesaid parties agreed to engage in the conspiracy. (Am. Cplt. ¶ 323)

- On August 27, 2003, despite the fact that plaintiffs' bid was the highest and best, and the fact that Macklowe's bid was well below other bidders, was untimely submitted and as part of the criminal conspiracy, plan and scheme by defendants Conseco, Soros, Fortress, Eastdil, German American and *Vornado*,

Macklowe was privately allowed to increase his bid to appear to have won the fraudulent auction.  (Am. Cplt. ¶ 423)

• The scheme of the RICO Enterprise was to engage in racketeering activity of Money Laundering to make it appear that Macklowe acquired the GM Building, when, in fact, Soros, SFM, Fortress, Mapeley, Quantum and Macklowe, together with the unlawful and knowing conspiracy of Conseco, *Vornado*, Eastdil, German American, and other presently unknown defendants, and numerous entities which are no longer existing, contrived a massive fraud to use various shell entities and instrumentalities to use the purchase of the GM Building for Money Laundering.  (Am. Cplt. ¶ 446)

• In connection with the purchase of Conseco Finance, the DIP facility and the purchase and sale of the GM Building, George Soros, Soros Fund Management, LLC, Conseco, Inc., Conseco, Inc.—Post Bankruptcy, *Vornado Realty Trust*, German American Capital Corp., Kirkland & Ellis, LLP, Eastdil Secured, LLC, Harry Macklowe and Donald J. Trump, conspired to violate 18 U.S.C. 1962 (a), (b) and (c) to the injury of plaintiffs, their property and business by committing money laundering pursuant to 18 U.S.C. §§ 1956 and 1957.  (Am. Cplt. ¶ 592)

• Mapeley, Quantum, George Soros, Soros Fund Management, LLC, Fortress, *Vornado Realty Trust*, German American Capital and Donald J. Trump agreed to conspire with, and participate in the pattern of racketeering conducted by the Enterprise and the defendants in violating 18 U.S.C. § 1343, 18 U.S.C. §1952 (a) (3) by illegally using interstate and international telecommunications devices to launder money from Mapeley, Quantum, SFM, or Fortress to ephemeral shell entities described hereinabove, in violation of 18 U.S.C. §1956 and 1957.  (Am. Cplt. ¶ 597)

Vornado's name also appears – again without any specifics and in the company of an ever-changing list of co-defendants and non-parties – in a number of paragraphs ostensibly setting forth the "RICO Predicate Acts" of the other co-defendants.  (Am. Cplt. ¶¶ 494, 500, 501, 513, 514, 538, and 539)

Beyond these conclusory assertions, the Amended Complaint lacks any specifics of what Vornado is actually alleged to have done, or of what role Vornado is alleged to have

played in the central transaction – the alleged "sham auction" of the General Motors Building. Instead, the Amended Complaint alleges only that, in 2001, "Vornado proposed to Conseco to purchase the General Motors Building for 1.15 Billion Dollars, which Conseco rejected." (Am. Cplt. ¶ 221).

From there, the Amended Complaint moves to September 23, 2003, when "Vornado, or another defendant, created another ephemeral shell company named Vornado General Motors III, LLC[.]" (Am. Cplt. ¶ 44; *see also* ¶ 447 ("Vornado formed GM III, at the behest of George Soros, SFM, and other members of the Enterprise[.]")). Vornado supposedly created this entity in exchange for "a prized piece of 250 Million Dollars of prime mezzanine debt of the GM Building" at an unspecified interest rate "far above the reasonable rates of interest charged for secured mezzanine financing." (Am. Cplt. ¶ 45; *see also* ¶ 447). George Soros is then alleged to have used "Vornado General Motors III, LLC" – in a manner that is never made clear – to "funnel" $25 million to German Capital as part of his "Money Laundering." (*See* Am. Cplt. ¶¶ 44-52, 447-67). These same allegations are also recapitulated – with the same lack of specifics that characterizes the entire Amended Complaint – in a section purporting to set forth Vornado's "RICO Predicate Acts." (*See* Am. Cplt. ¶¶ 529-35). Finally, the Amended Complaint alleges that Vornado "holds a stake in four of the seven office Buildings" Harry Macklowe is alleged to have purchased in 2007 by borrowing against the General Motors Building. (Am. Cplt. ¶ 482).

## STANDARDS OF REVIEW

The Common Brief's discussion of the appropriate standards of review is incorporated by reference and will not be recapitulated here.

