Jacqueline G. Veit
Laura Sulem
Golenbock Eiseman Assor Bell & Peskoe LLP
437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 907-7300
*Attorneys for Defendant*
*Eastdil Secured, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| LESLIE DICK WORLDWIDE, LTD and LESLIE DICK, <br><br> Plaintiffs, <br><br> -against- <br><br> GEORGE SOROS, SOROS FUND MANAGEMENT LLC, FIG, LLC, VORNADO REALTY TRUST, GERMAN AMERICAN CAPITAL CORP., EASTDIL SECURED, LLC, HARRY MACKLOWE, CONSECO, INC., KIRKLAND & ELLIS, LLP, DONALD J. TRUMP, and John Does "1" through "10," <br><br> Defendants. | 08-CV- 7900 (BSJ) (THK) <br><br> ECF CASE |

---

**DEFENDANT EASTDIL SECURED, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

457625.3

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................... 2

STATEMENT OF FACTS ......................................................................................................... 4

      *Conseco's Bankruptcy Proceedings* ............................................................................. 5

      *The Sale of the GM Building* ..................................................................................... 6

      *Lone Allegation of Eastdil's Conduct After September 2003* ...................................... 7

ARGUMENT .............................................................................................................................. 7

I.    PLAINTIFFS' RICO CLAIM AGAINST EASTDIL IS BARRED
      BY *RES JUDICATA* ........................................................................................ 7

II.   PLAINTIFFS' RICO CLAIM AGAINST EASTDIL IS TIME BARRED ................... 9

III.  PLAINTIFFS LACK STANDING TO ASSERT THEIR RICO
      CLAIMS ............................................................................................................ 10

IV.  PLAINTIFFS' § 1962(d) CLAIM AGAINST EASTDIL
      SHOULD BE DISMISSED ............................................................................... 11

      A.    Plaintiffs' Inability to Sufficiently Plead a § 1962(a), (b) or (c)
             Claim Against Any of the Defendants Dooms Their
             Conspiracy Claims ............................................................................. 11

      B.    Plaintiffs' Conclusory Conspiracy Allegations Against Eastdil
             Cannot Survive a Motion to Dismiss .................................................. 12

CONCLUSION ......................................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Adler v. Berg Harmon Assocs.*,
    790 F.Supp. 1222 (S.D.N.Y. 1992) ............................................................................... 14

*Allen v. New World Coffee, Inc.*,
    No. 00 Civ. 2610 (AGS), 2002 WL 432685 (S.D.N.Y. Mar. 19, 2002) ........................... 12

*Casio Computer Co. v. Sayo*,
    No. 98 Civ. 3772 (WK), 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ........................... 16

*Discon, Inc. v. NYNEX Corp.*,
    93 F.3d 1055 (2d Cir.1996), *vacated on other grounds*, 525 U.S. 128 (1998) ................. 11

*FD Prop. Holding, Inc. v. U.S. Traffic Corp.*,
    206 F.Supp.2d 362 (E.D.N.Y. 2002) ............................................................................. 13

*Feigen v. Advance Capital Mgmt. Corp.*,
    536 N.Y.S.2d 786 (1st Dep't 1989) .................................................................................. 8

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) ........................... 11

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997) ....................................................................................................... 10

*Laverpool v. New York City Transit Auth.*,
    760 F.Supp. 1046 (E.D.N.Y. 1991) ............................................................................... 13

*Leslie Dick Worldwide Ltd. v. Macklowe Props., Inc.*,
    Index No. 06/600222 (Moskowitz, J.) .............................................................................. 3

*Leslie Dick Worldwide Ltd. v. Macklowe Props., Inc.*,
    857 N.Y.S.2d 86 (1st Dep't), *leave to appeal denied by*,
    864 N.Y.S.2d 390 (2008) ................................................................................................. 6

*Linens of Europe, Inc. v. Best Mfg., Inc.*,
    No. 03 Civ. 9612 (GEL), 2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004) ........................ 14

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
    85 F.Supp.2d 282 (S.D.N.Y. 2000), *aff'd*, 2 Fed. Appx. 109 (2d Cir. 2001) ................... 12

*Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*,
  No. 89 Civ. 2809 (BSJ), 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) .............................. 14

*Sammarco v. Big Apple Car, Inc.*,
  No. 08 Civ. 4099 (BMC), 2008 WL 5111124 (E.D.N.Y. Dec. 4, 2008) ........................... 9

