UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

LESLIE DICK WORLDWIDE, LTD. and    :
LESLIE DICK,    :
   :
         Plaintiffs,    :
   :
      v.    :    No. 08 Civ. 7900 (BSJ) (THK)
   :
GEORGE SOROS, SOROS FUND    :
MANAGEMENT, LLC, FIG, LLC,    :
VORNADO REALTY TRUST, GERMAN    :
AMERICAN CAPITAL CORP., EASTDIL    :
SECURED, LLC, HARRY MACKLOWE,    :    ECF CASE
CONSECO, INC., KIRKLAND & ELLIS, LLP,    :
DONALD J. TRUMP    :
and John Does "1" through "10,"    :
   :
         Defendants.    :

-------------------------------------------------------------x

## **DEFENDANT FIG LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
Marc E. Kasowitz
Albert Shemmy Mishaan
Kenneth R. David
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Defendant FIG LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 5

    A.    Plaintiffs' Prior State Court Action.............................................................. 5

    B.    Allegations Concerning FIG in This Action ................................................ 6

        1.    The Sale of the GM Building in 2003....................................... 6

        2.    The Unrelated Allegations Involving FIG ................................ 8

    C.    Motion to Quash – Solow Action ............................................................ 11

ARGUMENT .................................................................................................................. 13

I.    PLAINTIFFS' RICO CLAIMS AGAINST  FIG SHOULD BE DISMISSED .............. 13

    A.    Plaintiffs' RICO Claims Against FIG are Barred by Res Judicata..................... 13

    B.    Plaintiffs' Claims Against FIG Are Barred by Collateral Estoppel.................... 15

    C.    Plaintiffs' RICO Claims are Time-Barred ........................................................ 17

    D.    Plaintiffs Lack Standing to Assert RICO Claims Against FIG........................... 18

    E.    Plaintiffs Have Not Pled the Elements of a RICO Claim Against FIG .............. 20

    F.    Plaintiffs Have Not Alleged That FIG Committed Any Predicate Acts of Racketeering ................................................................................................... 22

II.    PLAINTIFFS' CLAIMS AGAINST FIG SHOULD BE DISMISSED WITH PREJUDICE ......................................................................................................... 25

CONCLUSION.................................................................................................................. 26

## TABLE OF AUTHORITIES

<u>Cases</u>

*Amadsau v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746
(S.D.N.Y. Jan. 21, 2005), *adopted by* No. 03 Civ. 6450 (LAK), 2005 WL 954916
(S.D.N.Y. Apr. 26, 2005), *aff'd*, 225 Fed. Appx. 32 (2d Cir. 2007)........................................ 17

*Andrea Doreen Ltd. v. Bldg. Material Local Union 282*, 299 F. Supp. 2d 129
(E.D.N.Y. 2004)............................................................................................................... 17

*Beck v. Prupis*, 529 U.S. 494, 120 S. Ct. 1608, 146 L. Ed. 2d 561 (2000)................................... 20

*Bernstein v. Misk*, 948 F. Supp. 228 (E.D.N.Y. 1997) ................................................................ 24

*Browning Ave. Realty Corp. v. Rubin*, 207 A.D.2d 263, 615 N.Y.S.2d 360 (1st Dep't 1994)..... 14

*Buechel v. Bain,* 97 N.Y.2d 295, 740 N.Y.S.2d 252, N.E.2d 914 (2001)................................15-16

*Cahill v. Arthur Andersen & Co.*, 659 F. Supp. 1115 (S.D.N.Y. 1986), *aff'd*, 822 F.2d 14
(2d Cir. 1987)................................................................................................................... 15

*EED Holdings v. Palmer Johnson Acq. Corp.*, 228 F.R.D. 508 (S.D.N.Y. 2005)……................23

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994).......................... 18, 20

*Haughton v. Burroughs*, No. 98 Civ. 3418 (BSJ), 2004 WL 330242
(S.D.N.Y. Feb. 23, 2004)................................................................................................... 25

*In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003)............. 23

*In re Merrill Lynch &Co., Inc. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351
(S.D.N.Y. 2003)……………………………………………………….………...……23

*The Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*, 54 F. Supp. 2d  682. ............. 23

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S. Ct. 1984, 138 L. Ed. 2d 373 (1997) ............... 18

*Lakonia Mgmt. Ltd. v. Meriwether*, 106 F. Supp. 2d 540 (S.D.N.Y. 2000) ................................ 24

*Leptha Enters., Inc. v. Longenback*, No. 90 Civ. 7704 (KTD), 1991 WL 183373
(S.D.N.Y. Sept. 9, 1991)…………………………………………………………………...14

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003) ........................................................... 19

*Moore v. Guesno*, 485 F.Supp.2d 300 (W.D.N.Y. 2007), *aff'd*, 2008 WL 5082982
(2d Cir. Dec. 1, 2008)……………………………………………………………………..20, 21

*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) ......................................... 24

*New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82 (2d Cir. 2000)....................... 17

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990) ................................................ 18

*Procapui–Productores de Camaroes de Icapui Ltda. v. Layani*,
No. 07 Civ. 6627 (BSJ), 2008 WL 3338199 (S.D.N.Y. Jan. 11, 2008)……...……….…………22

*Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, No. 89 Civ. 2809 (BSJ),
1996 WL 442799 (S.D.N.Y. Aug. 6, 1996)……………………………………………..20, 21, 22

*Ruskay v. Jensen*, 342 F. Supp. 264 (S.D.N.Y. 1972), *aff'd*, 552 F.2d 392 (2d Cir. 1977),
*cert. denied*, 434 U.S. 911 (1977)............................................................................. 15

*Schwartzreich v. E.P.C. Carting Co., Inc.*, 246 A.D.2d 439, 668 N.Y.S.2d 370
(1st Dep't 1998)…………………………………………………………………………………14

*Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) .................. 18

*Singh v. Parnes*, 199 F. Supp. 2d 152 (S.D.N.Y. 2002) .................................................... 17, 21, 25

*Solow v. Conseco, Inc.*, No. 06 Civ. 5988 (BSJ) (THK), 2008 WL 190340
(S.D.N.Y. Jan. 18, 2008)…………………………………………………………………12, 19

*Somerville House Mgmt., Ltd. v. Arts & Entm't Television Network*, No. 92 Civ. 4705 (LJF),
1993 WL 138736 (S.D.N.Y. Apr. 28, 1993)…………………………………………………15

*Spitzer v. Applied Card Sys., Inc.*,  11 N.Y.3d 105, 863 N.Y.S.2d 615, 894 N.E.2d 1 (2008)..... 14

*Standardbred Owners Ass'n v. Roosevelt Raceway Assocs., L.P.*,  985 F.2d 102
(2d Cir. 1993)……………………………………………………………………………………18

*Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236 (S.D.N.Y. 2003) ............... 18, 20, 21

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
No. 03 Civ. 8606 (RWS), 2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004)……………………24

*Wolf v. Wagner Spray Tech Corp.*, 715 F. Supp. 504 (S.D.N.Y. 1989) ........................................ 18

Statutes

18 U.S.C. § 1962 (2009) ................................................................................................... 20, 21

18 U.S.C. § 1964(c) (2009) ................................................................................................... 18

Rules

Fed. R. Civ. P. 8(a) ......................................................................................................... 1, 23

Fed. R. Civ. P. 9(b) ...................................................................................................... 1, 22-24

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 1

Defendant FIG LLC ("FIG") respectfully submits this memorandum of law in support of its motion to dismiss the amended complaint ("Amended Complaint" or "Am. Compl.") pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).  In an effort to minimize duplication and the burden on the Court, FIG joins, and incorporates herein by reference, the arguments contained in the Brief in Support of the Soros Defendants' Motion to Dismiss the Amended Complaint ("Soros Brief") and accompanying declaration, as well as any other arguments by other defendants applicable to plaintiffs' claims against FIG.  FIG separately addresses herein those issues and arguments relating to allegations made specifically against it.