## ARGUMENT

## I.

## PLAINTIFFS' RICO CLAIMS AGAINST
## VORNADO SHOULD BE DISMISSED.

Plaintiffs' RICO claims against Vornado fail, because (a) they are barred by *res judicata* or collateral estoppel; (b) they are barred by the statute of limitations; (c) plaintiffs lack RICO standing; and (d) they do not adequately plead a RICO claim against Vornado.

**A.    Plaintiffs' RICO Claims Against Vornado Are Barred by *Res Judicata* and Collateral Estoppel.**

    **1.    *Res Judicata.***

Although Vornado was not a party to the State Action, plaintiffs' claims are barred by *res judicata*. As a federal court, this Court must give the judgments in the State Action "the same preclusive effect as would be given [those] judgment[s] under the law of the State in which the judgment[s] w[ere] rendered." *See Migra* v. *Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80-81 (1984); *Singh* v. *Parnes*, 199 F. Supp. 2d 152, 158 (S.D.N.Y. 2002). Here, because the State Action was litigated in New York, this Court must give the prior judgments the same preclusive effects they would have in New York state courts.

As the New York Court of Appeals has recently made clear: "In New York, res judicata, or claim preclusion, bars successive litigation based on the 'same transaction or series of transactions' if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *Spitzer* v. *Applied Card Sys., Inc.*, 863 N.Y.S.2d 615, 626 (NY 2008) (internal citations omitted); *see also Schwartzreich* v. *E.P.C. Carting Co., Inc.*, 668 N.Y.S.2d 370, 372 (1st Dep't 1998) ("If the party against whom *res judicata* is invoked

- 8 -

had a full and fair opportunity to litigate the claim in a prior proceeding based on the same transaction, but did not raise it therein, he will be barred from raising it in a subsequent action."). The addition of new defendants does not alter the analysis. *See, e.g., Cameron* v. *Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003) ("Res judicata operates to preclude claims, rather than particular configurations of parties; Plaintiff's addition of new defendants…does not entitle him to revive the previously-dismissed claims."). As explained in the Common Brief at pages 17 to 24, the requirements for *res judicata* are met here.

Some earlier cases also require that a new party, such as Vornado, be in privity with a party to the original action to be protected by *res judicata*. *See Index Fund, Inc.* v. *Hagopian*, 677 F. Supp. 710, 715 (S.D.N.Y. 1987). Even under this standard, the claims against Vornado are precluded. "The concept of privity is to be applied with flexibility" and "arises when the interests of the nonparty were adequately represented in the initial action." *Id.* (internal citations and quotation marks omitted); *see also Leptha Enterprises, Inc.* v. *Longenback*, 1991 WL 183373, at *2 (S.D.N.Y. Sept. 9, 1991) (applying *res judicata* where plaintiff was aware of new defendants at the time of the earlier action and the new complaint "name[d] the previously unnamed defendants merely as co-conspirators [whose] alleged activities were not independent of the actions of the earlier defendants.").

Here, Vornado's interests were adequately represented in the State Action, which resulted in a holding that plaintiffs in this action were not defrauded in connection with the transaction at issue. In addition, Vornado's alleged involvement in the disputed transaction was public knowledge at the time of the State Action, and plaintiffs even referred to Vornado's purported conduct in the state court complaint. (*See* State Complaint ¶ 56, Ex. B to the Declaration of John R. Oller in Support of the Soros Defendants' Motion to Dismiss, executed

- 9 -

April 20, 2009 ("Oller Decl.")).  In this Court, plaintiffs now merely allege that Vornado is a co-conspirator with the named defendants in the State Action.

As detailed in the Common Brief, plaintiffs cannot plead around *res judicata*. (*See* Common Brief at 21-24).  None of the particular allegations against Vornado alter the analysis in the Common Brief, which is incorporated by reference.  The plaintiffs lift language out of context from a Second Circuit opinion, *Saud* v. *Bank of New York*, 929 F.2d 916 (2d Cir. 1991), applying federal *res judicata* law.  (Common Brief at 21).  It is, however, New York *res judicata* law that governs here, and New York applies the "same transaction" test described above.  (*Id.* at 17-18).

In any event, *res judicata* would apply even under the federal law standard enunciated in *Saud*, because: (1) the same transaction or series of transactions – the 2003 sale of the GM Building – is at issue; (2) the same evidence is needed to support both claims (because the plaintiffs cannot recover in this Action absent proof that they were defrauded in connection with the 2003 sale of the GM Building, as was also alleged in the State Action); and (3) the "essential" facts in this Action – the claimed "sham auction" – were present in the prior action. (*Id.* at 22-24).