*Sedima, S.P.R.L. v. Imtrex Co.*,
  473 U.S. 479 (1985) ............................................................................................................. 10

## STATUTES

18 U.S.C. § 1951 ............................................................................................................................ 7

18 U.S.C. § 1952 ............................................................................................................................ 7

18 U.S.C. § 1957 ............................................................................................................................ 7

18 U.S.C. § 1962 ........................................................................................................................ 7, 9

18 U.S.C. § 1962(a) ............................................................................................................. 4, 11, 12

18 U.S.C. § 1962(b) ............................................................................................................. 4, 11, 12

18 U.S.C. § 1962(c) ............................................................................................................. 4, 11, 12

18 U.S.C. § 1962(d) ................................................................................................................ *passim*

Fed. R. Civ. P. 9(b) ........................................................................................................................ 2

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 2

## OTHER AUTHORITIES

The Hon. Jed S. Rakoff & Howard W. Goldstein,
  *RICO Civil and Criminal Law and Strategy* § 1.06[4] (2007) ........................................... 13

Defendant Eastdil Secured, LLC, formerly known as Eastdil Realty ("Eastdil"), by its counsel, Golenbock Eiseman Assor Bell & Peskoe LLP, respectfully submits this memorandum of law in support of Eastdil's motion to dismiss the amended complaint (the "Amended Complaint" or "Am. Cmplt.") filed by plaintiffs Leslie Dick Worldwide, Ltd. ("LDW") and Leslie Dick (together with LDW, the "Plaintiffs"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). The Amended Complaint asserts RICO claims against all of the defendants ("Defendants"), and thus Defendants' arguments for dismissal of the Amended Complaint necessarily overlap. To minimize duplication and burden on the Court, Eastdil joins in, and incorporates herein by reference, the Brief in Support of the Soros Defendants' Motion to Dismiss the Amended Complaint, dated April 24, 2009 (the "Soros Brief") and the accompanying Declaration of John R. Oller in Support of the Soros Defendants' Motion to Dismiss the Amended Complaint, executed on April 20, 2009 ("Oller Decl."), all facts, arguments and exhibits therein, and any other arguments by other Defendants applicable to Plaintiffs' claims against Eastdil. This memorandum primarily addresses those facts and arguments that are specific to Eastdil.

## PRELIMINARY STATEMENT

Eastdil is a real estate investment banking firm that was retained in 2003 by the owner of the General Motors Building (the "GM Building" or "Building") to help it market and sell the Building. The sale closed in September 2003. Since then, Plaintiffs have dragged Eastdil (and others) through three years of litigation -- first in New York State court, and now in this Court -- in their relentless and futile search for a claim arising out of the fact that their offer to purchase the GM Building was not selected, and the Building was sold to someone else instead. Indeed, the Amended Complaint is at least Plaintiffs' fourth attempt to assert a viable claim against

Eastdil stemming from the 2003 sale of the GM Building.[1]

Here, as in the prior State Action, the only factual allegations against Eastdil are that Eastdil (and other Defendants) "rigged" the bids in connection with the 2003 sale of the GM Building by "pre-selecting" Macklowe Properties as the successful purchaser notwithstanding Plaintiffs' higher bid. No RICO claim can survive on the facts alleged, and the Amended Complaint should be dismissed.

As set forth in detail in the Soros Brief, and as discussed below, Plaintiffs' RICO claims against Eastdil and the other Defendants (i) are barred by the doctrine of *res judicata*, as the allegations supporting such claims have already been considered and rejected by the New York State courts; (ii) are untimely under the four-year statute of limitations applicable to RICO claims, as Plaintiffs were indisputably aware of them more than five years ago; and (iii) should be dismissed because Plaintiffs do not allege to have been injured by any of the alleged RICO violations, and therefore lack standing.

In addition, the only cause of action asserted against Eastdil in the Amended Complaint -- a claim of conspiracy under 18 U.S.C. § 1962(d), alleging that Eastdil conspired with other

---

[1] The state court action (the "State Action") refers to the case filed in New York State Supreme Court on or about January 24, 2006, by the same Plaintiffs here -- LDW and Leslie Dick -- against Eastdil and, among others, Defendants George Soros, Soros Fund Management LLC (collectively with George Soros, the "Soros Defendants"), Conseco, Inc. ("Conseco") and Harry Macklowe ("Macklowe"). *Leslie Dick Worldwide Ltd. v. Macklowe Props., Inc.*, Index No. 06/600222 (Moskowitz, J.). In the State Action and in this case, the Plaintiffs filed amended complaints after receiving motions to dismiss their initial complaints, in an effort to correct the inadequacy of their pleadings. The amended complaint was nonetheless dismissed in the State Action, and we submit that the same result should occur here.