## PRELIMINARY STATEMENT

Plaintiffs have filed this action in an attempt to revive their dismissed state court claims by bringing sprawling and incoherent federal RICO claims against FIG, as well as the other nine named defendants.  These entirely baseless claims are not only unsupported by any relevant factual allegations, but are clearly precluded by the defenses of *res judicata* and collateral estoppel, as well as the applicable statute of limitations.

Plaintiffs contend that they were wrongfully deprived of the right to purchase the General Motors Building in New York City (the "GM Building") in 2003, and that alleged deprivation is the sole basis for plaintiffs' alleged injury in this action.  FIG is an indirect subsidiary of Fortress Investment Group LLC ("Fortress"), a publicly-traded alternative asset management firm.[1]  FIG had no involvement in the alleged fraudulent bidding process for, or sale of, the GM Building in

---

[1]  Plaintiffs allege that FIG "was a person and a controlling member of the RICO Enterprise" (Am. Compl. ¶ 117), that Fortress is now known as FIG LLC, (*id.* ¶¶ 13, 28), and that "FIG LLC was known at all relevant times herein as Fortress Investment Group, LLC" (*id.* ¶ 117).  FIG is a separate entity from Fortress, which has not been sued in this action.  Plaintiffs nevertheless appear to refer to the two entities interchangeably in the Complaint, even though only FIG is a named defendant.  (*See id.* ¶¶ 13, 28, 117.)  Because it is impossible to discern the basis for plaintiffs' scattershot pleading, for the purposes of this motion only, FIG will assume that references to Fortress are in fact references to FIG, the actual named defendant.

2003 that supposedly caused plaintiffs' injury, and there is not a single factual allegation in the Complaint that suggests otherwise.  Thus, simply put:  because FIG is not alleged to have had anything to do with any activity that caused plaintiffs' purported injury, the claims against FIG should be dismissed in their entirety.

Plaintiffs' frivolous claims against FIG are part of their cynical and futile attempt to avoid the clearly-applicable defenses of *res judicata* and the statute of limitations, which both bar them from pursuing claims relating to the 2003 sale of the GM Building.  As set forth in detail in the Soros Brief, plaintiffs fully litigated their claims concerning the sale of the GM Building against many of the same parties in state court, where those claims were dismissed in their entirety, and the dismissal was affirmed on appeal.  In defiance of the fact that they were unsuccessful at every level in state court, plaintiffs here attempt to recover for the very same harm they alleged in that forum.  Plaintiffs' latest gambit is to attempt to disguise their improper attempt to relitigate their already-decided claims by cloaking those claims in a vast, fantastical and absurd alleged RICO Enterprise that plaintiffs appear to have invented from whole cloth.

In their most recent amendment, plaintiffs have included numerous stunningly scandalous allegations -- without providing a scintilla of factual support -- including bald statements that the defendants have engaged in such acts as "Narco Drug Trafficking," "Black Market Arms" dealing, and "Prostitution slave trading."  Cutting through such groundless and irresponsible innuendo, the only thing that FIG is alleged to have actually done is enter into unrelated business transactions with certain defendants.  Without a good faith basis to do so, plaintiffs contend that all of these separate transactions were related and part of a grand scheme to harm them, but fail to plead any facts that connect these transactions with each other or with plaintiffs' alleged harm.

Plaintiffs' reckless mudslinging does nothing to change the facts that plaintiffs are barred by *res judicata* from relitigating their state court claims and that all of their claims are barred by the statute of limitations.  Though FIG was not a party to plaintiffs' earlier state court action, FIG is entitled under New York law to assert the defense of *res judicata* (as well as collateral estoppel) against plaintiffs -- who were parties to that action -- to preclude them from relitigating their claims, which arise entirely out of the same transaction on which the state action was based. Barring plaintiffs' claims based on *res judicata* under these circumstances is entirely appropriate where plaintiffs have had numerous opportunities to plead sufficient claims against FIG, but have repeatedly failed to do so.

Moreover, while some defendants, like Conseco, Inc. and Harry Macklowe, were involved in the 2003 sale of the GM Building, FIG was not, and none of the transactions that plaintiffs allege FIG participated in relate to that sale.  Plaintiffs therefore lack standing to assert RICO claims against FIG based on activity that is not alleged to have harmed them.  Indeed, plaintiffs do not have standing to assert any of their RICO claims because they fail to even allege that the conduct that allegedly caused them harm -- the bidding for and sale of the GM Building in 2003 -- was part of the alleged RICO Enterprise's pattern of racketeering activity.  As such, plaintiffs have not alleged, and cannot allege, that their purported injury was proximately caused by the alleged pattern of racketeering activity.  This failure is a result of plaintiffs' transparent -- and woefully inadequate -- attempt to sufficiently distinguish their current claims from their prior dismissed claims to avoid the immediate application of *res judicata*.  But by attempting to plead around the obvious application of *res judicata*, plaintiffs have painted themselves in a corner where if their claims are not immediately barred by *res judicata*, those claims then fail because

plaintiffs have not alleged any harm they suffered as a result of the alleged pattern of racketeering activity.  Either way, plaintiffs' claims are insufficient and should be dismissed.

Plaintiffs also fail to even remotely allege sufficiently the most basic elements of their RICO claims against FIG, including that FIG (i) actually participated in the alleged enterprise through a pattern of racketeering activity; (ii) invested in, or acquired an interest in the enterprise; or (iii) committed any of the alleged predicate acts.  Each of these flaws is fatal and each individually would result in the dismissal of plaintiffs' RICO claims against FIG.  Taken together, however, they show the absolute failure of plaintiffs to plead any cognizable RICO claim against FIG.

FIG should not be subjected any longer to the significant costs (both monetary and reputational) of defending itself against plaintiffs' irresponsible claims, which lack any good faith basis.  The lack of any factual or legal support for plaintiffs' claims against FIG is particularly glaring considering the fact that they already had the opportunity to amend their complaint with the benefit of reviewing defendants' original motions to dismiss in this action.  Notwithstanding their numerous opportunities to do so, plaintiffs have failed to sufficiently allege any claims against FIG, and those claims should therefore be dismissed with prejudice.