Thus, under any applicable standard, the RICO claims asserted against Vornado in the present Action are barred by *res judicata*.

### 2.    Collateral Estoppel.

In New York courts, "collateral estoppel is available to protect those defendants who were not parties to the earlier proceedings from having to litigate those issues previously raised and rejected." *Corto* v. *Lefrak*, 610 N.Y.S.2d 214, 216 (1st Dep't 1994); *see also Calka* v. *Kucker & Bruh, LLP*, 2000 WL 557266 at *10 (S.D.N.Y. 2000) ("Under New York law,

relitigation of an issue is barred by collateral estoppel, whether or not the party invoking the estoppel would have been barred by a judgment adverse to that party."). Collateral estoppel "bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive in the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans* v. *Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citing *Kaufman* v. *Eli Lilly & Co.*, 65 N.Y.2d 449, 455-56 (NY 1985)).

"The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues…whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue." *Kaufman*, 65 N.Y.2d at 456 (citations omitted). In New York, the identical issue requirement for collateral estoppel is also evaluated using the "same transaction" test – any final decision on the merits bars all subsequent claims arising from the same transaction or series of transactions, even if based on different legal theories. *See Smith* v. *Russell Sage College*, 54 N.Y.2d 185, 192-93 (NY 1981); *see also Davidson* v. *Capuano*, 792 F.2d 275, 278 (2d Cir. 1986).

As the Common Brief demonstrates, all of the elements of the collateral estoppel test are met with regard to the claims against Vornado.

*First*, the sole injury plaintiffs claim from the supposed "RICO Enterprise" arises from the same transaction that formed the basis of the State Action – the alleged "sham auction" of the General Motors Building. The issue decided in the State Action – that the plaintiffs were not defrauded out of the General Motors Building – plainly bars plaintiffs' claims in the present Action. *See Singh* v. *Parnes*, 199 F. Supp. 2d at 159 ("a party cannot avoid the preclusive effect of *res judicata* or collateral estoppel by recasting allegations of fraud adjudicated in the prior

litigation as a federal RICO action"). If, as the state court determined, the plaintiffs were not defrauded out of the General Motors Building, then they have suffered no RICO injury.

*Second*, plaintiffs had a "full and fair" opportunity to contest the prior determination, litigating the issue in the New York Supreme Court, and appealing to the Appellate Division. Furthermore, the plaintiffs' RICO claims could have been brought in the prior State Action. *See Tafflin* v. *Levitt*, 493 U.S. 455 (1990).

### B. Plaintiffs' RICO Claims Also Are Barred by the Statute of Limitations.

The Common Brief details how the plaintiffs' claims run afoul of the four-year statute of limitations on RICO claims, which begins to run once a plaintiff "discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998).

None of the particular allegations against Vornado alter the analysis in the Common Brief, which is incorporated by reference. The sole post-2003 allegation regarding Vornado is that it holds a stake in several office buildings purchased by Harry Macklowe in 2007. (Am. Cplt. ¶ 482). Plaintiffs do not allege any RICO injury connected to these holdings. Plaintiffs' letter of November 24, 2003 – asserting that the plaintiffs had claims under RICO and the Sherman Act arising out of the sale of the General Motors Building – leaves no doubt that the plaintiffs had discovered their only alleged RICO injury nearly five years *before* the filing of the present Action on September 10, 2008. (*See* Oller Decl. Ex. H (November 24, 2003 Letter)).

### C. Plaintiffs Lack RICO Standing Because They Fail To Allege an Injury Proximately Caused by a RICO Violation.

The Common Brief shows that the plaintiffs lack standing to bring their RICO claims, as they cannot demonstrate that they suffered any injury proximately caused by the

alleged RICO violations.  The particular allegations against Vornado do not alter the analysis in the Common Brief, which is incorporated by reference.

**D.     As a Matter of Law, Plaintiffs Do Not Allege That Vornado Violated the RICO Statute.**

The manifold failings of the plaintiffs' attempt to plead RICO claims are set forth in great detail in the Common Brief and are incorporated by reference.  These failings will not be recited here, except to note that the Amended Complaint's allegations regarding Vornado consist almost entirely of vague and conclusory statements alleging that Vornado – listed together with a shifting cast of co-defendants – was a member of a "RICO Enterprise" engaged in a "pattern of racketeering" (*See* Am. Cplt. ¶¶ 28, 136, 251, 267, 446, 597) and "money laundering." (*See* Am. Cplt. ¶¶ 15, 323, 592).