In addition, on April 10, 2009, nearly two months after filing an amended complaint and two weeks before the deadline for Defendants to file the instant motions to dismiss, Plaintiffs' counsel sent an email attaching what he described as a "typographically corrected Amended Complaint." The April 10, 2009 amended complaint (which is the "Amended Complaint" referred to herein) inserts Eastdil's name into five paragraphs in which it previously had not appeared, presumably in an effort to expand Plaintiffs' claims against Eastdil. *See* Am. Cmplt. ¶¶ 323, 334, 414, 423, 446. While this was an improper amendment, and while the cover email was misleading and inaccurate, these paragraphs contain only conclusory allegations against Eastdil and do nothing to save the Amended Complaint from dismissal.

457625.3                                                    3

Defendants to engage in bankruptcy fraud and money laundering, although Eastdil itself is not alleged to have engaged in such acts[2] -- fails to state a claim for any number of reasons. First, as discussed in the Soros Brief and briefs submitted by other Defendants, Plaintiffs have failed to state a viable claim against the other Defendants under 18 U.S.C. § 1962(a), (b) or (c). Without a claim under those provisions, a conspiracy claim to commit such acts under § 1962(d) must be dismissed.

Second, there are simply no factual allegations of any "agreement" that could support the conspiracy claim. Plaintiffs fail to provide any factual details about when, with whom, or how the agreement was made, what the substance of the agreement was, Eastdil's alleged role in the conspiracy, or why Eastdil would participate. At best, there are conclusory allegations that an agreement existed, which are insufficient to state a claim as a matter of law.

When the conclusory allegations are properly ignored, the only allegations against Eastdil mirror the "sham auction" allegations in the State Action, which were already adjudicated to conclusion and found to be without merit, and which cannot support a RICO claim in all events because such conduct does not constitute a predicate act. The Amended Complaint should be dismissed with prejudice in all respects.

## STATEMENT OF FACTS

The only factual allegations against Eastdil found in Plaintiffs' 154-page, 600 paragraph rambling and largely incoherent Amended Complaint are the following:

---

[2] Eastdil is not alleged to have violated 18 U.S.C. § 1962(a), (b) or (c), and there are no contentions that Eastdil engaged in any of the alleged predicate acts, namely, bankruptcy fraud, money laundering and wire fraud. The only wrongful act allegedly engaged in by Eastdil was that it ran an unfair and "rigged" sale of the GM Building, but bid rigging is not a predicate act under RICO, and is not alleged by Plaintiffs to be a predicate act.

*Conseco's Bankruptcy Proceedings*

Plaintiffs allege that Conseco made a motion in Bankruptcy Court in March 2003 to retain Eastdil to assist with the sale of the GM Building. Am. Cmplt. ¶ 353. According to the Amended Complaint, on March 17, 2003, Eastdil "submitted an affidavit, by its attorneys Kirkland & Ellis, in support of its motion to be retained to sell by Conseco the GM Building." *Id.* ¶ 375. Days later, however, Trump (who claimed an interest in the GM Building and was involved in litigation against Conseco at the time) opposed the retention of Eastdil, arguing, among other things, that the GM Building was not part of the Conseco bankruptcy estate because Conseco did not own the Building. *Id.* ¶¶ 382-83. On April 3, 2003, the Bankruptcy Court determined that it did not have jurisdiction over the sale of the GM Building. *Id.* ¶ 387. Consequently, on April 14, Eastdil "withdrew its application to be retained by Conseco as the seller's agent . . . ." *Id.* ¶ 388. Plaintiffs allege in conclusory fashion that Eastdil's withdrawal of its application following the Bankruptcy Court's ruling was "[i]n furtherance of the RICO conspiracy" because Eastdil entered into a conspiracy with Conseco, Soros and Trump, all of whom "were . . . attempting to keep the GM Building in play so that it could not be sold under the jurisdiction of the Bankruptcy Court to advance the pattern of racketeering to launder money through the sale of the Building." *Id.*