## STATEMENT OF FACTS

### A.      Plaintiffs' Prior State Court Action

Though plaintiffs fail to acknowledge it, as the Soros Brief discusses in detail, plaintiffs brought an action in New York state court in 2006 (the "State Action"), seeking damages for the harm they allegedly suffered as a result of their failure to acquire the GM Building in 2003 -- precisely the same injury alleged in this action.  (Soros Brief at 4-6, 10-14.)  As here, plaintiffs did not allege in the State Action that FIG participated in the 2003 bidding or sale process, but instead made allegations about transactions allegedly involving FIG that had nothing to do with plaintiffs' claims.  (*See* Amended Verified Complaint, *Leslie Dick Worldwide Ltd. v. Macklowe Props., Inc.*, Index No. 06/600222 (N.Y. Sup. Ct. May 30, 2006) ¶¶ 6-7, 57 (alleging, among other things, (i) that Soros controls the GM Building through "various other Soros-controlled entities, such as Fortress Investment Group LLC, and Mapeley Holdings Ltd. (a 50% partner of Fortress Investment Group LLC);" (ii) that Soros "obtained effective control over the assets of Conseco Finance Corp. through . . . a joint venture led by Fortress Investment Group LLC, the same Soros-controlled entity that provided . . . debtor in possession financing through an affiliate (FPS DIP LLC);" and (iii) that FIG was an investor in a real estate project in Chicago with defendant Donald Trump ("Trump Chicago") and "provided $160 million in financing, and is partially owned (50%) by Mapeley Holdings Ltd., another Soros-controlled company") (attached as Exhibit B to the Declaration of John R. Oller ("Oller Decl."), dated April 24, 2009).)

However, notwithstanding those allegations, plaintiffs did not name FIG as a defendant in the State Action.  This failure was presumably a result of the fact that FIG had nothing whatsoever to do with the injury plaintiffs claimed to have suffered.  As set forth in the Soros Brief, all of plaintiffs' claims in the State Action were dismissed on the merits, and affirmed on appeal when plaintiffs fully exhausted their appellate relief.  (Soros Brief at 4-6.)

**B.      Allegations Concerning FIG in This Action**

Undeterred by their sound defeat in their first suit concerning the 2003 bidding and sale of the GM Building, plaintiffs filed this action days after exhausting their appeals in the State Action, which asserts claims based upon the exact same injury.  In an attempt to camouflage the fact that they have merely restated their dismissed state court claims, plaintiffs' Amended Complaint outrageously expanded their claims to include transactions that are entirely unrelated to the 2003 bidding for and sale of the GM Building and named additional parties, like FIG, who were not parties to that bidding and sale process.

**1.      The Sale of the GM Building in 2003**

The incoherence of plaintiffs' allegations make it difficult to articulate the precise purported basis for plaintiffs' claims against FIG or to discern exactly how FIG supposedly violated the RICO statutes.  However, what is entirely clear is that the few factual allegations concerning FIG have nothing to do with the bidding process for and the sale of the GM Building in 2003.  As a result of the fact that there is nothing to tie FIG to that sale, plaintiffs instead lump FIG together in a string-cite of defendants without any factual support to do so:

> Upon information and belief, defendants Soros, Fortress, Trump, Conseco, Macklowe, Kirkland & Ellis, Vornado, Eastdil, and German American all knew that the bidding process was merely a dumb-show, and that the winner of the bidding was going to be Harry Macklowe, and conspired to achieve this result for the purpose of Money Laundering.

(Am. Compl. ¶ 414; *see also id.* ¶ 423-24, 426 (alleging in a conclusory allegation that FIG was in a conspiracy to manipulate the bidding process of the 2003 sale of the GM Building "to use the GM Building for the purpose of Money Laundering").  Notably, notwithstanding the opportunity to re-plead after reviewing FIG's initial motion to dismiss, the Amended Complaint absurdly again names FIG as a defendant although it contains no facts whatsoever showing that

FIG either actually participated in the bidding for or sale of the GM Building, or that FIG conspired to manipulate or launder money through that sale.

Because plaintiffs did not, and could not, allege that FIG was involved with the bidding for and sale of the GM Building, plaintiffs peppered the Amended Complaint with wholly fabricated and illusory allegations that FIG "*and/or*" other defendants and non-parties created, financed, or funneled money through certain "ephemeral shell entities" that were allegedly used ultimately to finance defendant Macklowe's acquisition of the GM Building in 2003. In a new section of the Amended Complaint titled, "Summary of Facts," plaintiffs remarkably invent allegations that "Soros *and/or* Fortress" formed certain shell entities and "funnel[ed] by wire fraud"[2] funds into those and other entities that were ultimately used by Macklowe to finance the acquisition of the GM Building in 2003.[3] (*See* Am. Compl. ¶¶ 42-51; *see also id.* ¶ 41 ("Soros, SFM, Fortress, Vornado, Mapeley *and/or* Quantum" managed or controlled the entities that were the illegal source of the funds to purchase the GM Building (emphasis added)).) Indicative of their lack of good faith in pleading any claims against FIG, plaintiffs thereafter conclude *without factual support* that

> In sum, with the knowledge, participation and in conspiracy of the other defendants, Soros and Fortress capitalized Acquisition [the entity that allegedly acquired the GM Building for defendant Macklowe] with 300 Million Dollars derived from illegal activities or sources, to disguise and conceal the true nature and source of the funds and to make the funds appear to be those of Harry Macklowe, the purported "owner" of Acquisition.

---

[2]  Plaintiffs do not, however, allege any facts in support of their bald "wire fraud" conclusions.

[3]  Plaintiffs similarly allege in conclusory fashion and without any basis in fact that FIG "and/or" Soros controlled these entities. (*See* Am. Compl. ¶¶ 104, 106, 108, 111; *see also id.* ¶¶ 494-501, 504-07, 510, 512, 514-18, 521-24, 527, 530-31, 535, 537-39 (repeating the conclusory allegations from earlier in the Amended Complaint concerning FIG's (often FIG "or" other entities) role in the "ephemeral shell entities").) Notably, in many of these allegations, plaintiffs simply added FIG to already existing allegations from the original complaint in this action ("Complaint" or "Compl.") to somehow try to connect FIG to the sale of the GM Building in 2003, but provide no factual support for the addition of FIG to those allegations. (*Compare* Compl. ¶¶ 20, 22 *with* Am. Compl. ¶¶ 106, 108.)

7

(*Id.* ¶ 52.)

Tellingly, when plaintiffs later address the creation and funding of these alleged shell companies in a section of the body of their Amended Complaint titled, "The Structure of the Money Laundering Transactions In Connection With The Purchase of the GM Building," plaintiffs do not allege that FIG was involved (*see, e.g.*, *id.* ¶¶ 447-69), save for a few conclusory references that FIG (often FIG "*or*" other entities) was involved in an unidentified way with laundering money through, creating or owning some of these entities (*see id.* ¶¶ 446, 460, 464-67).[4]

## 2.    The Unrelated Allegations Involving FIG

In addition to attempting to imply through made-up and illusory allegations that FIG was involved in the 2003 sale of the GM Building when it was not, plaintiffs also include numerous irrelevant allegations purporting to describe FIG's involvement with (i) defendant Conseco Inc.'s bankruptcy; (ii) the Trump Chicago project; (iii) defendant Macklowe's 2007 purchase of office buildings in New York City; and (iv) "partnerships" between FIG and Soros, specifically, Mapeley, Ltd. ("Mapeley"). (*Id.* ¶¶ 252-54, 257, 475-76, 478-85.)  None of this alleged conduct, of course, has anything to do with the bidding for and sale of the GM Building in 2003.  Rather, even with the benefit of reviewing defendants' motions to dismiss the Complaint, and having taken the opportunity to amend their Complaint to attempt to address the issues raised by those motions, plaintiffs remain woefully unable to allege that they were injured in any way by any of these unrelated transactions, nor can they plead any facts in support of their outrageous and conclusory assertions that these transactions were unlawful and in furtherance of a RICO

---

[4]      In fact, in each one of those paragraphs where FIG is referenced in that section concerning the alleged "ephemeral shell entities," FIG was simply added to pre-existing allegations from the Complaint without any factual support for the addition of FIG to those allegations.  (*Compare* Compl. ¶¶ 382, 397, 402-05 *with* Am. Compl. ¶¶ 446, 460, 464-67.)

enterprise.  Not surprisingly, the Amended Complaint merely alleges entirely lawful (and often court-approved) conduct by FIG, which, most importantly (and dispositively), has no connection to plaintiffs and their alleged injury.