By any measure, the nature of Vornado's alleged participation in this "Enterprise" is left wholly to the imagination.  When and how did Vornado join the "Enterprise"?  What position did Vornado occupy within it?  What common purpose did Vornado share with the other members?  How were decisions made and instructions conveyed by and to Vornado?  On each of these questions, the Amended Complaint is fatally silent.

Indeed, as detailed above, the Amended Complaint alleges only the following specific actions by Vornado:  (i) that in 2001 – two years *before* the alleged "sham auction" – Vornado merely *offered* to purchase the General Motors Building for $1.15 billion (*See* Am. Cplt. ¶ 221); and (ii) that in September, 2003 – one month *after* the alleged "sham auction" – Vornado created a financing vehicle and provided a mezzanine loan secured by the General Motors Building (*See* Am. Cplt. ¶¶ 44, 45, 447).  The Complaint does not explain who received this loan, though presumably it would be Harry Macklowe.  Also left unexplained are Vornado's

role in the functioning of the alleged "RICO Enterprise," and how Vornado's actions may have led to any RICO injury to the plaintiffs. Similarly, the Amended Complaint does not indicate that in carrying out these alleged actions, Vornado was "carrying out the affairs of an unlawful enterprise as defined by the statute, rather than [its] own affairs or those of [its] institutional employers, principals or partners." *Singh* v. *Parnes*, 199 F. Supp. 2d at 163.

As a matter of law, these bare allegations are wholly inadequate to establish, *inter alia*, the (1) predicate acts; or (2) pattern of racketeering activity necessary to support a civil RICO claim against Vornado. *See Moss* v. *Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983); 18 U.S.C. § 1962(c).

### 1.    Predicate Acts.

The predicate acts alleged by plaintiffs are (i) bankruptcy fraud in connection with Conseco's bankruptcy proceedings; (ii) money laundering; and (iii) wire fraud.

The Amended Complaint contains no specific factual allegations supporting a claim of bankruptcy fraud against Vornado. Nowhere does the Amended Complaint allege that Vornado participated in the Conseco bankruptcy proceedings, or provide any of the details necessary to support allegations of fraud. *See Moore* v. *PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) ("In the RICO context, Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." (internal quotation marks omitted)).

Plaintiffs also fail to allege that Vornado knowingly conducted monetary transactions involving "criminally derived property" from "specified unlawful activity," as required to show money laundering under 18 U.S.C. §§ 1956 and 1957. *See Republic of*

*Colombia* v. *Diageo North America Inc.*, 531 F. Supp. 2d 365, 438-39 (E.D.N.Y. 2007) (quoting *Bernstein* v. *Misk*, 948 F. Supp. 228, 236 n.2 (E.D.N.Y. 1997)). The allegations of money laundering by Vornado – or any of the Defendants – are entirely conclusory, and fail to even identify the "specified unlawful activity" that supposedly provided the "criminally derived property." *See, e.g., W. 79th St. Corp.* v. *Congregation Kahl Minchas Chinuch,* 2004 WL 2187069, at *9 (S.D.N.Y. Sept. 29, 2004) ("[I]n the absence of allegations concerning a 'specified unlawful activity,' no claim for money laundering may withstand a motion to dismiss."). Instead, the Amended Complaint contains repeated references to unspecified "illegal activities" (Am. Cplt. ¶¶ 27, 33, 36, 52, 54, 268), "proceeds of unlawful activity" (*id.* ¶¶ 461-62, 464, 466, 485), "illicitly derived funds (*id.* ¶¶ 117, 465), and "dirty money transfers" (*id.* ¶ 456).

The only attempt the plaintiffs make to allege the supposed "unlawful activities" is the bizarre contention that "[u]pon information and belief, the presently unknown sources of the funds, believed to be from Mapeley and/or Quantum, derive from illegal sources which conduct unlawful activities, including, but not limited to, Narco Drug Trafficking, Black Market Arms Dealers, Prostitution slave trading and Organized Crime." (Am. Cplt. ¶ 66; *see also id.* ¶ 489). Plaintiffs have apparently arrived at this "belief" because Quantum is based in the Netherlands Antilles, and the Netherlands Antilles are supposedly an "important" center for laundering drug trafficking money. (Am. Cplt. ¶¶ 66, 259). In addition to the facial absurdity of the allegations, it is nowhere explained whether or how Vornado is supposed to have known of these "illegal activities."