These same factual allegations, *i.e.*, that Eastdil filed and later withdrew an affidavit in the Bankruptcy Court, were also alleged by Plaintiffs in the amended complaint in the State Action. *See* Soros Brief at 13; Oller Decl., Ex. B (amended complaint in State Action) at ¶ 20. Nowhere in the Amended Complaint do Plaintiffs allege facts to support their conclusory allegation that Eastdil's filing of an affidavit in connection with a routine retention application in the course of a bankruptcy proceeding, and its subsequent withdrawal of same after the Bankruptcy Court ruled that the Building would not be sold through that Court, was part of a

conspiracy with other Defendants to commit bankruptcy fraud. The Amended Complaint does not claim that Eastdil's affidavit contained any misrepresentations or was misleading in any way.

### *The Sale of the GM Building*

Nearly all of the facts alleged against Eastdil in the Amended Complaint arise in connection with allegations that Eastdil "rigged" the bids during the course of the sale of the GM Building to ensure that it would be sold to Macklowe Properties.

Specifically, the Amended Complaint alleges that on July 16, 2003 -- two months after the Bankruptcy Court determined that the GM Building was not part of Conseco's bankruptcy estate (Am. Cmplt. ¶ 387) -- Conseco retained Eastdil to sell the GM Building "outside the purview of the Bankruptcy Court." *Id.* ¶ 410. The Amended Complaint rehashes the assertions made by Plaintiffs in the State Action regarding Eastdil's participation in the alleged scheme to sell the GM Building to Macklowe in what Plaintiffs describe as a bidding process that was "merely a dumb-show" intended to ensure that Macklowe submitted the winning bid. *Id.* ¶ 414; *see also id.* ¶¶ 55, 56, 58-60, 62, 63, 412, 415, 417, 420, 422, 424, 425, 428. These same allegations -- which are described at length in the Soros Brief -- were rejected in the State Action and the dismissal of that amended complaint was affirmed on appeal. *See* Soros Brief at 10-12 (comparing the allegations of the amended complaint in the State Action to the allegations of the Amended Complaint in this action); Oller Decl., Exs. B, C (Decision and Order in the State Action, dated Nov. 29, 2006), D (Judgment in the State Action, dated Dec. 20, 2006); *Leslie Dick Worldwide, Ltd. v. Macklowe Props., Inc.*, 857 N.Y.S.2d 86 (1st Dep't), *leave to appeal denied by*, 864 N.Y.S.2d 390 (2008).

On August 30, 2003, the New York Times reported that Macklowe had submitted the winning bid to purchase the GM Building. Am. Cmplt. ¶ 436. According to the Amended Complaint, "[i]mmediately after the sale, defendants Conseco, Macklowe, and Eastdil

457625.3                                                                 6

fraudulently represented to plaintiffs . . . that Macklowe was the winner of the auction and the 'purchaser of the GM Building.'" *Id.* ¶ 62. The closing was scheduled for September 27, 2003. *Id.* ¶ 437. At or shortly after the closing, Eastdil was paid its commission. *Id.* ¶ 472. On November 24, 2003, Plaintiffs sent a letter to Eastdil accusing Eastdil and others of "bid rigging" and having violated, among other laws, federal RICO and money-laundering statutes (specifying 18 U.S.C. §§ 1951, 1952, 1957, 1962-68) in connection with the sale of the GM Building. Oller Decl., Ex. H (Nov. 24, 2003 Letter from Plaintiffs to Eastdil) at 3.

### *Lone Allegation of Eastdil's Conduct After September 2003*

The Amended Complaint references Eastdil's conduct after the 2003 sale of the GM Building only once, in connection with another real estate transaction. Plaintiffs assert that "[i]n 2007, Macklowe purchased seven office buildings from Blackstone through Eastdil Realty in New York City, for approximately 7 Billion Dollars . . . ." Am. Cmplt. ¶ 478. This paragraph does not assert that Eastdil committed any wrongdoing; in fact, Eastdil was alleged to have represented the seller (who is not a Defendant), not Macklowe, in this transaction. Plaintiffs are not alleged to have had any connection with, or to have been injured in any way by, this transaction.

## ARGUMENT

### I. PLAINTIFFS' RICO CLAIM AGAINST EASTDIL IS BARRED BY *RES JUDICATA*

Plaintiffs' RICO claim against Eastdil is barred by the doctrine of *res judicata* because it arises out of the same transaction as the common-law claims that Plaintiffs unsuccessfully asserted against Eastdil (and others) in the State Action. *See* Soros Brief at 17-24. Plaintiffs could have, but did not, allege RICO claims in that forum, and are now precluded from doing so here.