With respect to the Conseco bankruptcy, the Amended Complaint alleges facts that, taken as true, suggest only that (i) FIG was one of three "members" of CFN Holdings, LLC ("CFN Holdings"), which acquired Conseco Finance Corp. ("Conseco Finance") through a court-approved agreement and auction[5] (Am. Compl. ¶¶ 29, 273, 281, 283, 290-93, 297-98, 302, 308, 320-21, 369, 373, 401); and (ii) FIG was one of the entities that "controlled" FPS DIP, LLC ("FPS DIP"), which provided court-approved debtor-in-possession financing to Conseco[6] (*id.* ¶¶ 35, 284, 284, 287-91, 303).

Plaintiffs have not alleged any facts suggesting that any conduct by FIG was unlawful. Notably, although plaintiffs added an allegation that CFN Holdings made "false, misleading and repeatedly fraudulent statements" (*id.* ¶ 32), they do not identify any such statements by CFN Holdings, let alone any such statements by FIG.[7]  All of plaintiffs' allegations concerning the purported unlawful conduct in connection with the acquisition of Conseco Finance and the provision of DIP financing to Conseco lack any factual basis and are entirely conclusory.  (*See,*

---

[5]     As to specific allegations apparently relating to FIG, the Amended Complaint only alleges that defendant Lazard provided "Fortress Financial" with information on an unspecified date about the value of Conseco Finance (Am. Compl. ¶ 249).  Plaintiffs allege no actual facts as to *conduct by FIG*, but, rather, seem to contend (without pleading any facts) that FIG is liable for CFN Holdings' alleged conduct in the Conseco bankruptcy.  Notably, neither CFN Holdings nor the other alleged members of CFN Holdings are named as defendants in the Amended Complaint.

[6]     The Amended Complaint's only allegations concerning FIG and the DIP financing for Conseco is that "[u]pon information and belief, FPS DIP was controlled by Fortress and Soros."  (Am. Compl. ¶ 274.)  Plaintiffs, however, do not allege any facts to support this "belief" and plaintiffs allege no other related conduct by FIG.

[7]     Plaintiffs also include allegations concerning representations they contend were made by counsel for CFN Holdings -- not FIG -- in connection with CFN Holding's objection to certain discovery in bankruptcy court. Plaintiffs state that the alleged representation "may have been in furtherance of the criminal conspiracy, plan and scheme of the RICO Enterprise to conceal material financial information provided by Conseco and Lazard to CFN prior to the Bankruptcy filing of Conseco."  (Am. Compl. ¶ 313.)  This ephemeral allegation provides no factual basis to suggest that any conduct by CFN Holdings -- much less by FIG -- was in any way unlawful.

*e.g.*, *id.* ¶¶ 30-34, 252-53, 267 (concerning Conseco Finance); *id.* ¶¶ 34, 267, 274, 252, 276, 279, 284, 288 (concerning FPS DIP).)

Similarly deficient are plaintiffs' allegations concerning FIG's other conduct that has absolutely nothing to do with the conduct that purportedly caused plaintiffs' harm.  The Amended Complaint alleges merely that FIG provided mezzanine financing for the Trump Chicago project, but does not allege any connection between such financing and the separate alleged money laundering by other defendants through the Trump Chicago project.  (*Id.* ¶¶ 17, 65, 257 & n.7, 403, 407, 474-76.)  Plaintiffs also allege that FIG financed part of Macklowe's 2007 acquisition of seven office buildings in New York City by loaning him $1.2 billion, which then grew to $1.4 billion, and that it sold "25 percent of the equity" to non-party Deutsche Bank. (*Id.* ¶¶ 479-81.)  There are no facts alleged anywhere (nor can any facts be alleged) that connect any of these subsequent transactions to the sale of the GM Building in 2003, to plaintiffs' alleged injury, or to any unlawful conduct by FIG.

Finally, consistent with their obvious practice of including any possible connection between any two defendants (regardless how irrelevant, baseless, or inaccurate), plaintiffs allege that FIG and defendant George Soros had overseas "partnerships" through which plaintiffs allege -- without including any supporting facts -- that FIG and Soros were co-conspirators in money laundering.  (*Id.* ¶ 274.)  One such "partnership" that plaintiffs identify is Mapeley, Ltd., which the Amended Complaint contends was "a Bermuda corporation, which is a partnership between George Soros and/or one of the Fortress entities and their principals."  (*Id.* ¶ 27.)  Plaintiffs state, but provide no factual support for the allegation, that "Soros and Fortress control, manage or

participate in the affairs of Mapeley and/or Quantum and receive a pre-arranged fee from the sources of the illegal proceeds."[8]  (*Id.* ¶ 69.)

Astonishingly, plaintiffs also state that while they have no actual information connecting FIG in any way to the financing of the sale of the GM Building in 2003, they "believe" that "Mapeley and/or Quantum" were the ultimate source of the funds.  (*Id.* ¶ 66.)  Of course, no factual basis for this purported belief is cited, nor do plaintiffs have any good faith basis to make such an allegation.  Moreover, plaintiffs make the remarkable allegation "upon information and belief" that these funds (of admittedly "unknown" source but nevertheless "believed" to be from "Mapeley and/or Quantum") were "derive[d] from illegal sources which conduct unlawful activities, including, but are not limited to Narco Drug Trafficking, Black Market Arms Dealers, Prostitution slave trading and Organized Crime."  (*Id.* ¶ 66; *see also id.* ¶¶ 27, 67, 464, 467, 449-50 (alleging without any factual basis that Mapeley "and/or" other entities, among other things, commingled illegal funds with other investments and then "infused" the alleged "ephemeral shell entities" that financed the acquisition of the GM Building with the funds to do so or contrived a massive fraud to do so).)  Once again, plaintiffs provide no facts or any good faith basis for these scandalous allegations.[9]

### C.    Motion to Quash – Solow Action

Plaintiffs' baseless inclusion of FIG as a defendant in this action is highlighted not only by plaintiffs' failure to name FIG as a defendant when they sued for the same alleged injuries in

---

[8]    Despite the implication that FIG had some involvement with Quantum, plaintiffs do not and cannot allege that FIG formed, managed, or controlled Quantum.  (*See* Am. Compl. ¶ 102.)