Similarly, the Amended Complaint fails to allege that Vornado committed wire fraud. As is discussed in the Common Brief at 41-42, a plaintiff must establish, *inter alia,* that the defendants "had a conscious knowing intent to defraud and that the defendant contemplated

- 15 -

or intended some harm to the property rights of [plaintiffs]." *United States* v. *Autuori*, 212 F.3d

105, 116 (2d Cir. 2000). Nowhere does the Amended Complaint allege that Vornado – or any of

the defendants – consciously intended to defraud the plaintiffs, or cause harm to the plaintiffs'

property. A RICO wire fraud claim is also subject to the particularity requirements of Rule 9(b):

"To satisfy Rule 9(b), a RICO complaint [alleging mail or wire fraud] should include the

identities of the actors, the precise actions taken or statements made, the time, place, and

methods of communication including the dates of telephone calls or mailings, and the precise

effects of the fraudulent activity." *Procapui-Productores de Camaroes De Icapui Ltda.* v.

*Layani*, 2008 WL 3338199, No. 07-CV-6627, at *3 (S.D.N.Y. Aug. 8, 2008) (Jones, J.). None of

these specifics is alleged in the Amended Complaint.

### 2.    Pattern of Racketeering Activity.

Finally, the plaintiffs have not adequately alleged a "pattern of racketeering

activity." To properly allege such a "pattern," the plaintiffs must plead either "open-ended"

continuity (past criminal conduct combined with a threat of continued criminal conduct) or

"closed-ended" continuity (past criminal conduct extending over a substantial period of time).

*See GICC Capital Corp.* v. *Technology Finance Group, Inc.*, 67 F.3d 463, 466-67 (2d Cir. 1995).

Plaintiffs are unable to allege either.

To plead "open-ended" continuity, a plaintiff must allege that "the scheme at

issue is a regular part of defendants' business, or that there is a likelihood of repetition of the

alleged predicated acts." *Qualis Care, L.P.* v. *Hall*, 1999 WL 683564, at *6 (S.D.N.Y. Sept. 1,

1999) (Jones, J.). Nowhere does the Amended Complaint allege that the supposed predicate acts

were a regular part of Vornado's business.

To show "closed-ended" continuity, "the plaintiff must prove a series of related predicates extending over a substantial period of time." *Cofacredit, S.A.* v. *Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (internal quotation marks omitted).  The relevant period is the time "during which the RICO predicate activity [that harmed the plaintiffs] occurred, not the time during which the underlying scheme operated." *Spool* v. *World Child Intern. Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008).

Here, the only predicate activity alleged to have harmed the plaintiffs was the one-time sale of the General Motors Building in 2003.  Vornado's provision of mezzanine financing – and the creation of the associated financing vehicle – took place one month after the alleged "sham auction."  The only other allegations against Vornado – that it made an offer on the General Motors Building in 2001 and that it owned a stake in several buildings in 2007 – bear no relation to the 2003 sale, and are not even alleged to have injured the plaintiffs.  Thus, plaintiffs have failed to allege a "pattern of racketeering" against Vornado.

For these reasons, as well as the many others set forth in the Common Brief, the RICO claims against Vornado should be dismissed.

## II.

## PLAINTIFFS' CONCLUSORY CLAIMS AGAINST VORNADO SHOULD BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE.

The Court should dismiss the claims against Vornado with prejudice, because further amendment would be futile.  Not only are the claims time-barred and untenable as a matter of law, but the plaintiffs are precluded from asserting them by *res judicata* and collateral estoppel.  *See McKenzie* v. *Dow Jones & Co., Inc.*, 2008 WL 2856337, at *5 (S.D.N.Y. 2008) ("leave to replead is denied, as [plaintiff's] claim is barred by the statute of limitations no matter

- 17 -

how the claim is pleaded."); *Stubbs* v. *de Simone*, 2005 WL 2429913, at *19 (S.D.N.Y. 2005) (denying leave to amend where collateral estoppel precluded plaintiff from asserting its claims). These deficiencies are substantive and fatal, and cannot be cured by amendment. Plaintiffs have already had two opportunities to plead a substantive RICO claim. Their repeated failure to do so – even after having the opportunity to review the Defendants' original motions to dismiss – amply demonstrates the futility of further amendment.

## CONCLUSION

For the reasons stated above and in the Common Brief, the plaintiffs have failed to adequately plead any RICO or antitrust claims against Vornado, and the Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

Robert J. Giuffra, Jr. (RG-9969)
Charles R. Korsmo (CK-2761)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York
Tel.: (212) 558-4000
Fax: (212) 558-3588

*Counsel for Defendant Vornado Realty Trust*

April 24, 2009

- 18 -