Eastdil, like the Soros Defendants, Macklowe and Conseco, was a party in the State Action and is a party in this case. *See* Am. Cmplt. ¶ 70. Justice Moskowitz dismissed the State Action's amended complaint on the grounds, among others, that Eastdil's alleged misrepresentation that the GM Building would be sold to the "highest bidder," and allegations that the sale process was a "sham" because Macklowe was the "pre-determined" purchaser, were contradicted by the confidentiality agreement signed by Plaintiffs and an August 13, 2003 letter sent to Plaintiffs, which made clear that the seller could discontinue negotiations with any potential purchaser at any time for any reason, reserved full discretion in selecting the purchaser, and advised bidders that factors other than price would be taken into account in selecting the purchaser. *See* Oller Decl., Ex. C at 7-9, 12. The dismissal of a complaint based on documentary evidence "clearly demonstrates that dismissal of the claims against the . . . defendants was not merely because of technical pleading defects but on the merits for res judicata purposes . . . ." *Feigen v. Advance Capital Mgmt. Corp.*, 536 N.Y.S.2d 786, 788 (1st Dep't 1989) (*res judicata* precluded plaintiffs from repleading claims arising from same facts and transactions at issue in prior case dismissed on documentary evidence).

The only alleged harm to Plaintiffs in this case is the same as their alleged injury in the State Action: injury arising from the allegations that the sale process was rigged and that Plaintiffs, as the highest bidder, were injured by not being selected to acquire the Building. In such circumstances, and on the authority set forth in the Soros Brief, the doctrine of *res judicata* precludes Plaintiffs from relitigating their state law claims as a RICO claim here. Indeed, Plaintiffs' counsel conceded in a letter to the Court that the State Action involved "<u>the same subject matter, facts and circumstances as the instant action</u> . . . ." Oller Decl., Ex. I (Dec. 10, 2008 Letter) at 1 (emphasis in original).

## II.   PLAINTIFFS' RICO CLAIM AGAINST EASTDIL IS TIME BARRED

Plaintiffs' RICO claims against Eastdil and the other Defendants are also barred by the applicable four-year statute of limitations.  *See* Soros Brief at 30-35.  The Amended Complaint alleges that Plaintiffs learned via an August 30, 2003 newspaper article that they had not been selected to acquire the GM Building, and that "immediately after the sale," Eastdil and others told the Plaintiffs that Macklowe had submitted the winning bid for the GM Building.  Am. Cmplt. ¶¶ 62, 436.  Additionally, Plaintiffs' November 24, 2003 letter to the Chairman of Eastdil, which explicitly claimed that Eastdil's actions violated RICO and accused Eastdil of "bid rigging" and using "criminally derived property . . . in furtherance of a specified unlawful activity" (*see* Oller Decl., Ex. H at 2, 4), conclusively shows that Plaintiffs were on notice of potential RICO and money laundering claims nearly five years before commencing this case.  Thus, Plaintiffs' claims should be dismissed as untimely.  *See Sammarco v. Big Apple Car, Inc.*, No. 08 Civ. 4099 (BMC), 2008 WL 5111124, at *1 (E.D.N.Y. Dec. 4, 2008) (dismissing plaintiff's RICO claim when the undisputed documentary evidence showed that plaintiff knew of its alleged injury more than four years prior to the filing of the complaint).

Plaintiffs seek to avoid dismissal by alleging that the "injury to their business and property did not accrue until the GM Building was sold by Macklowe in 2008 because, prior to such sale, the damage to plaintiffs' business and property was 'speculative.'" Am. Cmplt. ¶ 81.  As discussed in detail in the Soros Brief at 32-33, the Second Circuit has made clear that a RICO injury need not be readily calculable for the claim to be ripe.  In all events, this allegation is belied by Plaintiffs' November 24, 2003 letter to Eastdil, which specifically accuses Eastdil of violating, among other things, § 1962 of the RICO Act, and also by the fact the Plaintiffs brought the State Action in 2006 apparently based on their belief that damages existed by that time.