[9]    Plaintiffs' lack of good faith is most evident in their unquestionably irrelevant allegations of a purported SEC civil action against "Fortress Financial Corp." and its President "Jeffrey A. Richie," which not only have nothing to with plaintiffs' claims or injury, but also have nothing to do with FIG or any related entity.  (Am. Compl. ¶ 292 n.12 & Ex. W.)  Even the slightest due diligence concerning this SEC action would have shown that it had nothing to do with FIG or any related entity, and confirms plaintiffs' bad faith in asserting claims against FIG.  FIG should not have to continue to incur the substantial costs of responding to plaintiffs' irresponsible and unfounded allegations.

the State Action, but also by Magistrate Judge Katz's recent decision in connection with a discovery motion in an action by another plaintiff who unsuccessfully sought to purchase the GM Building in 2003.  In that action, plaintiff Sheldon Solow sought damages based on claims nearly identical to plaintiffs' claims in the State Action, and, like plaintiffs in the State Action, did not name FIG (or any related entity) as a defendant or allege that FIG was involved in the 2003 sale.  Solow did, however, serve a subpoena on Fortress seeking documents concerning any transactions with Harry Macklowe, a non-party in that action, relating to the GM Building between 2002 and 2007, including any financing or refinancing of the GM Building and any pledges of Macklowe's interest in the building.  *Solow v. Conseco, Inc.*, No. 06 Civ. 5988 (BSJ) (THK), 2008 WL 190340, at *1-2 (S.D.N.Y. Jan. 18, 2008).

Macklowe moved to quash the subpoena to Fortress, arguing that the documents sought by Solow were irrelevant because, among other reasons, Fortress "was not involved in Macklowe's purchase of the General Motors Building.  Macklowe did not directly seek and did not obtain financing from Fortress in connection with the 2003 transaction."  *Id.* at *5.  As such, the Court found that "the documents sought in the subpoena have little or no relevance to the claims and defenses in [Solow's] action [concerning the sale of the GM Building in 2003]."  *Id.* Thus, Magistrate Judge Katz found that FIG was not even sufficiently connected to the 2003 sale of the GM Building to be required to provide documents or testimony, not to mention be named as a party.

## ARGUMENT[10]

## I.

## PLAINTIFFS' RICO CLAIMS AGAINST
## FIG SHOULD BE DISMISSED

**A.      Plaintiffs' RICO Claims Against FIG are Barred by *Res Judicata***

Plaintiffs unsuccessfully litigated their claims relating to the 2003 sale of the GM

Building in state court and exhausted all appellate avenues.  They may not resuscitate these dead

claims by recasting them as federal RICO claims, and thus their claims against FIG should be

dismissed.

As the Soros Brief demonstrates, plaintiffs' RICO claims are barred by *res judicata*

because the gravamen of the wrong alleged in both the State Action and the current action is the

same:  plaintiffs were allegedly injured when they participated in the alleged fraudulent bidding

process for the GM Building in 2003.[11]  (Soros Brief at 17-24.)  Although FIG was not a party to

the State Action, plaintiffs' claims against FIG are also barred by *res judicata* under New York

law.

As the New York Court of Appeals recently held:  "In New York, *res judicata*, or claim

preclusion, bars successive litigation based on the 'same transaction or series of connected

transactions' if: (i) there is a judgment on the merits rendered by a court of competent

jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous

---

[10]      In addition to the arguments set forth herein, FIG joins, and incorporates by reference, the arguments in the Soros Brief that all of plaintiffs' claims should be dismissed because (i) they are barred by *res judicata*; (ii) barred by the statute of limitations; (iii) plaintiffs lack standing to allege their RICO claims; and (iv) plaintiffs fail to sufficiently state a claim for RICO violations.  (*See* Soros Brief §§ II(A)-II(D).)  Additional reasons why plaintiffs' claims against FIG should be dismissed are discussed herein.

[11]      Plaintiffs' "allegations" in the Amended Complaint that their current federal claims are not barred by *res judicata* because the evidence that would be used to prove their current federal claims is not the same as for (and was not present in) the claims in plaintiffs' State Action is baseless.  Under New York law, plaintiffs' current claims are barred because their alleged injury in both actions is exactly the same and clearly arises out of the same transaction.  (Soros Brief at 21-24.)

action, or in privity with a party who was." *Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 123, 863 N.Y.S.2d 615, 626, 894 N.E.2d 1, 12 (2008) (citations omitted); *see also Schwartzreich v. E.P.C. Carting Co., Inc.*, 246 A.D.2d 439, 441, 668 N.Y.S.2d 370, 372 (1st Dep't 1998) ("If the party against whom res judicata is invoked had a full and fair opportunity to litigate the claim in a prior proceeding based on the same transaction, but did not raise it therein, he will be barred from raising it in a subsequent action."); *Browning Ave. Realty Corp. v. Rubin*, 207 A.D.2d 263, 264-65, 615 N.Y.S.2d 360, 362 (1st Dep't 1994) ("The previous disposition must have been on the merits and the party opposing preclusion must have had a full and fair opportunity to litigate this claim in the prior proceeding.").

There is no dispute, nor could there be, that plaintiffs in this action were the plaintiffs in the State Action and that they had a full and fair opportunity to litigate their claims concerning their alleged injuries in that action.  Thus, plaintiffs' claims against FIG are barred by *res judicata* based on the standard set forth by the New York Court of Appeals in *Applied Card Systems* and for the reasons set forth in the Soros Brief.  (Soros Brief at 17-24.)  Those claims should therefore be dismissed.

Moreover, the application of *res judicata* to bar plaintiffs' claims against FIG in these circumstances is entirely fair and appropriate even though it was not a party to the State Action.  Here, plaintiffs were not only aware of FIG's alleged conduct at the time the State Action was filed, but they even included those allegations in their state court complaint (*supra* at 5).  *See Leptha Enters., Inc. v. Longenback*, No. 90 Civ. 7704 (KTD), 1991 WL 183373, at *2 (S.D.N.Y. Sept. 9, 1991) (applying *res judicata* where plaintiff was aware of defendant at the time of the earlier action and where "the instant complaint names the previously unnamed defendants merely as co-conspirators; their alleged activities were not independent of the actions of the earlier

14

defendants"); *Cahill v. Arthur Andersen & Co.*, 659 F. Supp. 1115, 1121-23 (S.D.N.Y. 1986) (applying *res judicata* where plaintiff was aware of defendant at time of earlier action and defendant's "participation in the activities that the plaintiff now complains of is not independent of the actions of the earlier defendants"), *aff'd*, 822 F.2d 14 (2d Cir. 1987).  In addition, plaintiffs now allege that FIG was a conspirator with other defendants who were named parties in the State Action.  *See Somerville House Mgmt., Ltd. v. Arts & Entm't Television Network*, No. 92 Civ. 4705 (LJF), 1993 WL 138736, at *2 (S.D.N.Y. Apr. 28, 1993) ("[A] number of courts have found that alleged co-conspirators can be considered 'in privity' with one another for *res judicata* purposes, despite the fact that those parties might have some adverse interests." (collecting cases)); *see also Ruskay v. Jensen*, 342 F. Supp. 264, 270-71 (S.D.N.Y. 1972) (newly-added defendants permitted to assert *res judicata* defense where sufficient relationship existed between alleged co-conspirators), *aff'd*, 552 F.2d 392 (2d Cir. 1977), *cert. denied*, 434 U.S. 911 (1977).

Under these circumstances, and under any applicable standard, plaintiffs' claims against FIG are barred by *res judicata* and should be dismissed.