457625.3                                                          9

Finally, Plaintiffs' reference to Macklowe's 2008 sale of the GM Building also may not be used to claim that the alleged RICO violations continued until 2008. *See* Soros Brief at 34-35. In addition to the fact that the Amended Complaint does not accuse Eastdil of any wrongful act after 2003 and does not identify anything wrongful about the 2008 transaction, Plaintiffs have not -- and cannot -- allege that this unrelated real estate transaction harmed them in any way. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) ("plaintiff cannot use an independent, new act as a bootstrap to recover for injuries caused by other predicate acts that took place outside the limitations period").

### III. PLAINTIFFS LACK STANDING TO ASSERT THEIR RICO CLAIMS

As explained more fully in the Soros Brief at 24-30, Plaintiffs lack standing to bring RICO claims against the Defendants, including Eastdil, because they fail to allege any injury that was proximately caused by any of the alleged predicate acts, RICO violations or a conspiracy to engage in same. A plaintiff has standing to assert a civil RICO claim only to the extent that "he has been injured in his business or property by the conduct constituting the [RICO] violation." *Sedima, S.P.R.L. v. Imtrex Co.*, 473 U.S. 479, 496 (1985); *see also* Soros Brief at 24.

Plaintiffs lack standing because their purported injury -- arising from the Defendants' alleged "bid-rigging" of the GM Building sale in 2003 that prevented Plaintiffs from successfully submitting the winning bid -- was not proximately caused by any of the Amended Complaint's claims of bankruptcy fraud, money laundering, wire fraud or any alleged RICO violation or conspiracy to commit such violation. Rather, just like in the State Action, Plaintiffs' claimed injury is alleged to be the result of Defendants' bid rigging during the 2003 sale of the GM Building, which is not even alleged in the Amended Complaint to be a part of any pattern of racketeering activity. *See* Soros Brief at 25-26. And even if Plaintiffs alleged that Defendants' supposed bid rigging was part of the pattern of racketeering activity, Plaintiffs would still not

457625.3                                                  10

have standing because they cannot show that their bid would have been accepted absent Defendants' conduct, and thus cannot show that the rigged sale process proximately caused their injury. *See id.* at 26-30.

For these reasons, Plaintiffs lack standing to bring any RICO claims against Defendants.

IV.    **PLAINTIFFS' § 1962(d) CLAIM AGAINST EASTDIL SHOULD BE DISMISSED**

The only claim asserted against Eastdil in the Amended Complaint is a claim under 18 U.S.C. § 1962(d) that Eastdil conspired with the other Defendants to violate the RICO Act through the predicate acts of bankruptcy fraud and money laundering. Am. Cmplt. ¶¶ 500, 513, 592.[3]  Plaintiffs' § 1962(d) claim against Eastdil necessarily fails because Plaintiffs have not sufficiently pleaded that any of the Defendants violated § 1962(a), (b) or (c) of the RICO statute. In addition, the claim should be dismissed because the Amended Complaint contains only bare and conclusory allegations of Eastdil's alleged participation in a conspiracy, which are inadequate to survive a motion to dismiss.

   A.    **Plaintiffs' Inability to Sufficiently Plead a § 1962(a), (b) or (c) Claim Against Any of the Defendants Dooms Their Conspiracy Claims**

Section 1962(d) of the RICO statute makes it unlawful "to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Because § 1962(d) "prohibits any conspiracy to commit a RICO violation," *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir.1996), *vacated on other grounds*, 525 U.S. 128 (1998), the "failure to adequately plead facts that would satisfy the pleading requirements of §§ 1962(a), 1962(b) or 1962(c) necessarily dooms any claim [plaintiff] might assert arising under § 1962(d)." *Katzman*

---

[3] Eastdil is not alleged to have violated the RICO statute by conspiring to commit wire fraud. *See* Am. Cmplt. ¶ 597.

*v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 658 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).

As set forth in the Soros Brief at 35-46, all of Plaintiffs' RICO claims are fatally deficient because they fail to plead several of the substantive elements of a RICO claim.  Among other things, the Amended Complaint does not allege a cognizable RICO enterprise; does not sufficiently plead any of the alleged predicate acts of bankruptcy fraud, money laundering or wire fraud; and does not allege a continuous pattern of racketeering activity.  Plaintiffs' failure to sufficiently plead these elements of the RICO statute against any of the Defendants necessarily requires dismissal of the § 1962(d) claim in the Amended Complaint, including as against Eastdil.  *Allen v. New World Coffee, Inc.*, No. 00 Civ. 2610 (AGS), 2002 WL 432685, at *6 (S.D.N.Y. Mar. 19, 2002) (dismissing plaintiff's § 1962(d) claim with prejudice following dismissal of all of plaintiff's RICO claims).