### B.  Plaintiffs' Claims Against FIG Are Barred by Collateral Estoppel

Moreover, even if *res judicata* did not dispose of the RICO claims against FIG -- which it does -- plaintiffs are precluded from alleging that the 2003 bidding process for the GM Building was unlawful and that they were injured thereby.

Under New York law, "[c]ollateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity."  *Buechel v. Bain*, 97 N.Y.2d 295, 303, 740 N.Y.S.2d 252, 257, 766 N.E.2d 914, 919 (2001).  To invoke collateral estoppel, "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action

and there must have been a full and fair opportunity to context the decision now said to be controlling." *Id.* at 303-04.

As detailed in the Soros Brief, plaintiffs' claims in the State Action were dismissed because the Court found as a matter of law that plaintiffs were not defrauded in the bidding process for the GM Building in 2003 since they had expressly acknowledged that the sellers of the building reserved their rights to manage the bidding process precisely the way plaintiffs contended in that action (and here) was improper.  (*See* Soros Brief at 4-6.)

Here, once again, plaintiffs' sole asserted injury is that they were harmed through a fraudulent and improper bidding process for the sale of the GM Building in 2003.  The purported basis for these claims is that various defendants made statements implying that "the bidding process was going to take place in good faith were false and were intended for plaintiffs to rely thereupon to their detriment" (Am. Compl. ¶ 416), and that "the racketeering Enterprise never intended to adhere to the bidding procedure or the rules of the bidding process and never intended to sell the GM Building to plaintiff, who was the highest and best bidder on the GM Building" (*id.* ¶ 421).  Thus, plaintiffs contend that the bidding process was "a dumb-show" (*id.* ¶ 414), "rife with fraud [and] bad faith" (*id.* ¶ 424), and the procedure for the bidding was "a sham and never intended to be followed" (*id.* ¶ 435).

All of these issues were litigated and decided in the State Action and plaintiffs should not be permitted to waste this Court's resources and the time and money of the defendants relitigating the central issues in the State Action.

Moreover, there can be no dispute that the issues decided in the State Action were necessary to the state court's decision, or that plaintiffs had a full and fair opportunity to contest the decision.  Therefore, plaintiffs are precluded from relitigating whether the 2003 bidding

process for the GM Building was fraudulent or a "sham auction" or whether they were injured

thereby.  *See New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86-87 (2d Cir. 2000) (mail

fraud "verdicts involved necessary findings regarding the defendants' participation in bid-rigging

activities" that allow for the use of collateral estoppel); *Singh v. Parnes*, 199 F. Supp. 2d 152,

160 (S.D.N.Y. 2002) (applying collateral estoppel to claims grounded on same issues as

previously litigated claims); *Andrea Doreen Ltd. v. Bldg. Material Local Union 282*, 299 F.

Supp. 2d 129, 146 (E.D.N.Y. 2004) ("Although the actual claims in the RICO case are not

identical to those made in the [prior] ERISA Collection Action, underlying each of [Plaintiff's]

allegations of mail and wire fraud is the contention that the Defendants intentionally or

recklessly defrauded it because [Plaintiff] did not owe benefit contributions when the letters were

sent.  Thus, [Plaintiff] seeks to relitigate a factual issue decided by this Court—which it cannot

do."); *Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746,

at *5 (S.D.N.Y. Jan. 21, 2005) (Report and Recommendation) ("Collateral estoppel, or issue

preclusion, bars Amadasu's claims in this action to the extent that they are premised on the

events that Amadasu described in his state law complaint."), *adopted by* No. 03 Civ. 6450

(LAK), 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005), *aff'd*, 225 Fed. Appx. 32 (2d Cir. 2007).

## C.    Plaintiffs' RICO Claims are Time-Barred

As the Soros Brief demonstrates, plaintiffs' RICO claims against all defendants are

barred by the four-year statute of limitations for civil RICO claims.  (Soros Brief at 30-35.)

Plaintiffs' allegations concerning FIG's post-2003 financing for the Trump Chicago project and

Macklowe's purchase of additional office buildings in Manhattan, none of which is alleged to

have injured plaintiffs, do not extend or restart the statute of limitations.[12]  *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190, 117 S. Ct. 1984, 1991, 138 L. Ed. 2d 373, 383 (1997) ("[P]laintiff[s] cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period."); *Wolf v. Wagner Spray Tech Corp.*, 715 F. Supp. 504, 508 (S.D.N.Y. 1989) ("[T]he last act alleged to have injured plaintiffs . . . was . . . more than four years prior to the commencement of this action, [and thus] plaintiffs' [claims] are time-barred.").

D.      **Plaintiffs Lack Standing to Assert RICO Claims Against FIG**

Even if plaintiffs' RICO claims against FIG were not precluded -- which they are -- their claims should nevertheless be dismissed as to FIG because plaintiffs lack standing to assert such claims.  For a civil RICO claim, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346, 359 (1985); *accord* 18 U.S.C. § 1964(c) (2009); *see also Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990); *Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 245-47 (S.D.N.Y. 2003), *aff'd*, 80 Fed. Appx. 722 (2d Cir. 2003); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) ("RICO provides a civil remedy only to those persons injured 'by reason of' the defendant's predicate acts.  To show that an injury resulted 'by reason of' the defendant's action, and therefore to have standing under RICO, the plaintiff must allege 'that defendant's violations were a proximate cause of the plaintiff's injury, i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct.'" (*quoting Standardbred Owners Ass'n v. Roosevelt Raceway*

---

[12]      Plaintiffs' "allegations" in the Amended Complaint that their claims are not barred by the statute of limitations because their damages were speculative and they could not have discovered their injuries earlier are entirely without merit as explained in the Soros Brief.  (Soros Brief at 32-35.)

*Assocs., L.P.*, 985 F.2d 102, 104 (2d Cir. 1993)).  Because plaintiffs have not alleged that they were injured by *any* conduct by FIG, they lack standing to bring RICO claims against FIG.

As shown in the Soros Brief, plaintiffs do not have standing to assert RICO claims based on their frivolous allegations of bankruptcy fraud, wire fraud, and money laundering against any of the defendants because plaintiffs do not (i) allege that the "rigged" bidding process was a predicate act and (ii) do not and cannot allege that they were injured by the predicate acts they do allege (albeit insufficiently) in the Amended Complaint.[13]  (Soros Brief at 24-26.)  Even if plaintiffs had alleged that the "rigged" bidding process for the GM Building in 2003 was a predicate act of racketeering, plaintiffs still would not be in a position to assert any RICO claims against anyone based on allegations of a "rigged" sale of the GM Building in 2003 because plaintiffs have not sufficiently alleged that it was the proximate cause of its injury.  (Soros Brief at 26-30.)

Significantly, plaintiffs' lack of standing to assert RICO claims against FIG is even more stark.  FIG did not participate in the 2003 bidding for, or sale of, the GM Building and plaintiffs have not alleged any facts suggesting otherwise.  Thus, FIG has no connection whatsoever to plaintiffs' alleged injury.  Indeed, as Magistrate Judge Katz previously held, FIG was irrelevant -- even as a witness -- to the circumstances surrounding the 2003 sale of the GM Building. *Solow*, 2008 WL 190340, at *5.  As such, plaintiffs could not possibly allege that the harm they allegedly suffered as a result of the "rigged" bidding for the GM Building in 2003 was caused in any way by FIG, and thus, they do not have standing to assert such claims against FIG.  *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120-23 (2d Cir. 2003); *First Nationwide*, 27 F.3d at

---

[13]       Plaintiffs' failure to allege the "rigged" bidding process as a predicate act is a thinly-veiled, but unsuccessful, attempt to plead around the fact that plaintiffs are merely re-litigating their state claims.