>   B.   **Plaintiffs' Conclusory Conspiracy Allegations Against Eastdil Cannot Survive a Motion to Dismiss**

To state a RICO conspiracy claim under § 1962(d), "a plaintiff must plead as to each alleged co-conspirator: (1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; and (3) that the co-conspirator knowingly participated in the same" and agreed to the commission of two or more predicate acts.  *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F.Supp.2d 282, 303 (S.D.N.Y. 2000), *aff'd*, 2 Fed. Appx. 109 (2d Cir. 2001).  As explained in one treatise, "[a] conspiracy to violate RICO is not the same as a conspiracy to commit the predicate acts.  Rather, it is a conspiracy to commit one of the activities prohibited under Subsections 1962(a), (b) or (c), i.e., using the racketeering pattern to invest, acquire or participate in an enterprise.  Thus, there must be an agreement to employ a pattern of racketeering activity, or the proceeds thereof, so as to

457625.3

12

effect an enterprise in one of the three ways set forth in those sections." The Hon. Jed S. Rakoff & Howard W. Goldstein, *RICO Civil and Criminal Law and Strategy* § 1.06[4] (2007).

"Bare or conclusory allegations of participation in a conspiracy under section 1962(d) will not avail on a motion to dismiss, and the plaintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy, particularly when the predicate acts alleged are fraud." *Laverpool v. New York City Transit Auth.*, 760 F.Supp. 1046, 1060 (E.D.N.Y. 1991); *see also FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F.Supp.2d 362, 373 (E.D.N.Y. 2002) ("[A] RICO conspiracy allegation should be more than a conclusory add-on at the end of a complaint. It should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it").

The conspiracy alleged in the Amended Complaint, as best as can be discerned, was that someone (unspecified) would "act as the Debtor-in-possession financier, acquire Conseco's assets at a discount price, including Conseco Finance and the GM Building, and launder illegally derived funds through these entities in furtherance of the RICO Enterprise" (Am. Cmplt. ¶ 250), and/or, apparently having a change of heart, that they would instead sell the GM Building outside the Bankruptcy process to Macklowe and then funnel the laundered funds into the Trump International Hotel and Tower construction project in Chicago. *Id.* ¶¶ 256-57, 393. The Amended Complaint is entirely devoid of any factual allegations that Eastdil was part of this conspiracy, agreed to enter into the alleged conspiracy with the other Defendants, acted in furtherance of the conspiracy, or knowingly participated in the conspiracy and agreed to commit the predicate acts.

The Amended Complaint is silent as to who participated in the alleged agreement, when the agreement was made, or what was discussed (in Eastdil's presence or otherwise) regarding

457625.3                                    13

the content of the agreement. There are no allegations that Eastdil agreed to commit any of the predicate acts, for purposes of investing, acquiring or participating in the alleged (albeit unidentified) "enterprise" or otherwise. Indeed, there are no allegations that Eastdil even knew about the alleged predicate acts. In these circumstances, the RICO conspiracy claim must be dismissed. *See Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, No. 89 Civ. 2809 (BSJ), 1996 WL 442799, at *9 (S.D.N.Y. Aug. 6, 1996) (dismissing § 1962(d) claim where, *inter alia*, plaintiff "failed to allege any factual basis for a finding of conscious agreement among [defendants] to commit predicate acts"); *Adler v. Berg Harmon Assocs.*, 790 F.Supp. 1222, 1234 (S.D.N.Y. 1992) (dismissing § 1962(d) claim when there were "no factual allegations supporting an inference that the various defendants consciously agreed to become part of a RICO conspiracy").