769-72; *Moore v. Guesno*, 485 F. Supp. 2d 300, 304-06 (W.D.N.Y. 2007), *aff'd*, No. 07-2463-CV, 2008 WL 5082982 (2d Cir. Dec. 1, 2008).[14]

### E.   Plaintiffs Have Not Pled the Elements of a RICO Claim Against FIG

As demonstrated in the Soros Brief, plaintiffs have failed to properly allege the basic elements of a RICO claim, including a "pattern of racketeering activity."  (Soros Brief at 35-38, 43-46.)  In addition to the reasons set forth in the Soros Brief, the RICO claims against FIG should also be dismissed because they have not sufficiently alleged: (i) predicate acts by FIG that were related to each other or plaintiffs' alleged injury; (ii) that FIG participated in a RICO enterprise that caused plaintiffs' injury; (iii) that FIG invested income from racketeering activity in an enterprise; and (iv) that FIG acquired an interest in an enterprise through racketeering activity.[15]

To sufficiently allege a "pattern of racketeering activity," plaintiffs must "show that among the predicate acts there is both relationship and continuity."  *Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, No. 89 Civ. 2809 (BSJ), 1996 WL 442799, at *6 (S.D.N.Y. Aug. 6, 1996); *see also Singh*, 199 F. Supp. 2d at 161 ("Thus, separate, discreet acts which are unrelated would not suffice.").  Here, plaintiffs have not alleged any predicate acts against FIG that are sufficiently related to constitute a pattern of racketeering activity.  Plaintiffs fail to allege sufficiently how their conclusory allegations of bankruptcy fraud, wire fraud, and money laundering by FIG are

---

[14]    Plaintiffs also lack standing to assert claims against FIG under Sections 1962(a) and (b) because they have failed to sufficiently allege, as required, that FIG's alleged "investment of racketeering income in an enterprise," and FIG's alleged "acquisition or maintenance of any interest in or control of an enterprise" caused their alleged injury, or how those injuries were different from the injury from the alleged pattern of racketeering activity.  *See* 18 U.S.C. § 1962(a)-(b) (2008); *Stolow*, 258 F. Supp. 2d at 245-46.  (Soros Brief at 46-48.)  Similarly, plaintiffs do not have standing to pursue any Section 1962(d) claims because plaintiffs' injuries do not arise from the alleged predicate acts.  *See Beck v. Prupis*, 529 U.S. 494, 505-06, 120 S. Ct. 1608, 1616-17, 146 L. Ed. 2d 561, 571-72 (2000) (holding that Section 1962(d) claims fail where plaintiffs' alleged harm was caused not by the alleged RICO violation, but rather an overt act in furtherance of the alleged conspiracy).

[15]    As demonstrated in the Soros Brief, plaintiffs also fail to allege a cognizable RICO enterprise because they do not allege any facts that identify the alleged enterprise, its structure, members, common purpose, or how it operated as a continuing unit.  (Soros Brief at 35-38.)

related to each other much less to the only conduct that allegedly caused plaintiffs harm -- the alleged fraudulent biding process for the GM Building in 2003 (other than that plaintiffs simply say that they are all related).

Instead, plaintiffs attempt to relitigate their state claims by cloaking them with conclusory allegations of bankruptcy fraud, wire fraud, and money laundering to "buttress [their] weak argument with respect to 'continuity,' that is to extend the duration of the scheme.  These acts, however, are unrelated to the predicate acts which allegedly injured plaintiff, and therefore can not be considered as part of the activity to extend the scope of the 'pattern.'"[16] *Ray Larsen*, 1996 WL 442799, at *7; *accord Moore*, 485 F. Supp. 2d at 304-06 ("[P]laintiffs unsuccessfully attempt to weave a web between the discrete acts of certain individual defendants that occurred over the course of several years in an effort to pursue a new theory of recovery in this case, their fourth lawsuit attacking [plaintiffs'] conviction.").

Moreover, as noted in the Soros Brief, "Section 1962(a) prohibits any person who derived income from a pattern of racketeering activity from investing that income in an 'enterprise', as defined by the statute," *Stolow*, 258 F. Supp. 2d at 245, and Section 1962(b) makes it unlawful for "any person through a pattern of racketeering activity . . . to acquire or maintain . . .  any interest in or control of any enterprise," 18 U.S.C. § 1962(b) (2009).  (Soros Brief at 46-48.)  Here, plaintiffs do not adequately allege that FIG received any money from a pattern of racketeering activity much less that it invested it in an enterprise.  Nor do they sufficiently allege that FIG acquired an interest in an enterprise through a pattern of racketeering activity.[17]

---

[16]     Plaintiffs also fail to sufficiently allege the continuity of the alleged pattern of racketeering activity thereby requiring dismissal of its RICO claims.  (Soros Brief at 43-46.)

[17]     Further, as noted in the Soros Brief, since plaintiffs have not alleged an underlying RICO violation, their claim for a RICO conspiracy in violation of Section 1962(d) cannot survive.  (Soros Brief at 48-49.)  Plaintiffs'

**F.      Plaintiffs Have Not Alleged That FIG Committed
         Any Predicate Acts of Racketeering                    **

Assuming, *arguendo*, that plaintiffs had standing to assert their RICO claims against FIG

and otherwise satisfied the elements of a RICO violation -- which they do not -- plaintiffs' RICO

claims still should be dismissed because plaintiffs have not sufficiently alleged that FIG engaged

in any -- let alone at least two -- predicate acts of racketeering.

As the Soros Brief demonstrates, plaintiffs' bankruptcy fraud and wire fraud claims, like

any fraud claim, must be pleaded with particularity in accordance with Federal Rule of Civil

Procedure 9(b).  (Soros Brief at 38-42.)  Here, in addition to the reasons detailed in the Soros

Brief as to the claims against Soros, plaintiffs' fraud-based RICO claims against FIG are clearly

insufficient.

Fundamentally, plaintiffs do not allege any facts at all supporting their conclusory

allegations that FIG engaged in wire fraud.  Plaintiffs' allegations concerning wire fraud by FIG

amount to statements that either FIG "*and/or*" Soros or some other entities wired money into

certain entities, and that the wiring of funds somehow constituted wire fraud.  (Am. Compl.

¶¶ 41-51, 449-50, 460, 464, 467.)  These claims are wholly deficient because they fail to

particularize who actually committed the wire fraud, instead using the term "and/or" each time,

and more basically, fail to identify what was the material misrepresentation that anyone made in

connection with the alleged wiring of those funds.[18]  *See Procapui–Productores de Camaroes de

Icapui Ltda. v. Layani*, No. 07 Civ. 6627 (BSJ), 2008 WL 3338199, at *2-3 (S.D.N.Y. Jan. 11,

2008) ("Where there are multiple defendants, as in the instant case, a court may reject, for want

---

conspiracy claim against FIG should also be dismissed because they have alleged neither the existence of a RICO
conspiracy nor that FIG knowingly reached an agreement to enter such a conspiracy.  *See Ray Larsen*, 1996 WL
442799, at *9 (dismissing complaint where plaintiff "failed to allege any factual basis for a finding of conscious
agreement among [the defendants] to commit predicate acts").  (Soros Brief at 48-49.).