As to the alleged predicate acts -- bankruptcy fraud, money laundering, and wire fraud -- no facts are alleged of Eastdil's agreement to participate in same or agreement to participate in any conduct prohibited by the RICO statute arising from same, and no facts are alleged that Eastdil in fact participated in any such scheme.[4] Regarding the allegations of bankruptcy fraud, the only factual allegations against Eastdil in the Amended Complaint relate to Eastdil's submission and subsequent withdrawal of an affidavit in the Bankruptcy Court in connection with its retention by Conseco to sell the GM Building. This lone submission does not support Plaintiffs' fantastical claim that Eastdil agreed to conspire with other Defendants to perpetrate a widespread fraud in the Bankruptcy Court. Indeed, Eastdil is not alleged to have had any involvement in efforts to launder money through Conseco Finance, and there are no allegations

---

[4] The primary alleged wrongful conduct by Eastdil -- engaging in "bid rigging" in connection with the sale of the GM Building -- is not alleged as a predicate act for any RICO claim asserted in the Amended Complaint (*see, e.g.*, Am. Cmplt. ¶ 136), nor could it be. Bid rigging is not a predicate act under the RICO statute. *Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03 Civ. 9612 (GEL), 2004 WL 2071689, at *15 (S.D.N.Y. Sept. 16, 2004).

of its knowledge of or agreement to engage in any fraud on the Bankruptcy Court in connection with initial efforts to sell the GM Building in that forum.  In fact, as addressed in the Soros Brief, the Amended Complaint fails to allege with particularity, as required for this fraud claim, the details of the existence of any bankruptcy fraud at all.  *See* Soros Brief at 38-39.

As for money laundering, the Amended Complaint again is silent as to when, why, or how Eastdil entered into an agreement to launder money.  No *facts* are alleged to show that Eastdil agreed to or participated in such a conspiracy or even knew about any alleged money laundering efforts, including in connection with the Trump real estate project in Chicago.  Am. Cmplt. ¶ 323.  There are no facts alleged to suggest that Eastdil passed money through any "shell entities and instrumentalities" (id. ¶ 446), knew about such conduct by others, or agreed to such conduct.  Further, the only "unlawful sources" of monies that were supposedly being laundered were from "Narco Drug Trafficking, Black Market Arms Dealers, Prostitution slave trading and Organized Crime" (*id.* ¶ 66), and Eastdil is not alleged to have known about or to have had any connection to, or involvement with, such unlawful sources or activities (and nowhere in the Amended Complaint is there any corroborating facts about any of the Defendants' involvement in such activities either).

In short, there are no factual allegations to support Plaintiffs' contention that an agreement to conspire existed; Eastdil is not alleged to have known about, participated in or committed a single act to further the conspiracy; and there are no allegations as to how Eastdil benefited, or supposedly would benefit, from the alleged conspiracy.

Plaintiffs' sole effort to rope Eastdil into a conspiracy claim under the RICO statute is through various conclusory allegations that lack any supporting facts.  In some instances, the Amended Complaint simply makes conclusory allegations that Eastdil (and others) were engaged

in a conspiracy. *See, e.g.*, Am. Cmplt. ¶¶ 15, 28, 115, 136, 323, 414, 446. In others, Plaintiffs attempt to bootstrap the conspiracy allegations to the bid-rigging allegations through similar conclusory allegations. *See, e.g., id.* ¶¶ 388, 424, 543-45. As noted above, such conclusory allegations cannot support a RICO claim as a matter of law. Further, the conclusory allegations that attempt to piggyback the bid-rigging allegations are not only incoherent -- as bid rigging is not a predicate act under RICO, and there is no factual basis for concluding that Eastdil rigged the sale process as part of any RICO conspiracy -- but are precluded by the doctrine of *res judicata*. *See* discussion *supra* at 7-8.

      Because the Amended Complaint lacks "specific factual allegations required for the Court to conclude that [Eastdil] consciously agreed to become part of a RICO conspiracy and commit the necessary predicate acts of racketeering," the conspiracy claims against Eastdil must be dismissed. *Casio Computer Co. v. Sayo*, No. 98 Civ. 3772 (WK), 2000 WL 1877516, at *23 (S.D.N.Y. Oct. 13, 2000) (dismissing § 1962(d) where complaint's allegations of defendants' purported activities did not support the existence of an agreement to conspire).

**CONCLUSION**

For all of the reasons stated herein, in the Soros Brief and in the briefs submitted by the other Defendants, the Amended Complaint against Eastdil should be dismissed with prejudice.

Dated: New York, New York
       April 24, 2009

Respectfully Submitted,

GOLENBOCK EISEMAN ASSOR
 BELL & PESKOE LLP

By: /s/ Jacqueline G. Veit
     Jacqueline G. Veit (JV-2935)
     Laura Sulem (LS-6621)

437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 907-7300
jveit@golenbock.com
lsulem@golenbock.com

*Attorneys for Defendant Eastdil Secured, LLC*