[18]      Plaintiffs' wire fraud claims against FIG are also deficient because they fail to adequately plead scienter.
(Soros Brief at 41-42.)

of particularity, complaints that group defendants together or fail to particularize the wrongful acts attributable to each defendant."); *see also In re Merrill Lynch &Co., Inc. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 371-72 (S.D.N.Y. 2003) (describing the use of "and/or" as a "vague modifier" that does not satisfy Rule 9(b)'s particularity requirement); *The Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*, 154 F. Supp. 2d 682, 693 (S.D.N.Y. 2001) (finding that allegations using "and/or" are not sufficiently particular under Rule 9(b)).

Similarly, the only factual allegations concerning FIG's role in the Conseco bankruptcy (the locale of the purported "bankruptcy fraud") are simply that FIG was a member/shareholder in CFN Holdings -- the entity that acquired Conseco Finance -- and FPS DIP -- the entity that provided debtor-in-possession financing to Conseco. (Am. Compl. ¶¶ 273-74.) Plaintiffs appear to seek to hold FIG liable for the alleged conduct of CFN Holdings and FPS DIP without providing any factual or legal basis to do so. *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426-27 (S.D.N.Y. 2003) ("[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard."); *see also EED Holdings v. Palmer Johnson Acq. Corp.*, 228 F.R.D. 508, 512-13 (S.D.N.Y. 2005) (dismissing claims based on veil-piercing allegations because those allegations were "conclusory and, therefore, fail[ed] to satisfy even the more lenient Rule 8(a) pleading requirements"). But even assuming that plaintiffs properly alleged that FIG -- as a shareholder -- was responsible for all of CFN Holdings' and FPS DIP's alleged conduct (which they have not), plaintiffs have not alleged any facts suggesting that either of those entities engaged in bankruptcy fraud.[19]

---

[19]    Plaintiffs' factual allegations concerning CFN Holdings' and FPS DIP's conduct establish only that CFN Holdings acquired Conseco Finance through a court-approved bidding process and sale, and FPS DIP provided Conseco with debtor-in-possession financing on terms approved by the Bankruptcy Court. (*See supra* at 8-9.)

Although there are conclusory statements in the Amended Complaint that FIG engaged in bankruptcy fraud (*see, e.g.*, Am. Compl. ¶¶ 32, 319), there are no particularized factual allegations to supply the requisite who, what, when, where, and how of any alleged bankruptcy fraud by FIG.  *See Lakonia Mgmt. Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 553 (S.D.N.Y. 2000) ("'In the RICO context, Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" (*quoting Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999)).

Similarly, for the reasons set forth in the Soros Brief, plaintiffs have not sufficiently alleged that FIG engaged in money laundering or that plaintiffs were harmed by any such conduct.  (Soros Brief at 40-41.)  Instead, plaintiffs only make conclusory allegations concerning vague illegal activities and unlawful activity by "Mapeley and/or Quantum" -- not FIG -- who allegedly derived funds from illegal activities that included unspecified "Narco Drug Trafficking, Black Market Arms Dealers, Prostitution slave trading and Organized Crime."  (Am. Compl. ¶ 66; Soros Brief at 40-41.)  Plaintiffs do not allege a single fact that could conceivably support such a defamatory and scandalous allegation, and plaintiffs' vague and conclusory allegations are unquestionably insufficient to allege that FIG committed a predicate act of money laundering.  *See W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch,* No. 03 Civ. 8606 (RWS), 2004 WL 2187069, at *9 (S.D.N.Y. Sept. 29, 2004); *Bernstein v. Misk*, 948 F. Supp. 228, 236 n.2 (E.D.N.Y. 1997).

---

These factual allegations do not even come close to suggesting the existence of a fraud, let alone alleging it with particularity.

## II.

## PLAINTIFFS' CLAIMS AGAINST FIG SHOULD
## BE DISMISSED WITH PREJUDICE

Plaintiffs have failed to allege sufficiently any claims against FIG even having taken the opportunity to amend their Complaint with the benefit of reviewing defendants' respective motions to dismiss.  Under these circumstances, it could hardly be clearer that plaintiffs cannot and will not ever be able to allege sufficiently any claims against FIG.  Therefore, in light of plaintiffs' continued irresponsible litigation conduct and their propensity for making scurrilous and scandalous allegations without providing any supporting facts, the Court should dismiss plaintiffs' claims against FIG with prejudice.  As the Soros Brief establishes, amendment would be futile because plaintiffs' claims are precluded by *res judicata* and collateral estoppel, and barred by the statute of limitations.  (Soros Brief at 49-50.)

Amendment of the claims against FIG would be futile for the additional reason that between the multiple amendments in this case[20] and the State Action, plaintiffs have had more than ample time and opportunity to allege any facts that support (in any way) their claims that FIG engaged in any conduct that caused them injury, but plaintiffs have repeatedly failed to do so.  Put simply, plaintiffs cannot allege that FIG -- a stranger to both the 2003 sale of the GM Building and plaintiffs themselves -- caused plaintiffs any harm such that they would have any basis to bring any claims against FIG.  *See Haughton v. Burroughs*, No. 98 Civ. 3418 (BSJ), 2004 WL 330242, at *7-8 (S.D.N.Y. Feb. 23, 2004) (finding amendment futile where plaintiff had already filed several complaints and claims were barred by *res judicata* and collateral

---

[20]     In fact, although plaintiffs labeled it as a correction of typographical errors, the "corrected" version of the Amended Complaint filed with the Court on April 13, 2009, actually added substantive, albeit merely conclusory, allegations.  Specifically, the "Typographically corrected Amended Complaint" added parties to several paragraphs in the Amended Complaint in which they previously did not appear.  (*See, e.g.*, Am. Compl. ¶¶ 323 (adding Eastdil and German American bank), 446 (adding Fortress), 334, 423 (adding Eastdil).)

estoppel); *Singh v. Parnes*, 199 F. Supp. 2d 152, 165 (S.D.N.Y. 2002) (denying leave to amend after serial complaints were filed and where "there is no theory under which the defendants could be held liable for the injuries [plaintiff] asserts arising from the events and transactions at issue"). Under these circumstances, FIG should not be further burdened with the considerable cost of continuing to defend its reputation against plaintiffs' unsupported claims.

## <u>CONCLUSION</u>

For the reasons stated above and in the memoranda of the other defendants to the extent incorporated herein, plaintiffs have failed to state any valid cause of action against FIG, and the Court should dismiss plaintiffs' claims against FIG with prejudice, and grant any other relief as the Court deems appropriate.

Dated:  April 24, 2009

> KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
>
> By:     /s Albert Shemmy Mishaan
> Marc E. Kasowitz
> (mkasowitz@kasowitz.com)
> Albert Shemmy Mishaan
> (amishaan@kasowitz.com)
> Kenneth R. David
> (kdavid@kasowitz.com)
>
> 1633 Broadway
> New York, NY  10019
> (212) 506-1700
>
> *Attorneys for Defendant FIG LLC*